**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma
Susana Cruz Hodge
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
(jdepalma@litedepalma.com)
(scruzhodge@litedepalma.com)

*Attorneys for Plaintiff and the Class*
[*Additional Counsel Appear on Signature Page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE MENDEZ, Individually and On Behalf Of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>vs.<br><br>AVIS BUDGET GROUP, INC. d/b/a BUDGET RENT A CAR SYSTEM, INC. and AVIS RENT A CAR SYSTEM, LLC; and HIGHWAY TOLL ADMINISTRATION, LLC,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br>**And DEMAND FOR JURY TRIAL** |

Plaintiff Jose Mendez ("Plaintiff"), residing at 403 Remsen Avenue, Avenel, New Jersey 07001, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendants Avis Budget Group, Inc. d/b/a Budget Rent A Car System, Inc. and Avis Rent A Car System, LLC (together "Avis Budget" or the "Company"); and Highway Toll Administration, LLC, ("HTA") (HTA and Avis Budget hereinafter sometimes referred to collectively as the "Defendants") by and through his undersigned attorneys, alleges upon

295860 v1

personal knowledge as to himself and his acts and upon information and belief and the investigation of counsel as to all other matters as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action on behalf of a nationwide class of all renters of vehicles from Avis Budget, whom Defendants have routinely victimized through a common course of unlawful conduct.

2.      In 2006, Avis Budget became HTA's first major rental car company customer. Avis Budget partnered with HTA to equip rental cars with transponders that allow for an automatic toll payment service called e-Toll which allows rental car customers to bypass traffic and congestion at toll booths by using the electronic toll-collection lanes of toll roads, such as the E-ZPass system, without having to stop to pay tolls with cash.

3.      Since 2006, HTA has installed thousands of its electronic toll collection devices in Avis Budget's fleet of vehicles.  These devices were first installed in cars in states in which there were already E-ZPass and SunPass toll collection systems in the United States.    Avis Budget refers to its toll collection service as "Budget e-Toll" or "Avis e-Toll" (hereinafter collectively referred to as "e-Toll").

4.      A substantial number of Avis Budget's rental vehicles from "Maine to Virginia", Florida, Colorado, Texas, Chicago, California and Puerto Rico come pre-equipped and pre-enrolled with an HTA device.  Defendants do not and did not disclose to Avis Budget rental customers, including Plaintiff and the Class, in its pre-printed Rental Agreement (defined below in para. 24) that: (1) e-Toll transponders are automatically activated for their rental vehicles; (2) by contracting to rent cars from Avis Budget, Plaintiff and the Class automatically become enrolled as paying subscribers to e-Toll; (3) in addition to the toll charges, customers who rent e-

Toll enabled cars are automatically required to pay a "convenience" fee "of $2.50 per rental day" regardless of whether they use e-Toll and "up to $10.00 per week for the use of this service"; and (4) customers are not responsible for the actual toll amount incurred, which is a discounted toll rate, but instead must pay Avis Budget the non-discounted toll amount.

5.       Avis Budget's pre-printed Rental Agreement presented to customers fails to identify e-Toll or HTA or specify the fees that will be incurred by renters for e-Toll. Only after the return of the rental car are Avis Budget customers, like Plaintiff and Class Members, charged on either their credit or debit cards by Avis Budget and/or HTA for payment of the fees and toll charges. Defendants have simply no contractual right to charge Plaintiff and Class Members any fees for e-Toll.

6.       Upon information and belief, thousands of individuals have been victims of Defendants' misconduct involving e-Toll fees since its inception and implementation. Accordingly, Plaintiff brings this action for breach of contract, violation of the New Jersey Consumer Fraud Act ("NJCFA"), and for unjust enrichment to stop Defendants from continuing their unlawful course of conduct and to recover for ascertainable monetary losses Defendants have caused to Plaintiff and Class Members.

7.       Upon information and belief at all times material hereto, Plaintiff is informed and believes and alleges that each Defendant is responsible in some manner for the occurrences and damages alleged herein, and that Plaintiff and Class Members' damages were proximately caused by said Defendants.

## JURISDICTION AND VENUE

8.       This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which Plaintiff or members of the class or plaintiffs are citizens of states different from at least one Defendant.  Upon information and belief, there are more than 100 Class Members.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Defendant Avis Budget's principal place of business is located in this District, it conducts substantial business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

11.     Plaintiff is a resident of New Jersey.  Plaintiff rented an automobile from the Budget division of Avis Budget's Orlando, Florida airport location.  The car was equipped with an electronic toll-collection device and Plaintiff was charged fees by Defendants as described herein.

12.     Defendant Avis Budget is a Delaware limited liability company with its principal place of business and North American headquarters located in Parsippany, New Jersey. Avis Budget does business throughout New Jersey, including throughout this judicial district. Avis Budget provides car and truck rentals, and ancillary services to businesses and consumers. The Company supplies rental cars to the premium commercial and leisure segments of the travel industry under the Avis ("Avis") brand name; and to the value-conscious segments of the industry under the Budget ("Budget") brand name. It operates or licenses the Avis car rental system that comprises approximately 5,050 locations and the Budget vehicle rental system which consists of approximately 2,750 car rental locations. Avis Budget operates out of locations at

various airports and cities in the United States and internationally. Upon information and belief, all corporate decisions regarding the representations and acts of concealment which are the subject of this lawsuit were directed by, or emanated from, Avis Budget's representatives working in New Jersey or directly reporting to superiors situated in New Jersey.

13.     Defendant HTA is a privately held company based in Great Neck, New York. HTA, founded in 2002, provides an electronic-toll-payment service to the car rental industry. According to its website, HTA was the first electronic toll payment service provider in the car rental industry and has more than 75% market share by transaction volume. HTA says that it handles the tolling interests of more than 1.3 million vehicles and has processed in excess of 10 million electronic toll collection transactions with data from both transponder based and license plate based video tolling.

14.     Avis Budget was HTA's first major rental agency customer. In its March 12, 2006 press release announcing its partnership with Avis Budget's then parent company, Cendant Car Rental Group, HTA stated that "[s]omeday in the near future, all Avis and Budget customers will enjoy the convenience and time savings of paying for tolls electronically."

## BACKGROUND

15.     Avis Budget touts itself as a leading provider of vehicle rental services in North America. These services operate through its Avis and Budget brands. The Company has over 10,000 rental locations in approximately 175 countries around the world. It also grants licensees rights to rent vehicles under the Avis Budget brands. Avis Budget rental cars may also be rented on the Internet. HTA is a privately owned company in the business of supplying and administering the e-Toll automated toll collection service which affects commerce in New Jersey and across the U.S.

16.     According to Avis Budget's Form 10-K for the year ended December 31, 2010, in 2010 Avis Budget derived approximately 81% of its nearly $4.0 billion in total car rental revenue from on-airport locations and approximately 19% of its revenue from off-airport locations in the United States.  In 2010, Avis Budget had a rental fleet of more than 345,000 vehicles and completed more than 22 million vehicle rental transactions worldwide.

17.     The 2010 Form 10-K further stated that, in 2010, the Company's domestic car rental segment generated approximately 71 million rental days and average time and mileage revenue per day of $41.70 with an average rental fleet of approximately 268,000 vehicles.

18.     The 2010 Form 10-K also stated that "In addition to revenue from vehicle rentals and licensee royalties, we generate revenue from Avis and Budget customers through the sale and/or rental of optional products and services. Our employees offer products to customers that will better suit their rental experience, including loss damage waivers, insurance products such as additional/supplemental liability insurance or personal accident/effects insurance, products for driving convenience such as *where2* GPS navigation units, optional emergency roadside assistance, fuel service options and electronic toll collection, and other ancillary products and services as described above, such as rentals of satellite radio units and child safety seats." (emphasis added)

19.     Avis Budget also considers the electronic toll collection product as a means for expanding its revenue source.  The 2010 10-K stated:  "Opportunities for ancillary revenue growth include adding sales of additional insurance coverages and insurance-related and other ancillary products and services, such as electronic toll collection, satellite radio and our ... GPS navigation product, to the rental transactions of an increasing percentage of our renters."

20.     Avis Budget and HTA have entered into an agreement and have jointly offered and implemented the e-Toll system in Avis Budget rental vehicles since at least 2006. According to Avis Budget's 2010 Form 10-K, a "significant" number of its vehicles are equipped for electronic toll collections.

21.     Currently, e-Toll is activated on toll roads in the Northeast United States (from "Maine to Virginia" territory) and in Florida, Colorado, Texas, areas near Chicago, California and Puerto Rico.

22.     Upon information and belief, a substantial number of Budget rental vehicles and all Avis rental vehicles are pre-enrolled and enabled to use the e-Toll system.  No advanced commitment or contract is required of or provided to the rental customer.

23.     The e-Toll system electronically identifies the Avis Budget vehicles as they travel through electronic toll collection sites.  This is accomplished by various means depending on the location.  Some transactions are captured and processed through recognition of license plate numbers and some are captured through an electronic transponder device in the vehicle.  Once the identification is made, HTA, acting as the agent and instrumentality of Avis Budget, receives data identifying the specific Avis Budget vehicle and tolls incurred on specific dates.  Avis Budget, without customer consent, provides HTA with the personal identification and payment information of its customers (including credit and debit card information) and the vehicles they rented.  As agent and instrumentality of Avis Budget, HTA then matches the toll and car data to Avis Budget customers Avis Budget provides them, calculates the toll charges electronically, and later on its own or through Avis Budget charges tolls and fees to the credit or debit card used to rent the vehicle from Avis Budget.   Upon information and belief, Defendants charge Plaintiff and the Class the non-discounted electronic toll charge, but obtain for themselves a discounted

toll charge. Defendants do not pass the discounted savings on to Plaintiff and the Class, nor do they disclose the difference between the toll charge paid by the renter and the actual discounted toll charge incurred.

### IMPOSITION OF E-TOLL ON PLAINTIFF AND THE CLASS

24.     As a matter of course, Avis Budget car rental customers execute standardized rental contracts Avis Budget drafts, which spell out the terms, charges and conditions of the rental arrangement.   Avis Budget's pre-printed Rental Document Jacket (see Exhibit A attached hereto) sets forth the "Terms and Conditions" of the rental agreement ("Rental Agreement"). The enumerated Terms and Conditions, the rental document (the "Rental Document") (see Exhibit B attached hereto), and a return record constitute the Rental Agreement.   The Rental Document confirms the per day or per week charges for the vehicle and also sets forth those services that Plaintiff and Class Members may accept or decline, such as Loss Damage Waiver, Personal Accident and Effects Insurance, Supplemental Liability Insurance & Exclusions and Emergency Sickness Protection.   The Rental Document specifically lists other surcharges for concession recovery fees, vehicle license fees, and for optional services such as the Fuel Service Option.   The Rental Document does not include any reference to e-Toll or any per day or per week charges for e-Toll.   In connection with possible additional charges to Plaintiff's credit or debit card, the Rental Document states:   "You may bill all charges, parking/traffic tickets included, to the card I used for payment, without additional signature by me on a voucher."

25.     Nowhere in the Rental Agreement or in any document signed by Plaintiff is it disclosed that the vehicle being rented comes pre-equipped and pre-enrolled with e-Toll.  HTA is never identified by name in the Rental Agreement or in any other document.

26.     Under "Rental Charges" in the Terms and Conditions it states "If you use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees charges and penalties." (emphasis added). Nowhere does the "Rental Charges" provision specify that Plaintiff and Class Members will be charged for having a car equipped with automatic toll payment capability regardless of whether they used it or not.  Nowhere does the "Rental Charges" provision specify the amount per week or per day Plaintiff and the Class Members will be charged for getting a vehicle which comes pre-equipped with e-Toll.

27.     Nowhere in the Rental Agreement is it disclosed that Avis Budget will provide HTA with the credit card or debit card information of its customers for HTA use.

28.     The only portion of the Rental Agreement that refers to the possibility that the renter might be charged $2.50 per day or $10.00 per week is concealed under the heading entitled "Collections" and states:

**Collections**

If you do not pay all amounts due to us under this agreement upon demand, including all charges, fees and expenses, including, without limitation, payment for loss of or damage to the car, rental charges, parking and traffic fines and penalties, toll charges, towing, storage and impounding fees, you agree to pay a late charge of 1 ½% per month on the past due balance or the highest rate permitted by applicable law, whichever is less (collectively "Charges").  *For toll charges you will be charged the standard non-discounted fee for tolls roads as published by the toll authority plus the convenience fee of $2.50 per rental day regardless of whether you use e-Toll or not and up to $10.00 per week for the use of this service.*  You agree to also pay any cost that we incur in seeking to collect such Charges…. (emphasis added)

29.     The above quoted provisions are the only provisions that expressly concern toll collection. This one sentence regarding toll charges under the Collections heading in the Rental Agreement addresses only the collection of the "standard non-discounted fee" for tolls and associated convenience fees solely in the context of a renter's failure to pay all amounts due

upon demand thus necessitating collections efforts by Defendants.  Given Avis Budget's role as the drafter of the Rental Agreement a reasonable interpretation of it is that Defendants could charge the "standard non-discounted fee for tolls…plus the convenience fee" only if a renter failed to pay amounts due under the Rental Agreement.   None of the documents comprising the Rental Agreement provide adequate notice about the applicability of the fees hidden in the "Collections" provision of the Terms and Conditions and the occasions on and mechanisms through which these fees were and are charged.

30.    Regardless of where e-Toll enabled cars were or are rented from Avis Budget in the U.S., Defendants uniformly harmed Plaintiff and each Class Member in the same manner:

a.   Plaintiff and Class Members have been automatically pre-enrolled with e-Toll without any advanced commitment, assent or contract to use e-Toll;

b.   Defendants failed to disclose to Plaintiff and Class Members whether the rental vehicle they were given was equipped with the e-Toll automated toll-payment service;

c.   Defendant Avis Budget failed to disclose to Plaintiff and Class Members that it would disclose their personal credit and debit card information to HTA or any other non contracting third party;

d.   Defendants failed to disclose to Plaintiff and Class Members in Avis Budget's Rental Agreement that renting an Avis Budget rental vehicle enabled with the e-Toll automated toll-payment service would trigger fees of $2.50 per rental day up to $10 per week payable to Avis Budget and/or HTA;

e. Defendants failed to disclose to Plaintiff and Class Members in Rental Agreements that they would be obligated to pay e-Toll fees even if they did not use the e-Toll service; and

f. Defendants failed to disclose to Plaintiff and Class Members in Rental Agreements that they would be obligated to pay more than the actual toll charge incurred and would instead pay the non-discounted rate

31.     Upon information and belief, Defendants' e-Toll system regularly identified Plaintiff and each Class Member's Avis Budget rental vehicles as they traveled through toll collection lanes, and Defendants systematically imposed e-Toll fees on Plaintiff and Class Members in the manner set forth in paragraphs 22-23.

32.     Moreover, as a matter of course, Plaintiff and Class Members executed no separate agreement relating to e-Toll usage, charges or sharing of credit/debit card information. Plaintiff and each Class Member executed an Avis Budget Rental Agreement, but all of the documents comprising the Rental Agreement uniformly failed to identify e-Toll or HTA or specify the daily e-Toll fees Avis Budget imposed after the return of the rented vehicles.

**FACTS RELATING TO NAMED PLAINTIFF**

33.     Sometime before July 28, 2011, Plaintiff reserved and leased a rental vehicle from Budget for pick up at Budget's Orlando, Florida International Airport location for use from July 28, 2011 to August 5, 2011. Plaintiff reserved the rental using his Visa credit card.

34.     On or about July 28, 2011, Plaintiff traveled from New Jersey to Orlando International Airport. Prior to leaving the airport, he went to the Budget office to obtain the vehicle he had previously reserved. At the Budget office he was presented with a standard Avis Budget Rental Agreement for his signature. Plaintiff signed the Rental Document confirming

that he was declining Loss Damage Waiver, Personal Accident and Effects Insurance, Supplemental Liability Insurance & Exclusions and Emergency Sickness Protection.

35.     At no time was Plaintiff informed prior to renting from Avis Budget, while in possession of his rental vehicle or upon returning his vehicle to Avis Budget, that:

a.  His Budget rental car may have an e-Toll automated toll-payment device in it or on its license plate;

b.  His Budget rental car was pre-enrolled and activated for e-Toll;

c.  Renting a Budget rental car equipped with an e-Toll device would automatically result in fees payable to Avis Budget and/or HTA; and

d.  He would be obligated to pay more than the actual toll charge incurred and would instead pay a non-discounted rate.

36.     Upon information and belief, sometime between July 28, 2011 and August 5, 2011, Plaintiff's Budget rental car passed through a toll lane in Orlando, Florida, which triggered the operation of the e-Toll toll paying system to pay the toll.

37.     Plaintiff returned the Budget rental car on August 5, 2011 at the Orlando Airport location.  Upon returning the car Budget's agent advised Plaintiff that there were no additional charges.

38.     After returning home from vacation, Plaintiff received his Visa credit card September statement.  Included in this statement was an unknown charge for $15.75.   Upon seeing this additional charge on his credit card, Plaintiff called Visa and was told that the charge was from Budget.  He then called Budget who told him that the car was enabled with e-Toll and the $15.75 charge included a $0.75 toll charge and $15.00 convenience charge for e-Toll.

39.    Plaintiff was unaware of the facts and circumstances surrounding the imposition of the e-Toll and that Defendants had no legal or contractual right to collect e-Toll convenience fees.  Had he previously known about the e-Toll fees, he would have not incurred or paid the charges or rented from Avis Budget.

## PLAINTIFF AND CLASS MEMBERS HAVE ASCERTAINABLE LOSSES

40.    As set forth above, Defendants routinely do not and did not disclose to Avis Budget customers, including Plaintiff and Class Members, facts and information which are material.

41.    In Avis Budget's Rental Agreement, Defendants have uniformly and knowingly failed to: disclose the foregoing material facts and information; disclose the foregoing material facts and information clearly and conspicuously; or disclose the foregoing material facts and information in a manner consumers are likely to notice and understand.  Defendants are and were in a superior position to know such facts and information, and such information is within Defendants' exclusive knowledge and unknown to Plaintiff and Class Members.  Without the foregoing information, consumers cannot determine just what costs and obligations they will incur to rent vehicles from Avis Budget.

42.    Through their common course of conduct, Defendants have employed or used means or methods of imposing e-Toll fees which have caused consumers, including Plaintiff and Class Members, ascertainable losses, in that, among other things, Defendants jointly, severally and systematically:

a.    Deprived Avis Budget customers of material facts and information, which would likely affect their decisions whether to rent vehicles from Avis Budget or their

abilities to make intelligent and meaningful choices between Avis Budget and other rental car companies;

b.   Imposed on Plaintiff and Class Members charges and fees which were not disclosed and not agreed in their Rental Agreements;   and

c.   Failed to provide Plaintiff and Class Members with a meaningful way to reject the purported service and avoid paying unnecessary and unwanted fees.

43.   Because of Defendants' course of conduct described above and because Defendants uniformly failed to disclose material facts about e-Toll or disclosed them in a misleading manner, consumers cannot and could not reasonably avoid their injuries.

44.   Defendants' course of conduct set out above is ongoing and adverse to the public interest and policies underlying consumer protection laws.  Unless enjoined and restrained by an order of this Court, Defendants will continue to engage in the unlawful acts and practices set out herein.  Such acts and conduct by Defendants have caused ascertainable loss and actual damage to consumers, including Plaintiff and Class Members, and unless enjoined by the Court, Defendants will continue to cause monetary loss to Plaintiff, Class Members, and future Avis Budget rental car customers.

## CLASS ACTION ALLEGATIONS

45.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2)and (b)(3), on behalf of himself and the following Class:

> All natural persons and business entities who rented vehicles enabled with e-Toll from any rental location owned or operated by Avis Budget or its licensees or from online websites and who were charged non-discounted toll charges and convenience fees in connection therewith. Excluded from the Class are Defendants, as well as Defendants' affiliates, employees, officers and directors, including franchised dealers, and members of their immediate families (the "Class" or "Class Members").

46.    Plaintiff reserves the right to amend the definition of the Class, if discovery and/or further investigation reveals that the Class should be expanded or otherwise modified.

47.    The members of the Class are so numerous and geographically dispersed that joinder of all members would be impracticable.    The members of the Class are readily identifiable from information and records in Defendants' possession, custody or control.

48.    Plaintiff reasonably estimates that there are hundreds of thousands of Class members who rented vehicles equipped with e-Toll.    The size of the Class can only be ascertained through appropriate discovery.

49.    Common questions of law and fact predominate over any questions affecting only individual members of the Class.    These common legal and factual questions, which do not vary from one Class member to another, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

        a.    Whether Defendants failed to disclose to Plaintiff and Class Members in Avis Budget's Rental Agreement that renting an Avis Budget rental vehicle enabled with the e-Toll automated toll-payment service would trigger fees of $2.50 per rental day and up to $10 per week;

        b.    Whether Defendants omitted and/or concealed material facts from Plaintiff and the Class regarding whether the vehicle they rented was pre-enrolled and activated for e-Toll;

        c.    Whether Defendants failed to disclose to Plaintiff and Class Members in the uniform Rental Agreement that they would be obligated to pay e-Toll fees regardless of whether they used e-Toll;

d.      Whether Defendants failed to disclose to Plaintiff and Class Members in Rental Agreements that they would be obligated to pay more than the actual toll charge incurred and would instead pay the non-discounted rate;

e.      Whether Defendants have a contractual right to impose and collect e-Toll fees;

f.      Whether Defendants' acts and practices constitute breach of contract;

g.      Whether Defendants' nondisclosure of e-Toll fees violated the NJCFA;

h.      Whether the facts Defendants fail to disclose about their e-Toll fees are material;

i.      Whether Plaintiff and the Class Members are entitled to damages, and if so, what is the proper measure of damages;

j.      Whether Plaintiff and the Class are entitled to equitable relief, including injunctive relief, to prohibit the reoccurrence of this conduct; and

k.      Whether, by the misconduct set forth in this Complaint, Defendants have engaged in unfair or unlawful business practices with respect the e-Toll fees imposed.

50.     Plaintiff's claims are typical of the claims of the Class, because Plaintiff and all Class members were injured by the same wrongful practices in which Defendants engaged. Plaintiff's claims arise from the same practice and course of conduct that gives rise to the claims of the Class, and are based on the same or similar legal theories. The only difference could be the amount of damages sustained, which can be determined readily from Defendants' records.

51.     Plaintiff will fully and adequately protect the interests of the members of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation.   Neither

Plaintiff nor his counsel has interests which are contrary to or conflicting with those of the Class. Defendants have no defenses unique to Plaintiff.

52. Plaintiff brings this action under Rule 23(b)(3) because the common questions of law and fact as to Defendants' liability predominate over individual questions. The predominant legal issue in this action is whether Defendants are violating and have violated the law by charging customers charges and fees without notice in connection with the e-Toll service. By litigating this issue, Plaintiff necessarily will establish Defendants' liability to all Class Members.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

a. It is economically impractical for members of the Class to prosecute individual actions;

b. The Class is readily definable;

c. Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d. A class action will save time and expense and will ensure uniformity of decisions.

54. Plaintiff does not anticipate any difficulty in the management of this litigation.

55. Defendants have, or have access to, address information for the Class which may be used for the purpose of providing notice of the pendency of this action.

56. Rule 23(b)(2): Class certification is warranted under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing imposition

and collection of the e-Toll fee, and to order Defendants to provide notice to consumers that the fee they paid was unlawful and of their potential right to reimbursement of the fee from Defendants.

**COUNT I**
**(Breach of Contract)**

57.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

58.     This cause of action is pled in the alternative to Count IV (Unjust Enrichment).

59.     All conditions precedent, if any, to the Rental Agreement have been waived or satisfied.

60.     At all times relevant, there existed a valid and enforceable rental contract between Plaintiff and Avis Budget.

61.     Avis Budget entered into valid and enforceable rental contracts with all other Class members that were substantially identical to Plaintiff's.   These contracts were standardized form contracts drafted by Avis Budget.

62.     Avis Budget, acting individually and in concert with HTA, systematically transmitted personal and financial information of Plaintiff and Class Members to HTA for the purpose of imposing undisclosed and improper e-Toll fees and charges.   As a result, Defendants routinely imposed and collected e-Toll fees from Plaintiff and Class Members.

63.     Plaintiff and Class Members did not contract for the e-Toll service or to pay e-Toll fees, and Plaintiff and Class members were not informed of the terms of the e-Toll service, including its cost, until after charges were incurred.

64.     As a matter of course, the Avis Budget Rental Agreement presented to Plaintiff and Class Members did not and does not:

a.      Identify e-Toll;

b.      Identify HTA;

c.      State, explain or provide that e-toll is automatically activated on Plaintiff's and Class members' rented vehicles;

d.      State, explain or provide that by contracting to rent cars from Avis Budget, Plaintiff and Class Members automatically become enrolled as paying subscribers to e-Toll and must pay e-Toll fees;

e.      State, explain or provide that, in addition to the standard non-discounted toll charge, customers who rent e-Toll enabled cars are automatically required to pay a "convenience" fee of "$2.50 per rental day regardless of whether you use e-Toll or not and up to $10.00 per week for the use of this service."; and

f.      State, explain or provide that Plaintiff and Class Members would be obligated to pay more than the actual toll charge incurred and would instead pay the non-discounted rate.

65.     In light of the foregoing, Avis Budget's Rental Agreements with Plaintiff and Class Members did not and do not authorize or allow for Avis Budget's transmission of its customers' personal and financial information to HTA or imposition and collection of e-Toll charges and fees from Plaintiff and Class Members.   Accordingly, Defendants, acting individually and/or in concert, breached the Rental Agreements with Plaintiff and Class Members.

## COUNT II
**(Violations Of New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1 et seq.))**

66.     Plaintiff repeats and realleges the allegations of paragraphs 1 to 65 above as if fully set forth herein.

67.     Plaintiff and Defendants are "persons" within the meaning of the New Jersey Consumer Fraud Act (the "NJCFA").

68.     Plaintiff and other members of the Class are "consumers" within the meaning of the NJCFA.

69.     The NJCFA provides that Defendants have a duty not to engage in "any unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that other rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…" The rented vehicles are "merchandise" within the meaning of the NJCFA.

70.     The business activities of Defendants discussed above constitute the sale or advertisement of merchandise within the meaning of the NJCFA.

71.     As set forth above, Defendants have engaged in unconscionable commercial practices or deceptive acts or practices where their conduct regarding e-Toll services, fees and charges was dishonest and devoid of fair dealing and good faith because Defendants' conduct had the capacity to mislead consumers acting reasonably.   As such, Defendants' conduct violated the NJCFA.

72.     Avis Budget consciously omitted material facts from the Rental Agreement with respect to e-Toll and any charges and fees associated with e-Toll and the sharing of credit/debit card information.

73.     Avis Budget's unconscionable conduct described herein included the omission and concealment of material facts concerning e-Toll and any charges and fees associated with e-Toll.

74.     As set forth above, Defendants have also knowingly omitted material facts regarding e-Toll.  Defendants uniformly do not and did not disclose to Avis Budget rental customers, including Plaintiff and Class Members, prominently or clearly in their Rental Agreements that:   e-Toll is automatically activated for their rented vehicles; by contracting to rent cars from Avis Budget, Plaintiff and Class Members automatically become enrolled as paying subscribers to e-Toll and, as such, automatically incur e-Toll "convenience" fees;   in addition to the standard non-discounted toll charge, customers who rent e-Toll enabled cars are automatically required to pay a "convenience" fee of "$2.50 per rental day regardless of whether you use e-Toll or not and up to $10.00 per week for the use of this service."; and that Plaintiff and Class Members would be obligated to pay more than the actual toll charge incurred and would instead pay the non-discounted rate. Defendants made these omissions with the intent that consumers rely on their omissions.  As such, their conduct violated the NJCFA.

75.     Moreover, the Avis Budget Rental Agreement as presented to Plaintiff, contained affirmative representations that it disclosed all charges that the renter would incur.   These documents contained no mention of the e-Toll fee, and thus misrepresented the amounts the renter would be charged, in violation of the NJCFA.

76.     NJSA 56:82.11 provides that "Any person violating the provisions of the [NJCRA] act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."

77.     As a result of Defendants' conduct in violation of the NJCFA, Plaintiff and the Class have suffered ascertainable losses, and unless restrained, class members and others in the future will continue to suffer injury and harm.

78.     The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## COUNT III
### (Injunctive Relief Against Defendant Avis Budget)

79.     Plaintiff repeats and realleges the allegations of paragraphs 1-78 above as if fully set forth herein.

80.     The Avis Budget Rental Agreement and the NJCFA create contractual or statutory duties that Defendant Avis Budget owes to Plaintiff and the Class, and they create legal rights for Plaintiff and Class Members.

81.     Specifically, the terms and conditions of the Rental Agreement presented to Plaintiff and the Class govern and give rise to the rights, duties and obligations of Defendants on one hand, and Plaintiff and Class Members on the other hand, vis-à-vis Plaintiff and Class Members' rental of Avis Budget rental vehicles.  As set forth above, Defendants have violated their contractual duties, injured Plaintiff and the Class thereby, and violated one or more cognizable legal right Plaintiff and the Class possess.

82.     The NJCFA imposes on Avis Budget a duty not to engage in omissions of material facts, unconscionable commercial practices or deceptive acts or practices.  As set forth above Defendant Avis Budget has violated that duty, injured Plaintiffs and Class Members thereby, and violated one or more cognizable legal rights Plaintiff and Class Members possess.

83.     Upon information and belief, Defendant Avis Budget continues to impose the unlawful charges and fees in the manner described above.  Defendant Avis Budget continues to

retain monies due and owing Plaintiff and Class Members because of their payment of those charges and fees to Defendants.

84.    Defendant Avis Budget's acts and conduct have caused Plaintiff and the Class to be aggrieved, and unless enjoined by the Court, Defendant will continue to aggrieve Plaintiff, Class Members, and future Avis Budget customers.

85.    Plaintiff and Class Members have no fully adequate remedy at law by virtue of Defendants' ongoing course of conduct.

86.    Any potential injury to Defendants attributable to an injunction is outweighed by the injury that Plaintiff and the Class will suffer if such an injunction is not issued.

## COUNT IV
### (Unjust Enrichment)

87.    Plaintiff repeats and realleges the allegations of the paragraphs 1 to 86 above as if fully set forth herein.

88.    As a result of the unlawful and unconscionable practices of the Defendants as described herein, Defendants have obtained and retained significant monies to which they have no lawful claim, and accordingly have been unjustly enriched.

89.    Through resort to the various practices described herein, Defendants received and continue to receive a non-gratuitous benefit, retention of which without disgorgement of its ill gotten profits is unjust.

90.    Plaintiff and the Class reasonably expect and expected that the Defendants would only charge fees for a service when commercially reasonable and fair for Defendants to do so, and as Defendants have acted beyond the bounds of commercial reasonableness and fairness and without a legally enforceable contractual right to do so. Defendants have been unjustly enriched beyond the bounds of their contractual rights.

91.     Plaintiff seeks disgorgement of all unjustly retained profits which have been obtained through Defendants' unfair, unlawful, misleading and deceptive means described with particularity in the foregoing paragraphs of this Complaint.

92.     Defendants' collection and retention of the fees violates the fundamental principles of justice, equity and good conscience and unjustly enriches Defendants.

## COUNT V
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

93.     Plaintiff repeats and realleges the allegations of paragraphs 1 to 92 above as if fully set forth herein.

94.     The Rental Agreement was subject to the implied covenant that Avis Budget would conduct its business with Plaintiff in good faith and would deal fairly with him.

95.     Avis Budget breached this implied covenant by failing to disclose material facts concerning e-Toll and any charges and fees associated with e-Toll.

96.     Plaintiff has been damaged as a direct and proximate result of Avis Budget's breach of the implied covenant of good faith and fair dealing.

## COUNT VI
### Request for Declaratory Relief Pursuant to the
### Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

97.     Plaintiff repeats and realleges the allegations of paragraphs 1 to 96 above as if fully set forth herein.

98.     Upon information and belief, Defendant Avis Budget continues to impose the unlawful charges and fees in the manner described above.

99.     As such, an actual controversy exists between Plaintiff and Avis Budget concerning the parties' rights and duties with respect to the terms of the Rental Agreement –

specifically, whether Avis Budget may charge Plaintiff e-Toll convenience fees and tolls charges above those actually incurred by Plaintiff during the rental period.

100.    The parties require this Court's declaration as to their respective rights, duties, and any other relevant legal relations, and whether or not Plaintiff could seek or is otherwise entitled to further relief.

## NOTICE TO ATTORNEY GENERAL OF ACTION

Pursuant to N.J.S.A. § 56:8-20, Plaintiff will mail a copy of this Class-Action Complaint to the New Jersey Attorney General within 10 days after filing it with the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and on behalf of the Class prays:

A.    For an order certifying this action as a class action, appointing Plaintiff as representative of the Class and appointing his attorneys as counsel for the Class;

B.    For all compensatory damages on all applicable claims in an amount to be proven at trial;

C.    For treble damages under the New Jersey Consumer Fraud Act;

D.    For an order permanently enjoining Defendants from engaging in the unlawful practices alleged herein;

E.    For an award of attorneys' fees, costs and expenses; and

F.    For such other and further relief that the Court deems appropriate and just under the circumstances.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

Dated: November 7, 2011

**LITE DePALMA GREENBERG, LLC**

By:  /s/ Joseph J. DePalma
Joseph J. DePalma
Susana Cruz Hodge
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
(973) 623-3000
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

**ABBEY SPANIER RODD & ABRAMS, LLP**
Nancy Kaboolian
Judith L. Spanier
Jeremy Nash
212 East 39th Street
New York, NY 10016
Tel: 212-889-3700
Fax: 212-684-5191
nkaboolian@abbeyspanier.com

***Attorneys for Plaintiff and the Class***

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

Dated: November 7, 2011

**LITE DePALMA GREENBERG, LLC**

By:  /s/ Joseph J. DePalma
Joseph J. DePalma
Susana Cruz Hodge
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
(973) 623-3000
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

**ABBEY SPANIER RODD & ABRAMS, LLP**
Nancy Kaboolian
Judith L. Spanier
Jeremy Nash
212 East 39th Street
New York, NY 10016
Tel: 212-889-3700
Fax: 212-684-5191
nkaboolian@abbeyspanier.com

*Attorneys for Plaintiff and the class*

**EXHIBIT A**

## Small businesses. Big savings.

Join the Budget Business Program[1] and get savings, rewards and more!

- Low rates that are up to 25% off
- Cash back rebates
- Free enrollment with no commitment or contract
- Complimentary *Fastbreak* membership—skip the lines and go straight to your car

Enroll today for FREE at budget.com/smallbiz or call 1-866-671-7202.

**Budget** business program



## Get a free day on your next weekend rental!

**Budget**

## Get 10% off your next truck rental!

**Budget** Truck Rental

COUPON # CABxx

COUPON # CABxx

---

**Budget**®



Name: _____ BJY

Car # _____  S T 1 2 1 2 1

Space No.: ____  Mendey Jose

Color/Model: ____ whly galage BSY

License No.: ____ GS 9a galaga

**Rental/Authorized Drivers Insurance is Primary.** Pursuant to Florida Statute 627.7263(2), the valid and collectible liability insurance and Personal Injury Protection insurance of any authorized rental or leasing driver is primary to the limits of liability and Personal Injury Protection Coverage required by Sec. 324.021(7) and 627.736 Florida Statutes.

### BUDGET RAPID RETURN

If paying for your rental with any Budget honored charge card, indicate your mileage, gas level and tires, and place your rental agreement in the Budget Rapid Return™ Box. Our Wizard® computer system will complete your bill and a copy will be sent to you. If you prefer, you may have your bill completed at the counter.

Return Mileage: _____  Return Date: ____

Did you purchase fuel?   ☐ Yes   ☐ No

Gas Gauge (check box)* *if applicable*
E  1/8  1/4  3/8  1/2  5/8  3/4  7/8  F

Return Time: ____  ☐ AM  ☐ PM

*Please Note: If you don't indicate your gas gauge reading, you may be charged for a full tank of gas.

### 24 HOUR ROADSIDE ASSISTANCE
1-800-354-2847

### RESERVATIONS
1-800-527-7000

Visit us online @ budget.com

Thank you for not smoking. Budget maintains a 100% smoke-free fleet.

F-133FL (2/11)   Printed 4/11



---

### Rental Terms and Conditions

1. These terms and conditions, the rental document, signed by you, and a return report with computed rental charges together constitute the rental agreement ("agreement") between you and Budget Rent a Car System, Inc. or the independent Budget System Licensee identified on the rental document ("Budget"). Further, references to the "rental document," alternatively, mean the front of these terms, if there is no separate rental document.

2. You rent from us the car described on the rental document, which rental is solely a bailment for mutual benefit. You agree to the terms below and on the other periods of this Rental Document. Jacket provision and such term is not prohibited by the law of a jurisdiction covering "your" rental, in which case such law controls. "You" and "we," "our" and "us" refer to Budget. You also agree that you are not our agent for any purpose, and that you cannot assign or transfer your obligations.

3. **Return of the Car.** You must return the car in the same condition you received it, ordinary wear and tear excepted, on the date and at the time indicated on the rental document. You must return it sooner on our request, and, if returned later, you may be charged a late return fee. You may not return the car at a time when we are closed, if you do, your responsibility for damage to or loss of the car will continue and all charges stated on the rental document as a periodic rate will continue to accrue until the return location reopens and we retake actual possession of the car. If we do not find the car when that location reopens, your responsibility for all charges and for damage to or loss of the car will continue until the car is actually recovered. If you wish to extend any rental you must contact us at 1-800-527-7000 to request it before your return date. We may or may not grant an extension or grant it for the entire period you request in our sole discretion. If we do grant an extension a different or higher rate may also apply. Failure to timely return any property or equipment upon expiration of the rental period and failure to pay all amounts due (including costs for damage to property or equipment) are prima facie evidence of intent to defraud, punishable in accordance with Section 812.155, Florida Statutes.

4. **Where You'll Return the Car.** The car must be returned to the agreed return location as specified on the rental document. If return is indicated to a location other than the location where your rental commences, you may have to pay a "one way service fee." If you return the car to a different location from the agreed return location without location fee specified by us, if this fee is higher the fee multiplying normal mileage rate by distance between renting location and actual return location as specified on the rental document/return record, you'll pay the higher fee. You also understand that a different or higher rate may apply.

## Supplemental Liability Insurance (SLI)

**What is Supplemental Liability Insurance (SLI)?**

Budget has Supplemental Liability Insurance (SLI) available at all Florida locations. SLI is a special optional service offered by Budget when you rent a car from Budget. It's an "Excess Automobile Liability Insurance Policy" that provides Supplemental Liability Insurance, within specified limits, above the limits provided in this Rental Agreement. SLI insures you, and authorized operators as defined in the Rental Agreement, against claims made by third parties against you, the customer, for bodily injury/death and property damage caused by the use or operation of Budget rental vehicle as permitted in this Rental Agreement. SLI is a separate insurance policy issued to Budget by ACE American Insurance Company. If you elect to accept SLI for an Supplemental Insurance charge as shown on this Rental Agreement. The purchase of SLI is not required in order to rent a car from Budget.

**What are the coverage limits provided by SLI?**

The SLI coverage limits equal the difference between the minimum financial responsibility limits, if any, provided under paragraph 17 of this Rental Agreement and the SLI maximum $2,000,000 combined single limit per accident.

**When and where does SLI coverage apply?**

You and authorized operators are covered while driving the rental car within the United States and Canada, but only if the car is rented and returned in the United States. Coverage does not apply in Mexico.

**How do I report a claim?**

If you are involved in an accident, you must complete an accident report and deliver it to the Budget rental location, in order to make a claim or give notice of a claim, send written notice to:

Budget Rent A Car System, Inc.
Corporate Insurance Dept.
6251 Chancellor Drive
Orlando, FL 32809-8204
1-800-527-7000

**How does SLI affect the application of your automobile or umbrella insurance policy?**

Your personal insurance policy providing coverage on an owned automobile or other personal policy, may provide additional coverage, and to that extent, SLI may provide a duplication of coverage. Whether, at what point, and to what extent, your own policies apply can only be determined by your checking the terms of the policies themselves as these terms frequently vary. However, if SLI is accepted by you, and the limits of protection afforded by SLI, and the limits of protection under this Rental Agreement, are primary to your own policies. This means that before your own policies would apply to

pay a claim the $2,000,000 provided primarily by the continuation of SLI, and the minimum responsibility limits specified in this Rental Agreement limits would have to be exhausted. If you do not accept SLI your insurance, if any is primary as stated on this Rental Agreement.

**What exclusions apply to SLI?**

The following highlights some of the exclusions that would preclude SLI. It is important that you read the rental agreement and the policy carefully for all exclusions.

• Any Prohibited Use of the Car as described in paragraph 14 of this rental agreement.

• "No Fault" and other supplemental coverages are not provided by the policy.

• Punitive or exemplary damages to the extent permitted by law.

• Bodily injury to or Property Damage to any insured; nor, to the extent permitted by law, in the state where the rental agreement is signed, to Bodily Injury or Property Damage to; jointly and severally responsible for the payment capability, or authorized to do so. If you use a car with automatic toll payment capability, or will pay us or our toll program administrator for all tolls incurred during you

This is a summary only of SLI. The specific terms, conditions and exclusions thereof are subject to all provisions, limitations and exclusions contained in the rental agreement and the SLI policy issued by ACE American Insurance Company, one of the U.S.-based subsidiaries of the ACE Limited (NYSE: ACE) "ACE" and the ACE logo are service marks of the ACE Group, which is comprised of ACE Limited and its subsidiaries.

This summary is not intended to provide a complete description of the policy's terms, conditions and exclusions. For complete details, we invite you to examine a copy of the policy, which is available for your inspection, upon request, at the Avis location at which you are renting.

Budget employees, agents, or endorses are not qualified to evaluate the adequacy of the renter's existing coverage.

For more information call Budget toll free at 1-800-527-7000

Visit Budget online at Budget.com

---

**5. Rental Charges.** You will pay for the number of miles you drive and the period of time you rent the car at the rate indicated on the rental document. The minimum charge is one day (24 hours), unless "calendar day" is indicated on the rental document, plus mileage, if charged for. We will determine the miles by reading the factory-installed odometer. The daily charge applies to consecutive 24 hour periods starting at the hour and minute the rental began or, if a calendar day is specified on the rental document, each consecutive calendar day or any part of a calendar day starting on the hour and day on which the rental commences. If you fail to comply with any conditions to which special rates specified on the rental document our otherwise applicable rate will be charged. You'll pay all charges that apply to the rental for miscellaneous services and, where permitted, airport facility fees and/or concession recovery fees, vehicle license recovery fees, other fees and surcharges, if you present rewards program, you may be charged a redemption fee. You will also pay any rewards certificates, coupons or vouchers associated with a loyal rewards program. You may be charged a redemption fee. You will also pay dirt or sodage attributable to your use. We maintain a non smoking fleet. To will pay an additional charge if you smoke in the car. You and any third part to whom any rental charges are billed, such as an insurer or employer, are jointly and severally responsible for the payment of such charges. If you direct us to bill any such charges to a third party, you represent that you have authorized to do so.

**6. Taxes.** You'll pay all sales, use, rental, environmental and excise taxes including tax-related surcharges.

**7. Loss Damage Waiver, Loss Damage Waiver (LDW) is not insurance and is not mandatory. If you accept full LDW by your initials on the rental document at the daily rate, for each full or partial day that the car is rented to you, and the car is operated in accordance with this agreement, we assume all loss or damage to the car except, if permitted by law, for lost, damaged or stolen keys or remote entry devices and your amount of "responsibility" as specified on the rental document. Partial Loss Damage Waiver (PDW) is available only where permitted by law. If you accept PDW at the indicated daily rate, and the car is operated in accordance with this agreement, we assume all loss or damage to the car up to the amount as specified on the rental document until you accept responsibility for all other loss or damage. If you do not accept either LDW or PDW, you owe for all loss or damage to the car. Loss and damage are described in the following paragraph. You acknowledge that you have been advised that your own insurance may cover loss or damage to the car. You also acknowledge reading the notice on loss damage shown on the rental document, it at the end of these terms, or separate notice form.**

**8. Damage/Loss to the Car.** If you do not accept LDW or if the car is lost or damaged as a direct or indirect result of a violation of paragraph 15, you are responsible, and you will pay us for all loss of or damage to the car regardless of cause, or who, or what caused it. If the car is damaged you will pay our estimated repair cost, or if, in our sole discretion, we determine to se the car in its damaged condition, you will pay the difference between the car retail fair market value before it was damaged and the sal proceeds. Where permitted by law, you authorize us to charge you for the actual cost of repair or replacement of lost or damaged items such as glass mirrors, and antenna, as part of your rental charges at the time of return. If the car is stolen and not recovered you will pay us the car's fair market value before it was stolen. As part of your cost, you'll also pay for loss of use of the car, without regard to our fleet utilization, plus an administrative fee, plu towing and storage charges, if any ("Incidental Loss"). If your responsibility is

covered by any insurance, you will provide us with the name of the insurer and policy number, or to process any or all of our insurance claims to insure, at Accidental, for us to process any or all of our insurance claims to card at or after the completion of the rental. We are also authorized to collect any or all of our losses from a third party that is responsible for it. We collect our loss from a third party after you paid and lost from you, we will refund you the difference, if any, between what you paid and what we collected from the third party. If there is a jurisdiction covering this rental requires conditions on LDW that are different than the terms of this agreement, such as if your liability for collision damage is limited by such law, that law prevails. You understand that you are not authorized to repair or have the car repaired without our express prior written consent. If you repair or have the car repaired without our consent, you will pay the estimated cost to restore the car to the condition it was in prior to your rental. If we authorize you to have the car repaired, we will reimburse you for those repairs only if you give us the repair receipt.

9. **Loss Damage Waiver Charge.** If you accept LDW, you'll pay the daily LDW rate as specified on the rental document. If PDW is available, and you accept it instead of LDW, you'll pay the daily PDW rate as specified on the rental document. In either case, you agree to pay the applicable daily rate for a full day if you don't have the car for the entire day. The fee is the applicable daily rate multiplied by the number of rental days.

10. **Fuel Service Charge.** Most rentals come with a full tank of fuel, but that is not always the case.

(a) Where available, if permitted by law, if you drive less than 75 miles, you acknowledge that we will add a flat fee to the rental, the amount of which will be disclosed on the rental documents and at the counter prior to rental. You may avoid this charge at the time of return by providing a receipt for fuel purchased at which time the flat fee will be reversed from your final rental charges.

If (a) does not apply, there are three retailing options:

(b) If you do not accept the fuel service option, where available, at the beginning of your rental, and you return the car with less fuel than was in it when you received it, we will charge you a fuel service charge at the applicable rate per-mile or per-gallon rate specified on the rental document. The per-mile rate is used if you do not buy fuel during the rental. To calculate this amount, we multiply the number of miles driven, as shown on the car's odometer, times the per-mile rate shown on the rental document. Although two methods are used for ease of calculation, the per-mile and per-gallon rates produce approximately the same result.

(c) If you accept the fuel service option at the beginning of your rental, you will be charged as shown on the rental document for this purchase and you will not pay us a fuel service charge. If you choose this option, you will not incur an additional fuel service charge, but you will not receive any credit for fuel left in the tank at the time of return. The per-gallon cost of the fuel service option will always be lower than the fuel service charge. The cost of refueling the car yourself at a local service station may be lower than the fuel service charge or the fuel service option. You acknowledge that the fuel service charge or the fuel service option, if requested by us, present a

(d) You may avoid a fuel service charge if you return the car with the fuel tank as full as when you received it and, if requested by us, present a

receipt for your fuel purchase.

11. **Personal Accident & Effects Insurance (PAE).** You'll pay for Personal Accident/Effects Insurance if you accept it. You understand that you'll be charged the rate per day for a full day even if you don't have the car the entire day.

12. **Roadside Safetynet.** Roadside Safetynet (RSN) is not insurance and is not mandatory. If available, you'll pay for RSN if you accept it at the rate shown on the rental document for each full or partial rental day. RSN provides roadside assistance at no charge in addition to the daily fee for lost keys and remote entry devices, lockouts, flat tire service, towing (if the car becomes inoperable), jump starts, emergency fuel delivery (up to 3 gallons, as we determine is needed). **Prohibited use of the car will void this option.**

13. **Fines, Expenses, Costs and Administrative Fees.** You'll pay all fines, penalties and court costs for parking, traffic, toll and other violations, including storage liens and charges. You'll also pay a reasonable administrative fee with respect to any violation of this agreement, such as for repossessing or recovering the car for any reason.

14. **Error in Rental Charges.** The charges shown on the return record are not final and are subject to our review. You'll pay any undercharges and you'll receive a refund for any overcharges we discover on review.

15. **Prohibited Use of the Car & Voiding of Optional Services.** Certain uses of the car and other things you or a driver may do, or fail to do, will violate this agreement and, in addition to anything else may cause us to cancel your enrollment in Budget Fastbreak Service. A VIOLATION OF THIS PARAGRAPH, WHICH INCLUDES USE OF THE CAR BY AN UNAUTHORIZED DRIVER, WILL AUTOMATICALLY TERMINATE YOUR RENTAL, IS AN EXCLUSION TO AND VOIDS ALL LIABILITY PROTECTION AND ANY OPTIONAL SERVICES THAT YOU HAVE ACCEPTED, INCLUDING ADDITIONAL LIABILITY INSURANCE, PERSONAL ACCIDENT INSURANCE, PERSONAL EFFECTS PROTECTION, ROADSIDE SAFETYNET AND LOSS DAMAGE WAIVER OR PARTIAL DAMAGE WAIVER. IT ALSO MAKES YOU LIABLE TO US FOR ALL THE PENALTIES, FINES, FORFEITURES, LIENS AND RECOVERY AND STORAGE COSTS, INCLUDING ALL RELATED LEGAL EXPENSES, FEES AND COSTS.

It is a violation of this paragraph to:

A. You use or permit the car to be used: 1) by anyone other than an authorized driver, as defined in paragraph 16; 2) to carry passengers or property for hire; 3) to tow or push anything; 4) to be operated in a test, race or contest or on unpaved roads; 5) while the driver is under the influence of alcohol or a controlled substance; 6) for conduct that could properly be charged as a felony or misdemeanor, including the transportation of a controlled substance or contraband; 7) recklessly or while overloaded; 8) if rented in the United States, outside of the United States, or with our permission, Canada; or 9) if rented in Canada, outside of Canada, or with our permission, the United States, or

B. You or an additional driver, authorized or not: 1) fail to promptly report any damage to or loss of the car when it occurs or when you learn of it and provide us with a written accident/incident report or fail to cooperate fully with our investigation; 2) obtained the car through fraud or misrepresentation; 3) leave the car and fail to remove the keys or close and lock all doors, close all windows and lock the trunk and the car is stolen or vandalized; 4) intentionally or with willful disregard cause or allow damage to the car; 5) return the car after hours and the car is damaged, stolen or vandalized.

16. **Who May Drive the Car.** You represent that you are a capable and validly licensed driver. You agree that we have the right to verify that your license has been validly issued and is in good standing, and that we may refuse to rent if your license has been suspended, revoked or otherwise restricted in any way. We reserve the right to deny rentals based upon information provided by the Motor Vehicle Department of the jurisdiction that issued your license. Except where otherwise specifically authorized by applicable law, only you, your spouse or domestic partner, or, if applicable law, your employer's corporate account or, if permitted, any one of your employer's regular fellow employee incidental to business duties may drive the car, but only with your prior permission. The other driver must be at least 25 years old and a capable and validly licensed driver. There may be a charge for each additional driver authorized to drive the car, which we'll disclose and you'll pay the additional driver charge is specified on the rental, or the additional driver charge is specified on this rental.

17. **Liability Protection.** Anyone driving the car who is permitted to drive it by this agreement will be protected against liability for causing bodily injury or death to others or damaging the property of someone other than the authorized driver and/or the renter up to the minimum financial responsibility limits required under applicable law. If the accident occurs, the limit for bodily injury sustained by any one person includes any claim for bodily injury sustained by any one person. Where applicable law extends this protection to a non-permitted driver, the same coverage and limits will apply. Except where required by law to be primary, any protection provided by us shall be secondary to, and in excess of, any applicable insurance available to you, or any other driver, from any other source, whether primary, excess, secondary or contingent in any way. If this protection is secondary by operation of law or to anyone not permitted by this agreement to drive the car, or to any person or license where coverage is not intended to be afforded by this agreement, the financial responsibility limits of the jurisdiction in which the accident occurs will apply. You agree that we can provide coverage under a certificate of self-insurance or an insurance policy, or both, as we choose. In any case, a copy of the policy and/or certificate will be available for your inspection at our main office. You understand that unless required by applicable law, we will not provide: (a) coverage for fines, penalties, punitive or exemplary damages; (b) coverage for bodily injury to you or your death while not a driver, or any member of your family or the driver's family, or to a fellow employee arising out of or in the course of employment; (c) defense against any claim; unless we are required to provide primary protection, but in such event not after the applicable limits of protection that we furnish are tendered; (d) supplementary no fault, noncompulsory uninsured or underinsured motorist coverage, and any other optional or rejectable coverage, and you and we reject all such coverages to the extent permitted by law. Where any of those coverages are required or implied by law, the limits shall be the minimum required under applicable statute. Where permitted by law, you are rejecting uninsured or underinsured motorist and all optional additional insurance coverages and under any policy of insurance or certificate of self-insurance in connection with this agreement, for you and all other passengers in the car. You understand that uninsured and underinsured motorist coverage protects you and other passengers in a car for losses and damages suffered if

injury is caused by the negligence of a driver who does not have any insurance or has insufficient insurance to pay for losses and damages. There is no coverage in Mexico, and the car may not be taken into Mexico under any circumstances, unless special arrangements are made at the rental location for separate Mexican insurance, where such insurance is available.

**18. Supplemental Liability Insurance (SLI) & Exclusions.** You'll pay for SLI if available and, if you accept it in the car, coverage provided by us according to paragraph 17 above will be primary and the combined limits of liability protection will be $1,000,000 or $2,000,000 depending on the place of rental for bodily injury, death, or property damage for each accident, but not for more than the contracted $1,000,000 or $2,000,000 limit for each accident instead of the basic limits stated in paragraph 17 above. This additional coverage will be provided to an authorized driver, as defined in paragraph 16 above, under a separate policy of excess liability insurance more fully described in the available brochure and is subject to all of the conditions and limitations described in paragraph 17 above, except that notwithstanding anything contained in this agreement, the terms **liability for bodily injury or property damage arising out of any "prohibited use of the car" as described in paragraph 15 of this rental agreement. Other exclusions to SLI are listed in the SLI policy.** You understand that you will be charged the rate per day for a full day even if you rent the car for less than the entire day.

**19. Indemnification and Waiver.** You agree to indemnify us, our parent and affiliated companies for and hold us harmless from any loss, liability and expense that we incur or the use of the car, including reasonable attorney's fees; (a) which exceeds the greater of either the minimum limits of financial responsibility pursuant to the motor vehicle insurance law of the applicable jurisdiction or the limits of any liability protection that we elect to provide you; (b) which results from your use or prohibited operation of the car. You waive any claim against us for incidental, special or consequential damages in connection with the rental. You waive any claim against us for incidental, special or consequential damages in connection with the rental. If the rental takes place at a location operated by a Budget System Licensee and a claim against us is for this transaction, you agree to look solely to said Budget Rent A Car System, Inc., that alleges unfair, deceptive or unconscionable conduct that may allege licensee agrees to indemnify and hold Budget Rent A Car System, Inc., harmless from and against such claim, including the related costs and expenses.

**20. Repossessing the Car.** We can repossess the car anytime it is found illegally parked, being used to violate the law or the terms of this agreement, or appears to be abandoned. We can also repossess anytime we discover that a repossession was made to obtain the car. You agree that we needn't notify you in advance. If the car is repossessed, you agree to pay the actual and reasonable costs incurred by us to repossess the car. You agree that such costs will be charged to the card you used to rent the car.

**21. Collections.** If you do not pay all amounts due to us under this agreement upon demand, including all charges, fees and expenses, including, without limitation, payment for fines and damage to the car, rental charges, parking and traffic fines and

penalties, toll charges, towing, storage and impoundment fees, you agree to pay a late charge of 1 1/2% per month on the past due balance of this transaction. This charge will replace the currency conversion processing charge applied by your card issuer. You understand that your card issuer has a currency conversion process, that you have chosen not to use your card issuer's currency conversion process, and that you will have no recourse against your card issuer with respect to any matter related to the currency conversion or disclosure thereof.

**22. Card Reserve.** You acknowledge that you have been informed that if you use a charge card your credit, up to an amount of the estimated total charges due under this Agreement, as indicated on the rental document, based on your representation about this rental, may be set aside or reserved by the card issuer of the card, which you present for payment of your rental charges; or, if you use a debit card funds in the amount of the estimated total charges plus under this Agreement, based on your representation about this rental, may be set aside for the greater of the amount of the deposit amount indicated on signs at the location at which you rent at the time of rental. You consent to the reservation or setting aside of that estimated total amount at the time of commencement of the rental. You understand that we will authorize the release of any excess reserve or set aside upon the completion of your rental, and that your card issuer's rules apply to your credit line or your account being credited for such excess and may not be immediately released by your card issuer.

**23. Lost or Damaged Property.** We are not responsible for loss of or damage to any property in or on the car, in any service vehicle, on our premises, or received or handled by us, regardless of who is at fault. You'll be responsible for claims by others for such loss or damage.

**24. Meaning of "Car".** The word "car" in this agreement means the vehicle rented or its replacement, and includes tires, tools, equipment, accessories, plates, and car documents, unless otherwise specified in this rental agreement.

**25. Changes.** Any change in this agreement or our rights must be in writing and signed by our president or a vice president.

**26. Currency Conversion.** If you use a credit or charge card that is issued by a financial institution outside of the United States and your charges are billed to us in a currency other than U.S. Dollars, the total amount of your charges will be converted to the card account's billing currency by us unless you submit a written request in advance to have the currency conversion performed by the card issuer. Your conversion will be based on a conversion rate published by Reuters and will incorporate a

processing charge no higher than 3% applied to all amounts relating to this transaction. This charge will replace the currency conversion processing charge applied by your card issuer. You understand that your card issuer has a currency conversion process, that you have chosen not to use your card issuer's currency conversion process, and that you will have no recourse against your card issuer with respect to any matter related to the currency conversion or disclosure thereof.

**27. Emergency Sickness Protection ("ESP")** where available, is available only to Canadian renters and international renters with valid non U.S. passports. You'll pay for ESP if you accept it. You'll be charged the rate per day for a full day even if you don't have the car for the entire day. ESP is offered by an independent insurer and is explained in a brochure available at the counter.

**28. OnStar and Satellite Radio.** You acknowledge that the car may be equipped with the OnStar System, which provides emergency and other services. You expressly authorize all of those services. You acknowledge that you understand that OnStar requires the car's electrical system and that the equipment, cellular service and satellite technologies to be available and operating for OnStar to function properly. Not all OnStar services are available on all cars. OnStar acts in all existing emergency and other service providers. Services are limited by, and subject to, OnStar's navigational route support system and provided through OnStar's on an "as is" basis. OnStar, its service providers and Avis will not be liable to you if any user of OnStar in connection with the use of such information. You understand and agree that OnStar provides law enforcement all necessary information to enable law enforcement to locate the car, if you fail to return the car when and where required under this rental agreement. You agree to release and hold us, and the OnStar service providers, harmless for any damages for any losses under any theory to the pro rata portion of the rate for use of the car for one day. Call 1.888.4OnStar (1.888.466.7827) to obtain a copy of OnStar's terms and conditions and privacy policy. Not everywhere is equipped with OnStar and or Satellite Radio. Renters shall be responsible for the annual subscription fees). Some vehicles in our service in violation of this provision, the renter agrees to be completely responsible for the annual subscription fees). Some vehicles in our fleet may have the OnStar and or Satellite Radio, and will have access to the systems equipment may not be active. Unless you are advised that you have a car with OnStar and or Satellite Radio you will not have access to the systems and you should not rely upon them for these steps to activate them.

**29. Where™ Global Positioning Satellite System.** At various locations, we may offer for a Where2 Global Positioning System for your use. If you rent such a unit you will pay the additional daily charge shown on the rental document. This unit is not part of the car. You are responsible for any loss or damage to the unit and accessories regardless of cause even if you have accepted LDW. If the unit and/or its accessories are lost or damaged so as to, in our sole opinion, require repair or replacement, you will pay us to repair or full retail cost, which may be as much as $499. If you return the unit to a location other than the renting location without our authorization, you will pay us a fee for that unauthorized return. We do not use Where2 units to track or locate cars, other than those that are reported lost or stolen or as may be required by law enforcement agencies.

© 2011 Budget Rent A Car System, Inc.

F-133R (2/11)

# EXHIBIT B

```
CXXXXXXXXXXXXXX6182              1 AIRPORT BLVD, TERMINAL A & B ORLANDO,FL,32827,US                    02722

RA DOCUMENT 270615564 F-131FL  0710    RENTED: 28JUL11/0901   AT: ORLANDO FL APO   PHONE: 800-621-2300      098621
CAR# 5 5 1 2 3 2 4 6   GRP E          DUE IS: 05AUG11/1700   AT: ORLANDO FL APO   RATE CODE: 29/E

MI OUT: 7612                          ********OPTIONAL SERVICES*********      -MIN     9 DAY
PLATES FL 659HLY     FUEL OUT: 8/8                                          -MAX    21 DAY
WHI KIA OPTI 4DR  SPACE# B34          LDW:      26.99/DAY  DECLINED
                                     PAE:       6.95/DAY  DECLINED          9 DAYS PAID E
                                     ESP:       5.00/DAY  DECLINED          ADD'L HR:       16.01
NOP : VISA 6182 AUTH: 7217/100L      SLI:      14.43/DAY  DECLINED          ADD'L DY:       53.33
                                                                           MILEAGE CHG: UNLIMITED
DRIVERS LIC# USHYXXXXX0433           <>BY MY APPROVAL I ACCEPT OR           .3103/MI
BCD# X236900                         DECLINE OPTIONAL COVERAGES AS          FUEL SERVICE: .3103/MI
COST CONTROL# 4594774875             SHOWN ABOVE. X_APPROVED                            7.449/GAL
* * * R A   2 7 0 6 1 5 5 6 4                                               $ .02/DY TBS
                                                                           $ .70/DY VEH LIC FEE
                                                                           $ 2.60/DY CFC
                                                                           $ .96/DAY ERF
                                                                           $ 2.00/DY SSD
                                                                           10.00% CONCESSION RECOVERY FEE
                                                                           TAX:  6.500%


            MENDEZ,JOSE
            SELF
```

RENTERS/AUTHORIZED DRIVERS INSURANCE IS PRIMARY: FLORIDA STATUTE
627.7263(2), STATES THE VALID AND COLLECTIBLE LIABILITY INSURANCE
AND PERSONAL INJURY PROTECTION INSURANCE OF ANY AUTHORIZED RENTAL
DRIVER IS PRIMARY FOR THE LIMITS OF LIABILITY AND PERSONAL INJURY
PROTECTION COVERAGE REQUIRED BY SEC. 324.021(7) AND 627.736
FLORIDA STATUTES. RENTER/AUTH. DRIVERS INS. CO.XX

---------NOTICES----------BUDGET---------NOTICES----------BUDGET----------NOTICES----------BUDGET---------NOTICES
---RENTERS ARE NOT REQUIRED TO PURCHASE LOSS DAMAGE WAIVER      ---IF I RETURN THE CAR PRIOR TO THE DUE IN TIME
(LDW). IT IS NOT MANDATORY. BEFORE PURCHASING LDW, RENTER       SET FORTH ABOVE, I MAY BE CHARGED A HIGHER RATE.
SHOULD CHECK IF OWN INSURANCE COVERS DAMAGE TO AND LOSS OF      ---NO ADDITIONAL OPERATORS ARE AUTHORIZED OR PERMITTED
THE CAR, THE LIMIT OF COVERAGE AND DEDUCTIBLE. IF THE           WITHOUT BUDGET'S PRIOR WRITTEN APPROVAL IN ACCORDANCE
RENTER DECLINES LDW, RENTER MAY BE LIABLE FOR UP TO THE         WITH THE TERMS AND CONDITIONS OF THE RENTAL AGREEMENT
RETAIL FAIR MARKET VALUE (LESS SALVAGE) OF THE CAR,             OR APPLICABLE STATE LAW.
REGARDLESS OF FAULT. UNLESS ORDINARY NEGLIGENCE IS EXCLUDED     ---YOU MAY BILL ALL CHARGES, PARKING/TRAFFIC TICKETS
BY LAW. REPAIRS ARE AT BUDGET'S COST. READ LDW TERMS ON THE     INCLUDED, TO THE CARD I USE FOR PAYMENT, WITHOUT
RENTAL DOCUMENT JACKET TERMS AND CONDITIONS, INCLUDING          ADDITIONAL SIGNATURE BY ME ON A VOUCHER.
EXCLUSIONS FROM LDW.                                            ---BY MY SIGNATURE, I ACKNOWLEDGE RECEIPT OF ALL NOTICES
---FUEL SERVICES ADD'L IF CAR IS RETURNED WITH LESS             WHICH APPEAR ON THIS RENTAL DOCUMENT. I AGREE TO THE
FUEL THAN WHEN RENTED. 00-74 MILES $13.99 FUEL FEE ADDED.       TERMS AND CONDITIONS INCLUDING WHO MAY DRIVE THE CAR,
TO REMOVE SHOW RECEIPT. X_APPROVED                              WHICH IS STATED ON THE RENTAL DOCUMENT JACKET PROVIDED.
---MINIMUM CHARGE IS 1 DAY (24 HRS) PLUS MILEAGE.

                                                               XX _____
                                                                                              RES # 35720127-US-2E
                                                                                              PREPARED BY: 51315
J4A6/4345/11209/09:09/O                                         RENTAL# 2 7 0 6 1 5 5 6 4

### ADDENDUM TO RENTAL AGREEMENT

In connection with my < X > Rental Application   <   > Additional Driver's Application to Budget
Rent a Car System ("Budget"), I certify that:

* I have a currently valid drivers license, not suspended, revoked, expired,
  cancelled, surrendered or improperly altered.
* I have not had 3 or more convictions for moving violations within the past
  24 months (including seat belt violations).
* I have not been convicted of DWI/DUI/DWAI within the past 36 months.
* I have not been convicted of leaving the scene of an accident (hit and run) or
  failure to report an accident within the past 36 months.
* I have never been convicted of obtaining a vehicle unlawfully, possessing a
  stolen vehicle, or using a vehicle in a crime or in connection with an unlawful act.
* I have not been convicted of reckless driving within the past 36 months.
* I have not had 3 or more accidents within 36 months.

I understand that Budget regards the facts to which I am certifying as material in its
decision to rent or permit me to drive its vehicle, and is relying upon the accuracy and
truthfulness of this certification. I further understand and agree that if I provide false or
misleading information, my use of the vehicle is prohibited and unauthorized. This may
result in any and all coverage otherwise provided by the Rental Agreement being void
and my being fully responsible for all loss or damage, including liability to third parties.

I authorize Budget, in the event of an accident involving an Budget vehicle, to verify my driving
record with any appropriate authority, either now or in the future, and I authorize any
government motor vehicle department to release my records at the request of Budget or its
designee.

I understand that the only ones permitted to drive the vehicle other than the renter are
the renter's spouse, the renter's co-employee, (with the renter's permission, while on
company business), or a person who appears at the time of the rental and signs an Additional
Driver Form. These other drivers must also be at least 25 years old and validly licensed.

PERMITTING AN UNAUTHORIZED DRIVER TO OPERATE THE VEHICLE IS A VIOLATION OF THE RENTAL
AGREEMENT. THIS MAY RESULT IN ANY AND ALL COVERAGE OTHERWISE PROVIDED BY THE RENTAL
AGREEMENT BEING VOID AND MY BEING FULLY RESPONSIBLE FOR ALL LOSS OR DAMAGE,
INCLUDING LIABILITY TO THIRD PARTIES.

I understand that this document becomes an addendum to the Rental Agreement listed below.

Renter:            X  _____

Additional Driver: X  _____

Date:              28JUL11  _____

================================================================
                    (FOR OFFICE USE ONLY)
Additional Driver's License State & Number: X_____

Rental Agreement Number: 270615564  _____