**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOSE MENDEZ, individually, and on behalf of all others similarly situated, | : HON. JOSE L. LINARES, U.S.D.J. <br> : Civ. Action No. 2:11-cv-06537 <br>        (JLL)(MAH) |
| Plaintiffs, | : |
|  | : |
| -against- | : |
|  | : |
| AVIS BUDGET GROUP, INC. D/B/A <br> BUDGET RENT A CAR SYSTEM, INC. and <br> AVIS RENT A CAR SYSTEM, LLC; AND <br> HIGHWAY TOLL ADMINISTRATION, LLC, | : <br> : <br> : |
| Defendants. | : |

---

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO DISMISS**

---

Paul J. Halasz, Esq.
DAY PITNEY LLP
One Jefferson Road
Parsippany, NJ 07054
(973) 966-6300

Attorneys for Defendants
Avis Budget Group, Inc., Avis Rent A Car
System, LLC; and Highway Toll
Administration, LLC

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS.............................................................................4

ARGUMENT...........................................................................................8

I.      DEFENDANTS ARE ENTITLED TO DISMISSAL PURSUANT TO RULE
        12(b)(6) BECAUSE THE COMPLAINT FAILS TO STATE ANY CLAIM .................8

II.     PLAINTIFF AGREED TO PAY THE FEES AND CHARGES ASSOCIATED
        WITH THE E-TOLL PROGRAM UNDER THE EXPRESS TERMS OF THE
        RENTAL AGREEMENT ....................................................................9

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NEW JERSEY
        CONSUMER FRAUD ACT ...............................................................15

        A.      The NJCFA Does Not Provide A Cause of Action to a Transaction
                Occurring Wholly Outside the State of New Jersey ...........................15

        B.      Plaintiff Suffered No Ascertainable Loss Where The e-Toll Program
                Prevented Plaintiff From Being Subject to Fines and Other Penalties for
                Failing to Pay a Highway Toll...........................................................18

        C.      Plaintiff Fails to Allege an Ascertainable Loss With Respect to the ABG's
                Alleged Sharing of Credit/Debit Card Information with HTA...........................19

IV.     PLAINTIFF'S COUNT FOR INJUNCTIVE RELIEF IS MORE PROPERLY
        CONSTRUED AS A PRAYER FOR RELIEF AND NOT A SEPARATE
        CAUSE OF ACTION .......................................................................20

V.      BECAUSE DEFENDANTS WERE EXPRESSLY EMPOWERED BY THE
        SIGNED CONTRACT TO CHARGE A CONVENIENCE FEE, THE CLAIMS
        FOR UNJUST ENRICHMENT AND FOR BREACH OF THE IMPLIED
        COVENANT OF GOOD FAITH AND FAIR DEALING ARE
        UNSUSTAINABLE .........................................................................21

VI.     PLAINTIFF'S COUNT FOR DECLARATORY RELIEF STATES NO
        SEPARATE CAUSE OF ACTION...........................................................22

VII.    THE COMPLAINT FAILS TO ALLEGE ANY VIABLE CLAIM AGAINST
        DEFENDANT HTA .........................................................................23

CONCLUSION.........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Agostino v. Quest Diagnostics,*
 256 F.R.D. 437 (D.N.J. 2009)..................................................................................16

*Amoco Production Co. v. Village of Gambell,*
 480 U.S. 531 (1987) ...............................................................................................20

*Ashcroft v. Iqbal,*
 556 U.S. 662, 129 S. Ct. 1937 (2009) ..............................................................8, 12

*Baker v. Inter National Bank, No. 08-5668,* 2012 U.S. Dist. LEXIS 6920 (D.N.J. Jan. 19,
 2012)........................................................................................................................16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, (2007) .......................................................8

*Berry v. Budget Rent A Car System, Inc.,*
 497 F.Supp.2d 1361 (S.D. Fla 2007)................................................................17, 18

*Castro v. NYT Television,*
 370 N.J. Super. 282 (App. Div. 2004)..............................................................19, 20

*Coffman v. Pruco Life Insurance Co.,*No. 10-CV-03663,
 2011 U.S. Dist. LEXIS 111484 (D.N.J. Sept. 29, 2011).......................................10

*Cox v. Sears Roebuck & Co.,*
 138 N.J. 2 (1994)............................................................................................15, 18

*Delaney v. American Express Co.,* Civ. No. 06-5134(JAP)*,*
 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2007).........................................11

*Demmick v. Cellco Partnership,*
 No. 06–2163, 2011 WL 1253733 (D.N.J. Mar. 29, 2011)  ....................................8

*Doherty v. Hertz Corp.,*
 2010 U.S. Dist. LEXIS 124714, No. 1:10-cv-00359 (NLH)(KMW) (D.N.J. Nov. 24,
 2010)......................................................................................................... 12, 13, 14

*Fink v. Ricoh Corp.,* 365 N.J. Super. 520 (Law Div. 2003).....................................16

*Frederico v. Home Depot,*
 507 F.3d 188 (3d Cir. 2007) ..................................................................................10

*Garcia v. Plaza Oldsmobile Ltd.,*
 421 F.3d 216 (3d Cir. 2005) ....................................................................................9

**Page(s)**

*Georgine v. Amchem Products, Inc.,*
  83 F.3d 610 (3d Cir. 1996), *aff'd sub nom.*, *Anchem Prods., Inc. v. Windsor*, 521 U.S.
  591 (1997) .......................................................................................................................... 9

*Gray v. Bayer Corp., C.A.* No. 08-4716 (JLL),
  2011 U.S. Dist. LEXIS 79498 (D.N.J. July 21, 2011) ................................................... 16, 17

*In re PDI Sec. Litigation,*
  No. 02-CV-0211, 2005 U.S. Dist. LEXIS 18145 (D.N.J Aug. 16, 2005) ............................ 10

*Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.,*
  785 So. 2d 1232 (Fla. 4th DCA 2001) ............................................................................... 21

*Jones v. Morris County Corr. Facility,*
  No 06-cv-2461(DMC), 2007 U.S. Dist. LEXIS 27556 (D.N.J. April 13, 2007) ..................... 4

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, (1941) ..................................................... 9

*Kleinman v. Merck & Co.,*
  417 N.J. Super. 166 (Law Div. 2009) ................................................................................ 18

*Loigman v. Township Committee of Township of Middletown,*
  185 N.J. 566 (2006) .......................................................................................................... 20

*Nafar v. Hollywood Tanning Systems, Inc.,*
  339 Fed. Appx. 216, 2009 U.S. App. LEXIS 17561 (3d Cir. 2009) .................................... 16

*New Jersey Citizen Action v. Schering-Plough, Corp.,*
  367 N.J. Super. 8 (App. Div. 2003) .................................................................................... 18

*P.V. ex rel. T.V. v. Camp Jaycee,*
  197 N.J. 132 (2008) .......................................................................................................... 16

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008) ......................................................................................... 8, 10

*Port Authority of New York and New Jersey v. Arcadian Corp.,*
  189 F.3d 305 (3d Cir. 1999) ............................................................................................... 9

*Ramon v. Budget Rent-A-Car System, Inc.,*
  2007 U.S. Dist. LEXIS 11665 (February 20, 2007) ........................................................ 5, 10

*Rollins, Inc. v. Butland,*
  951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .......................................................................... 10

*Simonson v. Hertz Corp.,* No. 1:10-cv-1585 (NLH) (KMW),
  2011 U.S. Dist. LEXIS 32755 (D.N.J. Mar. 28, 2011) ................................................. 12, 13

**Page(s)**

*Slack v. Suburban Propane Partners, LP, No. 10-2548 (JLL),*
   2010 U.S. Dist. LEXIS 135530 (D.N.J. Dec. 22, 2010) ......................................................22

*Van Orman v. Am. Ins. Co.,*
   680 F.2d 301 (3d Cir. 1982) ............................................................................................21

*VRG Corp. v. GKN Realty Corp.,*
   135 N.J. 539 (1994)........................................................................................................21

*White Holding Co., LLC v. Martin Marietta Materials, Inc.,*
   423 Fed. Appx. 943 (11th Cir. Fla. 2011) .........................................................................21

*Wilson v. Amerada Hess Corp.,*
   168 N.J. 236 (2001).........................................................................................................21

STATUTES

Fed. R. Civ P. 12(b)(6)..........................................................................................................14

Fed. R. Civ. P. 12(d) ..............................................................................................................1

Fla. Stat. Ann. § 318.18(7). ..................................................................................................19

Fla. Stat. Ann. § 501.211 ......................................................................................................16

Fla. Stat. § 316.1001 .............................................................................................................19

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*
   ("FDUTPA")....................................................................................................................16

N.J.S.A. § 2A:56:8-19............................................................................................................16

New Jersey Consumer Fraud Act, N.J.S.A. §56:8-1, *et seq.* ("NJCFA") .....................................7

OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws. § 148(1) ................................................................16

## PRELIMINARY STATEMENT

This brief is submitted on behalf of defendants Avis Budget Group, Inc., its affiliate Avis Rent A Car System, LLC (collectively referred to herein as "ABG"), and Highway Toll Administration, LLC ("HTA") in support of their motion to dismiss[1] the Class Action Complaint filed by the putative class representative, Jose Mendez (referred to herein as "plaintiff" or "Mr. Mendez").

This case concerns ABG's "e-Toll" program which allows rental car customers to bypass highway cash-toll collection barriers and instead utilize electronic toll collection systems like EZ Pass.  According to the Complaint in this matter, Mr. Mendez rented a vehicle from ABG's Budget subsidiary in Orlando, Florida, on July 28, 2011.  At the time of the rental, Mr. Mendez alleges that he was not informed that the vehicle was equipped with electronic toll technology. He also claims he was not informed about the fees and charges associated with the e-Toll program.  Despite this alleged ignorance, Mr. Mendez elected to travel through an electronic toll lane (rather than a cash lane) while in Orlando, which triggered the e-Toll system and associated charges.  Now, Mr. Mendez seeks to represent a nationwide class of Avis and Budget car rental customers who were charged purportedly undisclosed fees and non-discounted tolls by ABG and its technology vendor, HTA.

Mr. Mendez' decision to evade payment of the cash toll does not give rise to any of the claims asserted in the Complaint.  In Count One of the Complaint, plaintiff attempts to plead a claim for breach of contract, but does not identify any provision of the rental agreement violated by ABG or HTA (which is not even a party to the rental agreement).  Rather, the gist of

---

[1]  To the extent reference by the Court to matters outside the pleadings are necessary to adjudicate one or more of the Counts at issue, defendants respectfully request that this motion be treated as one for summary judgment. Fed. R. Civ. P. 12(d).

plaintiff's claim is that the rental agreement did not disclose certain information, including the convenience fee associated with the e-Toll program.  However, the pleading itself begrudgingly acknowledges that the rental agreement contains the following clause:

> If you use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties.

(Complaint, ¶ 26, Exhibit A, Section 5).  In this case, ABG acted in accordance with the rental agreement.  By using the electronic toll lane, Mr. Mendez triggered an obligation to pay the toll and all related fees, charges and penalties, the amount of which were specified elsewhere in the rental agreement.

In Count Two, plaintiff purports to assert a claim under the New Jersey Consumer Fraud Act.  That claim is facially defective for two reasons.  First, the Act is not applicable to conduct occurring wholly outside the State of New Jersey.  Second, even if the Act applied, plaintiff here could not on the facts alleged establish that he suffered an ascertainable loss.  Rather, there is no doubt that the existence of the e-Toll program saved Mr. Mendez from substantial fines and penalties that would otherwise be imposed under Florida law to drivers who evade highway tolls by passing through an electronic toll lane without an e-Toll or similar device that can be read or scanned electronically.

The additional Counts in the Complaint are merely ancillary and do not provide any basis on which this matter can survive.  For example, Count Three attempts to assert a cause of action for injunctive relief – however that is a remedy, not a claim, which would be more appropriately included (if at all) in plaintiff's prayer for relief.  Counts Four and Five seek relief under theories of unjust enrichment and breach of the implied covenant of good faith and fair dealing.  Both of these claims, however, fail to state a claim for relief because the rental agreement and the associated contractual documents permit ABG and HTA to collect the toll amount and

convenience fee if the renter fails to use the cash lane.  Finally, the request for declaratory relief merely echoes all of the other causes of action and therefore fails just as they fail.

Even if a plausible cause of action is asserted against ABG (which is denied), the Complaint must be dismissed as to defendant HTA.  There is simply no actionable conduct ascribed to that entity.  HTA is merely alleged to be ABG's toll program vendor – it is not alleged to have had any direct dealings with Mr. Mendez.  As such, none of the Counts state a claim as to HTA.

As more fully presented below, this case boils down to an allegation that a rental car customer failed to read his rental agreement, and then blew through an electronic toll instead of using the cash lane, and now seeks to avoid paying the toll and the associated charges specified in the rental agreement. This is not conduct that should be rewarded nor does it present a viable claim requiring adjudication by this Court.

83893062.2

## STATEMENT OF FACTS

The facts set forth below are drawn primarily from the allegations contained in the Complaint, which are accepted as true solely for purposes of this motion. Additionally, facts are included which are contained in documents appended to, or referred within the Complaint.[2]

ABG is a Delaware corporation with its principal place of business located in Parsippany, NJ. (Complaint, ¶ 12). ABG operates and licenses car rental locations under the Avis and Budget brands throughout the United States. (*Id.*). In connection with its car rental operations, ABG offers an automatic toll payment service called "e-Toll." According to the Complaint, ABG rental cars equipped with e-Toll transponders allow rental car customers to bypass traffic and congestion at toll booths by using the electronic toll-collection lanes on toll roads, such as the E-ZPass lanes, without having to stop to pay tolls with cash. (*Id.* at 2). The e-Toll program is used on toll roads in several states throughout the country, including Florida. (*Id.* at 21).

The e-Toll system, as described by plaintiff, works by electronically identifying the Avis or Budget vehicles as they travel through electronic toll collection sites. The Complaint alleges that the transactions are captured and processed through, among other means, license plate recognition technology or through an electronic transponder device placed in the vehicle. (*Id.* at 23). The Complaint further asserts that defendant HTA is contracted by ABG to receive the data identifying the specific vehicle and tolls incurred on specific dates. ABG then, allegedly "without consumer consent," provides HTA with the personal identification and payment

---

[2] On a motion to dismiss, courts may consider limited categories of materials outside the complaint, including matters attached to the complaint, matters incorporated into the pleadings by reference, matters of public record and matters integral to or upon which plaintiff's claim is based. *Jones v. Morris County Corr. Facility*, 2007 U.S. Dist. LEXIS 27556 (D.N.J. April 13, 2007).

information of the customer, including the credit card information.  Later, HTA, "on its own or through Avis Budget charges the tolls and fees to the credit or debit card used to rent the vehicle."  (*Id.*)

According to the Complaint, ABG's pre-printed rental agreement "fails to identify e-Toll or HTA or specify the fees that will be incurred by renters for e-Toll."  (Complaint, ¶ 5).  This statement, however, is contradicted by later concessions in the Complaint itself, as well as by the documents appended to the Complaint and the other materials which comprise the full transactional record of Mr. Mendez's rental from Budget, all of which are appropriate for this Court to consider in connection with this motion.[3]

In any event, Mr. Mendez picked up his vehicle on July 28, 2011 at Budget's Orlando rental office and he executed a rental agreement at that time which consisted of a pre-printed rental agreement jacket and a signature form.  (Complaint, ¶ 34).  The rental agreement, which is appended to the Complaint, states under the section entitled "Rental Charges" that:

> If you use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties.

(Complaint, ¶ 26, Exhibit A, Section 5)(emphasis added).

A separate section of the rental agreement, entitled "Collections," identifies the related fees and charges that ABG will charge in connection with its collection of toll charges:

---

[3]   In another class action lawsuit filed in this District against Budget, the Court, on a motion to dismiss, determined that it was appropriate to consider not only the rental agreement, but also copies of Budget's website reservation pages since they were integral to plaintiff's complaint.  *Ramon v. Budget Rent-A-Car System, Inc.,* 2007 U.S. Dist. LEXIS 11665 *2, *7 (February 20, 2007).  Budget's website includes detailed descriptions of the e-Toll program. http://www.budget.com/budgetWeb/html/en/smartservices/etollfaq.html

> For toll charges you will be charged the standard non-discounted fee for tolls [sic] roads as published by the toll authority plus the convenience fee of $2.50 per rental day regardless of whether you use the e-Toll or not and up to $10.00 per week for the use of this service.

(*Id.* at Section 21). Once a customer incurs a toll charge instead of paying cash for the toll (so AGB receives and processes the charge), he or she will be charged the non-discounted toll amount plus the convenience fee, which was then $2.50 per rental day and up to $10 per rental week.

In addition to the general terms above, which are contained in the pre-printed rental jacket, Mr. Mendez executed an additional page setting forth specific rental terms. Among other things, Mr. Mendez agreed in that rental document that Budget "may bill all charges, parking/traffic tickets included, to the card I use for payment, without additional signature by me on a voucher." (Complaint, Exhibit B). Such a clause would be necessary because certain chargeable activity by the renter, like parking tickets or toll charges, would not be known to Budget until after the vehicle is returned and the rental concluded.

At some point during his rental, Mr. Mendez passed through an electronic toll lane in Orlando, FL which "triggered the operation of the e-Toll toll paying system to pay the toll." (*Id.* at 36). The Complaint does not specify whether Mr. Mendez' rental vehicle was equipped with an electronic transponder device or whether license plate recognition technology was employed. At the conclusion of his rental, Mr. Mendez returned the vehicle at which point "Budget's agent advised Plaintiff that there were no additional charges." (*Id.* at 37). Later, Mr. Mendez learned that his Visa credit card was billed $15.75. He contacted Budget and was allegedly told that the

charge included a $15.00 convenience fee for use of the e-Toll system during his nine day rental and a $.75 toll charge.  (*Id.* at 38).

Plaintiff filed this Action on November 7, 2011.  In it, plaintiff, on behalf of himself and a putative nationwide class comprised of all persons who rented vehicles enabled with e-Toll during some unspecified period of time, purports to assert six causes of action.  In Count I, plaintiff claims that both ABG and HTA breached the rental agreement by imposing the e-Toll related fees and charges and by transmitting plaintiff's personal and financial information to HTA.  In Count II, plaintiff asserts that ABG and HTA violated the New Jersey Consumer Fraud Act, N.J.S.A. §56:8-1 *et. seq.* ("NJCFA"), by allegedly engaging in unconscionable commercial practices or deceptive acts or practices.  Count III is a demand for injunctive relief against ABG. Count IV attempts to assert a claim for unjust enrichment and seeks disgorgement of "unjustly retained profits."  Count V purports to assert a claim for breach of the implied covenant of good faith and fair dealing.  Finally, Count VI contains a request for declaratory relief as to whether ABG may charge e-Toll convenience fees and tolls charges above those actually incurred.

83893062.2

# ARGUMENT

## I.

## DEFENDANTS ARE ENTITLED TO DISMISSAL PURSUANT TO RULE 12(b)(6) BECAUSE THE COMPLAINT FAILS TO STATE ANY CLAIM

Plaintiff's Complaint must be dismissed because it fails to state any viable claim. For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the *Iqbal* plausibility standard is not a "probability requirement," it requires more than a sheer possibility that a defendant has acted unlawfully. *Demmick v. Cellco P'ship*, No. 06–2163, 2011 WL 1253733, at *2 (D.N.J. Mar. 29, 2011) (Linares, D.J.). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

As set forth below, none of the Counts contained within the Complaint states a viable cause of action under this standard.

## II.

### PLAINTIFF AGREED TO PAY THE FEES AND CHARGES ASSOCIATED WITH THE E-TOLL PROGRAM UNDER THE EXPRESS TERMS OF THE RENTAL AGREEMENT

The Complaint does not identify any particular provision of the rental agreement that was breached by defendants.  Instead, at its core, plaintiff's breach of contract claim contends that he "did not contract for the e-Toll service or to pay e-Toll fees."  (Complaint, ¶ 63).  This allegation is, however, contradicted by the express terms of the signed rental agreement and therefore cannot form the basis for a claim for breach of contract.

The rental agreement between the parties does not contain a choice of law clause.  This Court, sitting in diversity, therefore must determine the substantive law applicable to plaintiff's breach of contract claim, and each claim at issue in this case.  *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub. nom, Amchem Prods. V. Windsor,* 521 U.S. 591 (1977).(court must apply an individualized choice of law analysis to each of plaintiff's claims). In so doing, this Court looks to the choice of law rules of the forum state in which it sits.  *Garcia v. Plaza Oldsmobile Ltd.,* 421 F.3d 216, 219 (3d Cir. 2005)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)).  "Under New Jersey law, when the same result – dismissal of a complaint – is required under the laws of all relevant jurisdictions, the court need not decide which law would apply to the action," *Port Authority of N.Y. and N.J. v. Arcadian Corp.,* 189 F.3d 305, 311 (3d Cir. 1999).  In this case, whether controlled by New Jersey or Florida law, plaintiff's breach of contract claim should be dismissed.

Under New Jersey law, to survive a motion to dismiss a breach of contract claim, a plaintiff must show: (1) a contract between the parties; (2) breach of that contract; (3) damages flowing from the breach; and (4) that the party stating the claim performed its own contractual

obligation. *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). In Florida, to maintain a breach of contract, the required elements are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006).

As a matter of federal pleading rules, a breach of contract claim cannot survive if it is contradicted by the actual contractual language. While it is axiomatic that a court must accept factual allegations in a complaint on a motion to dismiss as true, *Phillips v. County of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008), a court does not have to accept a plaintiff's allegations as to the provisions of an agreement as true if such allegations are contradicted by the terms of the agreement. *Coffman v. Pruco Life Ins. Co.*, 2011 U.S. Dist. LEXIS 111484 (D.N.J. Sept. 29, 2011). "[W]hen allegations contained in a complaint are contradicted by the document it cites, the document controls." *In re PDI Sec. Litig.*, No. 02-CV-0211, 2005 U.S. Dist. LEXIS 18145 *66 (D.N.J Aug. 16, 2005).

Here, Mr. Mendez signed the rental agreement that clearly states: "If you use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties." (Complaint, Exhibit A, Section 5). ABG (HTA is not a party to the agreement) acted consistently with this provision and nothing in the Complaint suggests otherwise. Mr. Mendez used the electronic toll system when he decided to drive through the automatic payment lane, rather than the cash lane. Pursuant to the express terms of the rental agreement, he was charged the "standard nondiscounted convenience fee as published by the toll authority" and the related fees and charges listed in the agreement. In such a case, no claim for breach can lie. *See, Ramon v. Budget Rent-A-Car System, Inc.*, 2007 U.S. Dist. LEXIS 11665 (D.N.J. February 20,

-10-

2007)(granting motion to dismiss breach of contract claim where defendant car rental company's refueling service charge was disclosed in rental agreement); *Delaney v. American Express Co.,* 2007 U.S. Dist. LEXIS 34699 (D.N.J. May 11, 2007)(dismissing breach of contract claim where defendant disclosed that its rate of interest upon renewal of annuity would be lower than the initial "bonus" interest rate paid).

This pleading defect cannot be cured by reference to other claimed "non-disclosures." The Complaint includes allegations that ABG:  (a) failed to disclose whether Mr. Mendez's vehicle was equipped with e-Toll technology; (b) failed to set forth the amount of the fees and charges and (c) failed to identify HTA.  (Complaint, ¶ 64).  These allegations either conflict with the rental agreement itself, or are legally immaterial.

While it is true that the pre-printed agreement itself did not say whether the specific vehicle rented by Mr. Mendez was equipped with automatic toll payment capability, it did state, and Mr. Mendez agreed, that if the vehicle was so equipped and toll charges were incurred, Mr. Mendez would be charged the fees specified in the agreement. In fact, the vehicle did have automatic toll payment capability and Mr. Mendez was charged the fees to which he agreed when he signed the rental agreement.

Mr. Mendez' allegation that he was not advised that the vehicle was equipped with an e-Toll transponder, even if true, is irrelevant to his breach of contract claim.  Because the contract did not require ABG to advise him whether vehicle was e-Toll capable, its alleged failure to advise him cannot support a breach of contract claim.  Moreover, the allegations in the Complaint suggest that Mr. Mendez did in fact know his vehicle was equipped with e-Toll technology.  Because Mr. Mendez later intentionally used an electronic toll payment lane, rather than a cash lane on an Orlando highway, (*Id.*, ¶ 36), he must have been aware that the toll was

-11-

being collected electronically.  Otherwise, Mr. Mendez would have been consciously violating the law obligating a driver to pay a highway toll.  Mr. Mendez's claim fails the plausibility requirement of *Iqbal*.

Nor can Mr. Mendez support the claim for breach by pleading that he was not informed of the basis of the $15.00 convenience fee that he was charged.  The rental agreement does in fact disclose how this charge is calculated.  In Section 21 of the rental agreement, the "convenience fee" for ABG receiving and processing toll charges is described as $2.50 per day. In addition, the agreement provides that the customer is responsible for the non-discounted toll amount.  (Complaint, Exhibit A, Section 21).  Contrary to the characterization in the body of the Complaint, these provisions are not concealed or hidden.  They are set forth in the same size type as most of the remainder of the agreement.  The fees are described in the paragraph headed "Collections" because they are only incurred if ABG receives toll charges that it must then collect from the consumer.

Finally, the fact that the rental agreement did not identify HTA does not give rise to a claim for breach of contract.  There was no contractual obligation imposed upon ABG to identify the vendors it uses to process toll data.  In any event, the rental agreement does make reference to the fact that ABG uses a "toll program administrator" and that the customer may be required to pay tolls and associated fees to that outside entity.  (Complaint, Exhibit A, Section 5).

The facts alleged in this case, and the terms of the rental agreement, are easily distinguished from those at issue in two recently decided cases in this district involving Hertz car rental.   *Doherty v. Hertz Corp.,* 2010 U.S. Dist. LEXIS 124714 (D.N.J. Nov. 24, 2010)("*Doherty*"), *Simonson v. Hertz Corp.,* 2011 U.S. Dist. LEXIS 32755 (D.N.J. March 28, 2011)("*Simonson*").   As alleged in *Doherty,* none of the rental documents signed by plaintiff

-12-

"ever mentioned PlatePass [Hertz's equivalent of e-Toll], automatic or electronic toll collection services, or a flat, per diem administrative fee." *Id.* at * 3-4.  Rather, as quoted by the Court, Hertz' rental agreement only provides in relevant part as follows:

> 13.a. PAY YOUR TICKETS/TOLLS IMMEDIATELY:  You will be responsible for and pay all parking or traffic violations fines and penalties, all towing, storage and impoundment fees and all tolls and tickets charged to the Car during the rental period.  You authorize Hertz to release your rental and charge card information to its designated vendor "American Traffic Solutions" for the exclusive purpose of processing and billing for fines, penalties and fees.
>
> * * * * *
>
> You authorize us to release your rental and charge card information to our designated vendor, American Traffic Solutions for the exclusive purpose of processing and billing tolls, parking or traffic violations fines and . . . penalties and related administration fees incurred during the term of your rental.

*Doherty* at *9-10.

In those two cases, putative class plaintiffs alleged that the rental agreement did not permit Hertz to charge an administrative fee merely for use of Hertz's electronic toll payment service.  Instead, they claimed that the administrative fee could only be imposed for whatever efforts would be necessary to collect an unpaid toll.  Moreover, plaintiffs alleged that the agreement did not allow collection of a toll amount in excess of that actually charged by the toll authority (the discounted toll afforded to users of electronic toll payment systems).  *Id.* at *11-12; *Simonson* at *4.  In those actions, Hertz filed motions to dismiss, arguing that the agreement countenanced its conduct.

Judge Hillman denied the motions to dismiss, concluding that a cause of action for breach of contract had been stated.  In reaching his conclusion, Judge Hillman pointed to the failure of the Hertz agreement to state that an administrative fee would apply whenever the driver availed

herself of the electronic toll system.  *Doherty* at *13.  Similarly, the Court in that case concluded that there was nothing in the contract "to suggest or state that Doherty would be responsible for a greater amount of tolls than the amount actually incurred by the electronic service that she utilized."  *Id.* at * 15.

As discussed above, theses shortcomings are not present in the Budget agreement at issue in this case.  The general terms set forth in the rental jacket supplied to Mr. Mendez clearly states "[i]f you use a car with automatic toll paying capability, you will pay us or our toll program administrator for all tolls incurred by you during your rental and all related fees, charges and penalties."  (Complaint, Exhibit A. Section 5) (emphasis added).)  The related fees and charges are listed in Section 21 which provides that in all cases, if ABG receives toll charges to be processed and charged to the consumer (whether because the consumer used e-Toll or failed to pay a toll), the consumer will be charged the "standard *non-discounted* fee for tolls [sic] roads as published by the toll authority," and a convenience fee of $2.50 per day (emphasis added).

The Budget agreement is therefore distinguishable from that presented in the Hertz cases.  The Budget agreement clearly tied use of the automatic toll paying system to a related fee – the Hertz agreement did not.  The Budget agreement specifically mentioned automatic toll paying systems and e-Toll by name – the Hertz agreement did not.  The Budget agreement disclosed the basis for the convenience fee – the Hertz agreement did not.  Finally, the Budget agreement expressly provided that the toll amount charged would be the non-discounted, published toll charge – the Hertz agreement did not.

Accordingly, because plaintiff's breach of contract claim is belied by the actual terms of the agreement itself, Count I is subject to dismissal under Rule 12(b)(6).

**III.**

**PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT.**

Count II of the Complaint purports to allege a cause of action under the NJCFA by claiming that defendants "consciously omitted material facts from the Rental Agreement with respect to e-Toll and any charges and fees associated with e-Toll and the sharing of credit/debit card information." (Complaint, ¶ 72). This claim merely echoes the allegation that defendants breached the rental agreement and is therefore subject to dismissal for the reasons set forth above. However, even if the non-disclosure allegations are entertained in the context of the NJCFA, two independent grounds exist for dismissal. First, the NJCFA cannot be construed as having applicability to a transaction occurring wholly outside New Jersey's borders. Here, the rental transaction, and all of the alleged "unconscionable commercial practices" took place in Florida. Under the controlling choice of law analysis, New Jersey law simply does not apply to plaintiff's claim. Second, plaintiff's complaint fails to sufficiently allege that he suffered an ascertainable loss. Because plaintiff's car was e-Toll equipped, he avoided significant fines and penalties that would have applied to a driver that failed to pay a Florida highway toll. Moreover, the Complaint fails to describe with any particularity how the purported sharing of credit/debit card information resulted in any loss to plaintiff at all. These issues are further addressed below.

**A.    The NJCFA Does Not Provide A Cause of Action to a Transaction Occurring Wholly Outside the State of New Jersey.**

The NJCFA is one of the most stringent consumer protection statutes in the nation. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 14-15 (1994). It is therefore no surprise that efforts to expand the reach of this statute beyond the borders of New Jersey by way of class action litigation are numerous. Such an effort is not appropriate in this case.

-15-

As noted above, this Court looks to New Jersey's choice of law rules to determine which state's law governs each of the claims asserted in the action.  New Jersey employs a two-step choice of law analysis.  First, a court must determine whether an actual conflict of law exists.  If so, then the court must determine which state has the most significant relationship to the claim at issue.  *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143-44 (2008).  This Court has previously recognized that there is a distinction between the NJCFA and the consumer protection statutes of other states, including Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201, *et seq.* ("FDUTPA").  *Gray v. Bayer Corp.,* 2011 U.S. Dist. LEXIS 79498 * 9-10 (D.N.J. July 21, 2011) (*citing Fink v. Ricoh Corp.,* 365 N.J. Super. 520 (Law Div. 2003)).  One way in which the two acts differ is with respect to damages – the NJCFA provides for treble damages whereas the FDUTPA does not.  *Compare,* Fla. Stat. Ann. 501.211 (private litigant entitled only to actual damages) *and* N.J.S.A. 2A:56:8-19 (providing for treble damages under the NJCFA).  *See also, Baker v. Inter National Bank,* 2012 U.S. Dist. LEXIS 6920 * 20 (D.N.J. Jan. 19, 2012)(holding that availability of treble damages created conflict for choice of law analysis).

Since an actual conflict between the NJCFA and the FDUTPA exists, it is next necessary to analyze which state has the most significant relationship to the claim.  This process involves "weigh[ing] the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action."  *Nafar v. Hollywood Tanning Systems, Inc.,* 339 Fed. Appx. 216, 220, 2009 U.S. App. LEXIS 17561 * 11 (3d Cir. 2009).  The Restatement factors relating to a claim for fraud or misrepresentation have been applied to claims under the NJCFA.  *Id., see also Agostino v. Quest Diagnostics,* 256 F.R.D. 437 (D.N.J. 2009).  Section 148(1) of the Restatement (Second) of Conflict of Laws provides as follows:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Under these principles, the law of the State of Florida would apply to Mr. Mendez's rental transaction. Florida is the state where all of the alleged acts and omissions took place. Mr. Mendez was presented with and signed the Budget agreement at the Orlando office of Budget and obtained the vehicle from that location. (Complaint, ¶ 34). Mr. Mendez traveled through an electronic toll lane while in Florida. (*Id.*, at 36). The vehicle was returned to the Orlando location and it is there that Budget's representative purportedly told him that there were no additional charges. (*Id.* at 37).

The fact that Mr. Mendez is a New Jersey resident and that ABG's headquarters are located in New Jersey are not facts sufficient to overcome the predominant factors outlined in the Restatement test. This Court reached such a conclusion on a class certification motion in *Gray* where, although Bayer's headquarters were located in Morristown, NJ, it was determined that the NJCFA could not apply to the claims of out-of-state consumers. *Gray,* 2011 U.S. Dist. LEXIS 79498 at * 17-18. A similar conclusion was reached in *Berry v. Budget Rent A Car System, Inc.,* 497 F.Supp.2d 1361 (S.D. Fla 2007). In that case, a putative class representative filed a claim seeking application of the NJCFA to challenge a "cost recovery fee" charged by Budget. Plaintiffs in that case rented vehicles from Budget in Florida and North Carolina. After applying the Restatement factors under the "most significant relationship" test, the district court concluded that the law of the place of the rental transactions governed, rather than the NJCFA, despite the fact that Budget was headquartered in New Jersey. In reaching its decision, the court cited to the

fact that the alleged misrepresentations were made and received at each individual Budget rental center in Florida and North Carolina and that the "thing which is the subject of the transaction – the rental vehicle" was located in those states.  *Id.* at 1365.

In sum, plaintiff's claim under the NJCFA should be dismissed because that law is inapplicable to the rental transaction that is described in the Complaint in this case.

> **B.** **Plaintiff Suffered No Ascertainable Loss Where The e-Toll Program Prevented Plaintiff From Being Subject to Fines and Other Penalties for Failing to Pay a Highway Toll.**

Even if this Court were inclined to apply New Jersey law to Mr. Mendez's rental transaction, his claim under the NJCFA would still be subject to dismissal because there are insufficient allegations of ascertainable loss.

Three elements must be alleged in support of an NJCFA claim: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss."  *N.J. Citizen Action v. Schering-Plough, Corp.*, 367 N.J. Super. 8, 12-13 (App. Div. 2003).  Typically, an ascertainable loss occurs when a plaintiff receives something less than, and different from what they reasonably expected in view of a defendant's representations.  *Kleinman v. Merck & Co.*, 417 N.J. Super. 166 (Law Div. 2009).  Moreover, there must be a causal link between the alleged loss, and the defendant's unconscionable conduct.  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 23 (1994).

In this case, the fundamental claim asserted by plaintiff is that he was *not informed* about the e-Toll program or whether the car was even equipped with electronic toll paying capability. As a result, he claims he was charged the non-discounted toll amount plus the convenience fee. However, because the car rented by Mr. Mendez was, in fact, e-Toll equipped, he was saved from significant penalties that would have arisen from his failure to pay the highway toll.  Under

-18-

Florida law, the failure to pay a prescribed toll is considered a moving violation subject to a $100 fine and the potential assessment of points on the violator's license.  Fla. Stat. §316.1001, § 318.18(7).  These penalties far outweigh the convenience fee he was actually charged.

The allegation in this Complaint is that Mr. Mendez traveled through an electronic toll collection lane.  (Complaint, ¶ 36).  There is no allegation that he paid cash, and was charged by Budget anyway for a system he did not use.  Rather, if Mr. Mendez is to be believed, he made a conscious decision to travel on a toll highway, but not pay the toll.  Either Mr. Mendez knew the vehicle was e-Toll equipped, thereby undermining the entire theory of his claim, or he is a scofflaw.  In either case, Budget's commercial practices cannot be said to have caused an ascertainable loss.  The e-Toll program actually prevented Mr. Mendez from being subject to the fines and penalties that would have applied as a result of his own admitted conduct.

**C.**   **Plaintiff Fails to Allege an Ascertainable Loss With Respect to the ABG's Alleged Sharing of Credit/Debit Card Information with HTA.**

Count II of the Complaint also seeks to impose liability under the NJCFA as a result of ABG's transmission of "personal and financial information of Plaintiff and Class Members to HTA for the purpose of imposing undisclosed and improper e-Toll fees and charges." (Complaint, ¶ 62).  As noted earlier, the rental agreement informed Mr. Mendez that the tolls and related charges would be collected by Budget or its "toll program administrator."  He was therefore on notice that a third party could be involved in collecting such amounts.

Moreover, such sharing of information does not constitute conduct actionable under the NJCFA.  In *Castro v. NYT Television,* 370 N.J. Super. 282 (App. Div. 2004), plaintiffs were hospital emergency room patients who were filmed in connection with a reality television show. During their stay, plaintiffs executed consent forms authorizing their appearance on the show. Later, they challenged the consents and alleged, among other things, that the defendants'

-19-

purported violation of their privacy and confidentiality was improper under the NJCFA.  *Id.* at

295.  The court rejected the claim and dismissed the cause of action.  In so doing, the court

reasoned as follows:

> Plaintiffs' damage claims consist of intangible harm as a result of
> alleged invasions of their right to privacy and confidentiality
> regarding their medical care and treatment.  Such alleged harms do
> not result in and "ascertainable loss of moneys or property" that
> can support a private cause of action under the CFA.

*Id.*  Accordingly, any allegation that ABG's sharing of Mr. Mendez's "personal and financial

information" with HTA is not conduct to which the NJCFA is directed and the claim should be

dismissed with respect to this allegation.

## IV.

## PLAINTIFF'S COUNT FOR INJUNCTIVE RELIEF IS MORE PROPERLY CONSTRUED AS A PRAYER FOR RELIEF AND NOT A SEPARATE CAUSE OF ACTION.

In Count III of the Complaint, plaintiff seeks injunctive relief to prevent ABG from

continuing to charge customers under the e-Toll program.  (Complaint ¶¶ 79-86).  Plaintiff's

claim for injunctive relief should be dismissed.  An injunction is not a cause of action.  An

injunction is an equitable remedy.  *Loigman v. Township Committee of Township of Middletown*,

185 N.J. 566, 593 (2006); *Amoco Prod. Co. v. Vil. of Gambell*, 480 U.S. 531, 542 (1987).

Accordingly, a claimant must succeed on a substantive underlying claim, or have a likelihood of

success in the case of a preliminary injunction or TRO, in order to be entitled to an injunction.

As set forth above, there is no basis for plaintiff's substantive allegations based upon the

purported non-disclosure of the terms of the e-Toll program.  Accordingly, there is no

justification for an injunction and Count III should be dismissed.

**V.**

**BECAUSE DEFENDANTS WERE EXPRESSLY EMPOWERED BY THE SIGNED CONTRACT TO CHARGE A CONVENIENCE FEE, THE CLAIMS FOR UNJUST ENRICHMENT AND FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ARE UNSUSTAINABLE.**

Counts IV and V seek to plead claims for alternative relief under theories of unjust enrichment and breach of the implied covenant of good faith and fair dealing, respectively. Such claims are unsustainable on their face because, as set forth above, the rental agreement expressly permitted ABG to charge plaintiff for his use of the e-Toll program.

In order to support a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (citations omitted). Where a party has a contractual right to take the action alleged, no claim for unjust enrichment lies. *Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 310 (3d Cir. 1982)("recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties"); *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 Fed. Appx. 943, 946 (11th Cir. Fla. 2011) ("[T]he equitable remedy of unjust enrichment is not available to prove entitlement to relief if an express contract exists."). Similarly, under both New Jersey and Florida law, the implied covenant of good faith and fair dealing cannot be invoked to override the express terms of the agreement between the parties. *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 244 (2001); *Insurance Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).

In this case, plaintiff's claims for unjust enrichment and breach of the implied covenant are unsustainable because the agreement expressly provided that ABG could charge Mr. Mendez

-21-

if he used a vehicle equipped with e-Toll.  That is exactly what occurred.  ABG provided a service which enabled Mr. Mendez to avoid traffic and congestion in a cash toll lane.  Mr. Mendez did, in fact, enjoy the benefits of e-Toll by traveling in an electronic toll lane during his visit.  As a result, ABG is entitled to the fees and charges associated with that service as set forth in the parties' contract.  *See, Slack v. Suburban Propane Partners, LP,* 2010 U.S. Dist. LEXIS 135530 *28-32 (D.N.J. December 22, 2010)(holding that class representatives' claim for unjust enrichment not actionable where services were provided pursuant to parties' agreement).

## VI.

### PLAINTIFF'S COUNT FOR DECLARATORY RELIEF STATES NO SEPARATE CAUSE OF ACTION.

Count VI of the Complaint is duplicative of all other Counts.  In it, plaintiff seeks a declaration as to whether ABG may charge e-Toll convenience fees and non-discounted toll charges.  Beyond the obvious retort that parties may freely contract with each other for services such as those at issue here, the fate of this Count mirrors the fate of the breach of contract and NJCFA claims.  Specifically, if, as argued above, ABG has neither breached the rental contract nor violated the NJCFA by charging Mr. Mendez for the e-Toll services, then the claim for declaratory judgment is moot.

**VII.**

**THE COMPLAINT FAILS TO ALLEGE ANY VIABLE CLAIM AGAINST DEFENDANT HTA.**

Even if this Court were to determine that the Complaint alleges one or more viable claims against ABG, the claims against HTA still should be dismissed.  In short, HTA is not alleged to have engaged in any actionable conduct.

All of Plaintiff's claims are premised upon the information that was disclosed or omitted from the rental agreement. That agreement is between Mr. Mendez and ABG.  There is no allegation that HTA is a party to the agreement or even had any role in drafting the agreement. HTA's inclusion in this case makes no logical or legal sense.  The entirety of the allegations against HTA are as follows:

- HTA is a New York based company that provides electronic toll payment services to the car rental industry.  (Complaint, ¶ 13, 15);

- HTA contracted with ABG in 2006 to equip rental cars with transponders so that they can be used with ABG's e-Toll service.  A substantial number of ABG's rental vehicles are equipped with HTA devices.  (*Id.* at ¶ 2-4, 14, 20);

- HTA, acting as ABG's agent, receives the toll data from the toll authority and matches it with customer credit/debit information provided by ABG to calculate the tolls and additional charges.  (*Id.* at 23);

- Customers are charged by "Avis Budget and/or HTA" for payment of fees and tolls after they turn in the vehicle.  (*Id.* at ¶ 5).

The Complaint makes no allegation of any direct interaction between HTA and Mr. Mendez.  In fact, the Complaint does not even state that HTA was involved in charging Mr. Mendez's credit card, rather, the pleading states that Mr. Mendez "called Visa and was told that the charge was from Budget." (*Id.* at ¶ 38).

In a case such as this, where there is no allegation of a contractual relationship, nor there any allegation that HTA made a misrepresentation or omission to the plaintiff, the claims

83893062.2

asserted against HTA should be dismissed, regardless of the Court's disposition of the claims against ABG.

## **CONCLUSION**

For all the reasons set forth above, defendants Avis Budget Group, Inc., it affiliates Avis Rent A Car System, LLC, and Highway Toll Administration, LLC respectfully request that their motion to dismiss the complaint of plaintiff Jose Mendez, in his individual capacity and as representative of the putative class, be dismissed with prejudice.

DAY PITNEY LLP
Avis Budget Group, Inc.
Avis Rent A Car System, LLC
Highway Toll Administration, LLC

By:_____s/Paul J. Halasz_____
          PAUL J. HALASZ
          A Member of the Firm

Dated:  February 3, 2012

83893062.2