**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE MENDEZ, Individually and On Behalf Of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP, INC., et al.,<br><br>　　　　　　Defendants. | Civil Action No.: 11-6537 (JLL)<br><br>**OPINION** |

This matter comes before the Court by way of Defendants Avis Budget Group, Inc., its affiliate Avis Rent-A-Car System, LLC (collectively, "ABG") and Highway Toll Administration, LLC ("HTA") (collectively, the "Defendants") Motion to Dismiss the Class Action Complaint filed by the putative class representative, Jose Mendez ("Plaintiff"). [Docket Entry No. 17]. The Court has considered the submissions of the Parties in support of and in opposition to the instant motion, and decides the motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons stated herein, Defendants' Motion is denied.

## I. BACKGROUND

The following facts are accepted as true for purposes of the instant Motion. Plaintiff, a resident of New Jersey, brings this action on behalf of a nationwide class of natural persons and business entities that rented vehicles enabled with e-Toll from locations owned and operated by Avis Budget or its licensees, or from online websites who were charged non-discounted toll charges and convenience fees in connection therewith. (Compl., ¶¶ 1, 45). Defendant Avis

Budget is a Delaware limited liability company with its principal place of business and North American headquarters located in Parsippany, New Jersey. (Id., ¶ 12). Avis Budget is a provider of vehicle rental services in North America through its own rental locations, its licensees, and the internet. (Id.). Defendant HTA is a privately owned company based in Great Neck, New York, and is in the business of supplying and administering the e-Toll automated toll collection service. (Id., ¶¶ 13, 15).

Since at least 2006, Avis Budget and HTA have had a contractual agreement to jointly offer and implement the e-Toll system utilized in Avis Budget rental vehicles. (Id., ¶ 20). E-Toll is an automatic toll payment service which allows rental car customers to bypass traffic and congestion at toll booths by using the electronic toll-collection lanes of toll roads, such as the E-Z Pass system, without having to stop to pay tolls with cash. (Id., ¶ 2). The e-Toll system works by electronically identifying Avis Budget vehicles as they travel through electronic toll collections sites by: (1) capturing and processing said vehicles through recognition of their respective license plate numbers; or (2) capturing and processing said vehicles through an electronic transponder device located inside the vehicles themselves. (Id., ¶ 23). Once the vehicle is identified as one of Avis Budget's rental vehicles, Defendant HTA receives said identifying data along with data regarding any tolls incurred on specific dates, matches the toll and car data to Avis Budget customers provided to them by Avis Budget, calculates the toll charges electronically, and later charges tolls and fees to the credit or debit card used to rent the vehicle from Avis Budget. (Id.).

Avis Budget car rental customers execute standardized rental contracts with Avis Budget in order to rent a car, and those contracts, drafted by Avis Budget, spell out the terms, charges

2

and conditions of the rental arrangement. (Id., ¶ 24).   The pre-printed Rental Document Jacket

(see Compl., Ex. A, "Rental Document Jacket") sets forth the "Terms and Conditions" of the

rental arrangement, and said Terms and Conditions, the rental document ("Rental Document"),

and a return record constitute the "Rental Agreement." (Id.). Section 5 of the Terms and

Conditions is entitled "Rental Charges," and states that "If you use a car with automatic toll

payment capability you will pay us or our toll program administrator for all tolls incurred during

your rental and all related fees, charges and penalties." ("Rental Document Jacket," ¶ 5).

Section 21 of the Terms and Conditions is entitled "Collections" and provides as follows:

> If you do not pay all amounts due to us under this agreement upon demand, including all
> charges, fees and expenses, including, without limitation, payment for loss of or damage
> to the car, rental charges, parking and traffic fines and penalties, toll charges, towing,
> storage and impoundment fees, you agree to pay a late charge of 1 ½% per month on the
> past due balance or the highest rate permitted by applicable law, whichever is less
> (collectively, "Charges"). For toll charges you will be charged the standard non-
> discounted fee for tolls roads as published by the toll authority, plus the convenience fee
> of $2.50 per rental day regardless of whether you use e-Toll or not and up to $10 per
> week for the use of this service.  You agree to also pay for any costs that we incur in
> seeking to collect such Charges . . . In the event that you presented a credit or debit card
> for payment, you understand that we may report such deficiency to an appropriate credit
> reporting agency and you also authorize us to share that credit and debit card information
> with third party collection agents and further authorize us or our collection agents to
> charge any amounts due to us including, but not limited to, the Charges and Costs
> referenced above, to that credit or debit card.

("Rental Document Jacket," ¶ 21).  Neither the Rental Agreement nor any other document signed

by Plaintiff states that the specific vehicle to be rented comes pre-equipped and pre-enrolled with

e-Toll, and HTA is not identified by name in the Rental Agreement or other document. (Compl.,

¶ 25; see "Rental Document Jacket").

Sometime before July 28, 2011, Plaintiff reserved a rental vehicle from Budget in his

home state of New Jersey with his Visa credit card for rental vehicle he planned to use during his

3

trip to Florida. (Id., ¶ 33). On or about July 28, 2011, Plaintiff traveled from New Jersey to

Orlando International Airport, picking up the vehicle he had previously reserved at the airport

Budget office, and signed the Rental Document. (Id., ¶ 34). Plaintiff leased the vehicle from

July 28, 2011 to August 5, 2011. (Id., ¶33). Plaintiff asserts that, prior to, during, and following

his rental of his Avis Budget vehicle, he was never informed that: (1) his rental car may have

been equipped with an e-Toll automated toll-payment device; (2) his rental car was pre-enrolled

and activated for e-Toll; (3) renting a Budget rental car equipped with an e-Toll device would

automatically result in fees payable to Avis Budget and/or HTA; and (4) he, Plaintiff, would be

obligated to pay more than the actual toll charge incurred and would instead pay a non-

discounted rate. (Id., ¶ 35). Sometime between July 28, 2011 and August 5, 2011, Plaintiff's

Budget rental car passed through a toll lane in Orlando, Florida, which triggered the operation of

the e-Toll toll-paying system. (Id., ¶ 36). Plaintiff returned the Budget rental car on August 5,

2011 at the Orlando Airport location, and upon returning the car, a Budget agent advised Plaintiff

that there were no additional charges. (Id., ¶ 37). In September 2011, after Plaintiff returned to

New Jersey from Florida, he received a Visa credit card statement which included a charge for

$15.75. (Id., ¶ 38). Plaintiff called Visa and was told that the charge was from Budget. (Id.).

Plaintiff then called Budget and was told that the car he had rented was enabled with e-Toll, and

that the $15.75 charge included a $0.75 toll charge and a $15.00 convenience charge for e-Toll.

(Id.). Plaintiff maintains that he was unaware of the facts and circumstances surrounding the

imposition of the e-Toll charges, and that Defendants had no legal or contractual right to collect

e-Toll convenience fees. (Id., ¶ 39). Further, Plaintiff claims that, upon information and belief,

Defendants not only gave HTA his credit card information without his consent, but they also

4

charged him a non-discounted e-Toll charge for which Avis Budget itself had the benefit of a discount, obtaining for itself as profit the difference between the non-discounted and discounted toll charge. (Id., ¶ 23).

Plaintiff filed his Class Action Complaint with this Court on November 7, 2011. [Docket Entry No. 1]. Defendants filed the instant Motion to Dismiss on February 3, 2012. [Docket Entry No. 17]. Plaintiff's Opposition was duly filed on March 5, 2012, and Defendants' Reply was filed on March 16, 2012. [Docket Entry Nos. 23, 28].

## II.  LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949  (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard is not akin to a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"; mere consistency with liability is insufficient. Id. In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949.  The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  During a Court's threshold review, "[t]he issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). In accordance with the adoption of the new Iqbal standard by the Supreme Court, the Third Circuit has held that the "no set of facts" standard set forth in Conley v. Gibson, 33 U.S. 41, 45-46 (1957), no longer applies to federal complaints. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). District courts now reviewing complaints for failure to state a claim must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. (citations omitted).

### III.  DISCUSSION

#### A.  Breach of Contract Claim

Defendants argue that Plaintiff's Complaint fails to identify any particular provision of the Rental Agreement that they are alleged to have breached, and that the Agreement expressly permits them to charge Plaintiff for tolls and administrative fees. (Defs. Br., at 9). Therefore, Defendants claim that, based on the facts pled in Plaintiff's Complaint, Defendants properly charged Plaintiff for use of the electronic toll payment service under the terms of the Rental Agreement. (Id., at 10-11).

Plaintiff, however, asserts that Defendants breached the contract when they charged him undisclosed administrative fees and charged him more than the tolls charged to the car. (Pl. Opp'n Br., at 9). For these reasons, Plaintiff contends, the Court should deny Defendants' Motion to Dismiss his breach of contract claim, or in the alternative, find that the Rental Agreement is unclear with any ambiguities to be resolved against the drafter, leaving any factual

6

questions as to the contract's proper construction and scope to a jury. (Id.).[1] Further, Plaintiff states that, even if the Court were to find that Budget sufficiently disclosed the "convenience" fee to Plaintiff in the "Rental Charges" or "Collections" provisions of the Rental Agreement, the fee is unconscionable and the provisions of the Agreement are unenforceable. (Id., at 16).

To establish a breach of contract claim in New Jersey, a plaintiff must show that: (1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result. Murphy v. Implicito, 920 A.2d 678, 689 (N.J. App. Div. 2007)(citation omitted). To establish a breach of contract claim in Florida, a plaintiff must show: (1) the existence of a contract; (2) a breach of said contract; and (3) damages resulting from the breach. See Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006).

As stated infra, the terms of the relevant document that Plaintiff signed which reference e-Toll charges are placed in two separate sections of the Rental Document Jacket. Those terms are as follows:

> **5. Rental Charges.** You will pay for the number of miles you drive and the period of time you rent the car at the rate indicated on the rental document. The minimum charge is one day (24 hours), unless "calendar day" is indicted on the rental document, plus mileage, or a fixed fee. . . . You'll pay all charges that apply to the rental for miscellaneous services and, where permitted, airport facility fees and/or concession recovery fees, vehicle license recovery fees, other fees and surcharges. . . . You and any third party to whom any rental charges are billed, such as an insurer or employer, are jointly and severally responsible for payment of all such charges. If you direct us to bill any such charges to a third party, you represent that you are authorized to do so. If you

---

[1] The Rental Agreement, submitted to the Court with Plaintiff's Complaint as Exhibit A, is both explicitly referenced in and integral to Plaintiff's Complaint and the Parties' submissions in support of and against the instant Motion. As such it may be properly considered by the Court without converting the motion to one for summary judgment under Fed. R. Civ. P. 56. See Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties.

. . .

**21. <u>Collections</u>. If you do not pay all amounts due to us under this agreement upon demand, including** all charges, fees and expenses, including, without limitation, payment for loss of or damage to the car, rental charges, parking and traffic fines and penalties, **toll charges**, towing, storage and impoundment fees, you agree to pay a late charge of 1 ½% per month on the past due balance or the highest rate permitted by applicable law, whichever is less (collectively, "Charges"). For toll charges you will be charged the standard non-discounted fee for tolls roads as published by the toll authority plus the convenience fee of $2.50 per rental day regardless of whether you use e-Toll or not and up to $10 per week for the use of this service. You agree to also pay for any costs that we incur in seeking to collect such Charges including, without limitation, court costs and attorney's fees in addition to any administrative fees, cost recovery, insufficient funds fees and collection fees (collectively, "Costs"). . . .

("Rental Document Jacket," ¶¶ 5, 21)(emphasis added).

The Court assumes, and Plaintiff does not contest, that the terms as stated in Section 5 of the Rental Document Jacket obligated Plaintiff to pay his own tolls, whether in cash or through the e-Toll transponder device furnished within Plaintiff's rental vehicle. Thus, the Court will assume that Plaintiff has acknowledged or would acknowledge that, if he did not pay any tolls incurred during his rental of the vehicle from Budget, he was obligated by contract to reimburse Defendants for the toll actually charged to the vehicle.

Having made that assumption, the Court construes Plaintiff's breach of contract claim to allege: (1) that the Rental Agreement only allowed Defendants to charge administrative fees when Plaintiff breached his obligation to pay tolls when due; (2) that the Rental Agreement only allowed Defendants to seek reimbursement for the tolls actually charged to the rental car without any additional upcharges; and (3) that the Rental Agreement did not allow Defendants to charge a fee even on those days that he did not use the electronic toll payment service. Thus, like other

8

cases brought before this Court alleging breach of contract claims against rental car companies and third-party administrators who had contracted with said companies, Plaintiff essentially alleges that he was overcharged for tolls and impermissibly billed for administrative fees in breach of the written agreement between the Parties. See, e.g., Doherty v. Hertz Corp., 2010 U.S. Dist. LEXIS 124714 (D.N.J. Nov. 24, 2010); Simonson v. Hertz Corp., 2011 U.S. Dist. LEXIS 32755 (D.N.J. Mar. 28, 2011). Specifically, Plaintiff asserts that the Rental Agreement did not permit Defendants to charge administrative fees just for his use of the electronic toll payment service, but rather only allows for fees to be imposed for any efforts that would be necessary to collect an unpaid toll as stated in the "Collections" section of the Agreement.

The Court agrees that a reading of the relevant contract provisions dealing with tolling charges support Plaintiff's contention of a colorable breach of contract claim. When reading the separate "Rental Charges" and "Collections" sections together, the Court finds it to be a reasonable interpretation of those provisions that Defendants could charge administrative fees only for the cost of collecting an unpaid toll whenever a customer breached his duty to pay for the toll himself, and not that a fee could be charged simply for the customer's use of the electronic toll payment service. This interpretation is reasonable not least because the section entitled "Rental Charges" explicitly lists toll charges that Budget customers would be charged for, but relegates the additional administrative fees that accompany said toll charges to the "Collections" section following a condition precedent–"If you do not pay all amounts due to us under this agreement . . . "–and labeled as charges or fees a customer should be on notice of if Budget is required to pursue a past due balance. The Court is not convinced by Defendants' argument that the "fees are described in the paragraph headed 'Collections' because they are only

9

incurred if ABG receives toll charges that it must then collect from the consumer" since all charges billed to Plaintiff, including the basic Rental Charge fee, were billed at the same time as the e-Toll tolling charge and administrative fees. (See Defs. Br., at 12). Further, since Defendants do not allege that Plaintiff failed to pay for his tolls, they did not have to undertake collection efforts themselves, and nothing in the contract indicates expressly or unequivocally that Plaintiff would be responsible for administrative fees merely for availing himself of the convenience of the e-Toll service. Therefore, Plaintiff asserts a colorable claim that the contract fails to provide adequate notice about the applicability of fees, the occasions on which said fees may be charged, and the mechanisms through which said fees may be charged, and as such, states a viable claim for breach of contract with respect to Defendants' billing of administrative fees. However, just as with other breach of contract claims reviewed in the context of e-Tolling charges under rental service agreements, Plaintiff's claim that he was impermissibly charged excessive fees on days he did not use the electronic toll payment service is redundant if he prevails on his claim that the contract did not allow for the imposition of any administrative fees whatsoever beyond the toll paid at the time of assessment. Doherty, 2010 U.S. Dist. LEXIS 124714, at * 13; Simonson, 2011 U.S. Dist. LEXIS 32755, at * 15. If Defendants prove that they were entitled under the contract to charge Plaintiff administrative fees, then the Court will assess the contract itself, the relative bargaining positions of the parties, and other principles of applicable contract law to determine what limits, if any, may be placed on the amount of fees and under what circumstances those fees may be addressed.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Defendants argue that, under New Jersey and Florida law, the implied covenant of good

faith and fair dealing cannot be invoked to override the express terms of an agreement between the parties. (Defs. Br., at 21). Defendants claim that, since the Rental Agreement expressly provided that Plaintiff would be charged if he used a vehicle equipped with e-Toll, he fails to state a claim for a breach of the implied covenant of good faith and fair dealing. (Id., at 20-21). Plaintiff, however, contends that, because the Defendants failed to disclose material facts concerning the e-Toll service, and Plaintiff was damaged as a result of that failure, Plaintiff has stated a viable claim. (Pl. Opp'n Br., at 30).

In New Jersey, every party to a contract is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract. See Wilson v. Amerada Hess Corp., 168 N.J. 235, 241 (2001)(holding that "[a] covenant of good faith and fair dealing is implied in every contract"); see also Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420-21 (1997); Restatement (Second) of Contracts, § 205 (1981)("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). A defendant "may be liable for a breach of the covenant of good faith and fair dealing even if it does not 'violat[e] an express term of the contract.'" Amerada Hess, 168 N.J. at 226 (quoting Sons of Thunder, 148 N.J. at 423). The covenant requires that neither party to a contract "shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 254 (App. Div. 2002)(quotations and quotation marks omitted). Further, proof of a party's "bad motive" or "intention" must support a claim of breach of contract grounded on an alleged breach of the implied covenant of good faith and fair dealing. See Reddy v. MedQuist, Inc., 2009 U.S. Dist. LEXIS 7541, at * 3 (D.N.J. Jan. 29, 2009)(quoting Amerada Hess, 168 N.J. at 251). At the core of determining

11

whether the implied covenant was breached is identifying the parties' reasonable expectations: "A good faith performance doctrine may be said to permit the exercise of discretion for any purpose–including ordinary business purposes–reasonably within the contemplation of the parties. . . . A contract . . . would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range–a reason beyond the risks assumed by the party claiming the breach." Amerada Hess, 168 N.J. at 246 (citations and quotations omitted). Florida contract law also recognizes the implied covenant of good faith and fair dealing in every contract. Ins. Concepts & Design, Inc. v. Healthplan Servs., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001). However, "a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." Hosp. Corp. of America v. Florida Med. Center, Inc., 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 4th 1998). The implied duty of good faith cannot be used "to vary the fully specified, unambiguous terms of a contract because the court is not at liberty to change the parties' bargain as to those terms." Meruelo v. Mark Andrew of the Palm Beaches, Ltd., 12 So. 3d 247, 250 (Fla. Dist. Ct. App. 4th Dist. 2009)(citation omitted).

Plaintiff's Complaint alleges that the "Rental Agreement was subject to the implied covenant that Avis Budget would conduct its business with Plaintiff in good faith and would deal fairly with him. Avis Budget breached this implied covenant by failing to disclose material facts concerning e-Toll and any charges and fees associated with e-Toll." (Compl., ¶¶ 94-95). Having found that Plaintiff has sufficiently alleged a breach of contract claim on the basis of the lack of notice provided under the express terms of the contract regarding administrative fees, the Court

12

agrees with Plaintiff that, whether or not express terms of the contract were violated, the lack of notice is sufficient to state a claim that Plaintiff's right to receive the fruits of the contract was injured.  Plaintiff also provides sufficient facts supporting a bad faith finding by asserting that Defendants: (1) failed to specify in the "Rental Charges" provision in the contract the amount per week or per day Plaintiff will be charged for getting a vehicle pre-equipped with e-Toll, or that enabling the e-Toll automated toll-payment service would trigger fees of $2.50 per rental day up to $10 per week; (2) placed the relevant administrative fee provision detailing the daily charges triggered by a single use of the e-Toll device in the "Collections" section of the contract as opposed to the "Rental Charges" section; (3) failed to inform Plaintiff upon pick-up of the rental vehicle of said fees; and (4) represented to Plaintiff, through Budget agent, that he need not pay any additional charges upon returning the car to Budget.  (Id., ¶¶ 26, 30, 38).  Thus, Plaintiff has sufficiently stated facts to allow his implied covenant of good faith and fair dealing to survive at this stage of the pleadings.

### C.  Unjust Enrichment Claim

Defendants claim that Plaintiffs cannot recover for an unjust enrichment claim as a matter of law since, where a party has a contractual right to take the action alleged, no claim for unjust enrichment lies.  (Defs. Br., at 21).  Further, Defendants argue that the toll-collection agency was entitled to the fees and charges associated with the services set forth in the Parties' contract.  (Id., at 22).  Plaintiff, however, states that Defendants accepted a benefit which enriched them beyond their contractual right through their use of unfair, unlawful, misleading and deceptive means as described in their Complaint.  (Pls. Opp'n Br., at 30; Compl., ¶¶ 90-91).  Those facts alleged include the imposition of fees in connection with automatic toll collections and upcharging on

13

discounted tolls.  (Compl., ¶ 4).

To state a claim for unjust enrichment, a plaintiff must show that "defendant(s) received a benefit and that retention of that benefit without payment would be unjust." Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382 (N.J. App. Div. 2009)(citation and internal quotation marks omitted).  Since unjust enrichment is "not an independent theory of liability, but is the basis for a claim of quasi-contractual liability," a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim. Id., at 384.  However, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts. See Fed. R. Civ. P. 8(d)(2)("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Therefore, at this stage of the pleadings, Plaintiff may plead alternative legal theories, but if the Rental Agreement is found void for lack of mutual assent or unconscionability, Plaintiff may only proceed with his unjust enrichment claim.  In the alternative, if a valid written contract existed on the terms Plaintiff claims, then the existence of this contract would prevent Plaintiff from recovering for quasi-contractual liability as asserted in an unjust enrichment claim. Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim is thus denied.

### D.  New Jersey Consumer Fraud Act Claim

Defendants argue that Plaintiff has failed to state a claim under the New Jersey Consumer Fraud Act ("NJCFA") for two reasons: (1) the NJCFA cannot be construed as having applicability to a transaction occurring wholly outside of New Jersey's borders; and (2)

14

Plaintiff's Complaint fails to sufficiently allege that he suffered an ascertainable loss as required under the NJCFA since the e-Toll charge allowed him to avoid significant fines and penalties that would have applied had he failed to pay a Florida highway toll and he fails to describe with particularity how the purported sharing of credit/debit card information resulted in a loss. (Defs. Br., at 15). Plaintiff first asserts that the Court's choice of law analysis favors the application of New Jersey's consumer fraud law since New Jersey has the "most significant relationship" to this case under the Restatement (Second) Conflict of Laws. (Pl. Opp'n Br., at 18-26). Plaintiff further claims that he has sufficiently pled ascertainable loss since he alleges suffering a definite, certain and measurable loss that is capable of calculation, namely, the undisclosed fees charged by Budget. (Id., at 26-27).

    1.  Choice of Law

    A federal court sitting in diversity applies the choice of law principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). In P.V. v. Camp Jaycee, the New Jersey Supreme Court held that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (N.J. 2008). New Jersey's "most significant relationship" test consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. Id., at 143 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007). However, if a conflict is found, the Court must weigh the factors enumerated in the Restatement

section corresponding to the plaintiff's cause of action, in this case, § 148 of the <u>Restatement</u>

<u>(Second) of Conflict of Laws</u> since Plaintiff's NJCFA claim sounds in fraud or

misrepresentation.  Section 148 contemplates two scenarios in which a plaintiff asserts a claim

for fraud or misrepresentation.  The first scenario involves misrepresentation claims in which the

alleged harm suffered by a plaintiff and the action in reliance of any false representations occur in

a single state.  The second scenario contemplated under § 148 is where a plaintiff's action in

reliance takes place in a state other than where the false representations were made.  <u>Restatement</u>

<u>(Second) of Conflict of Laws</u>, § 148 (1971).  In the first case, the Restatement provides as

follows:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the
> defendant's false representations and when the plaintiff's action in reliance took place in
> the state where the false representations were made and received, the local law of this
> state determines the rights and liabilities of the parties unless, with respect to the
> particular issue, some other state has a more significant relationship under the principles
> stated in § 6 to the occurrence and the parties, in which event the local law of the other
> state will be applied.

<u>Id.</u>, § 148(1).  In the latter case, where two or more states are involved, the Restatement provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than
> that where the false representations were made, the forum will consider such of the
> following contacts, among others, as may be present in the particular case in determining
> the state which, with respect to the particular issue, has the most significant relationship
> to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendants'
> representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of
> business of the parties,

16

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant.

Id., § 148(2).

The Parties agree that a conflict exists between the consumer fraud laws of New Jersey and Florida, where Plaintiff rented his vehicle from Budget. (Defs. Br., at 16; Pl. Opp'n Br., at 19). Courts have consistently recognized that conflicts exist between the NJCFA and the consumer protection statutes of other states. Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 461 (D.N.J. 2009); Fink v. Ricoh Corp., 365 N.J. Super. 520, 584 (Law. Div. 2003). For example, two significant differences between New Jersey's statute and other state statutes governing consumer protection is the treble damages remedy available under the NJCFA and the requirement that a plaintiff allege an ascertainable loss as a result of the unfair or deceptive practices alleged in an NJCFA claim. See, e.g., N.J.S.A. 56:8-19; Fla. Stat. Ann. 501.211 (private litigant only entitled to actual damages); Weinberg v. Sprint Corp., 173 N.J. 233, 237 (2002); Agostino, 256 F.R.D. at 462. Thus, the Court concludes that actual conflicts exist between the NJCFA and the consumer protection law of Florida.

In turning to the second prong of the "most significant relationship" test analysis, the Court must determine whether § 148(1) or § 148(2) should be applied to assess whether New Jersey or Florida has the most significant relationship to this matter. Defendants claim that, since Florida is the state where Plaintiff was presented with and signed the Budget agreement, where Plaintiff obtained his rental vehicle, where Plaintiff traveled through the electronic toll lane, where the vehicle was returned, and where a Budget agent allegedly informed him that there were

17

no additional charges, all of the alleged acts and omissions took place in one state, Florida, and thus the strong presumption established under § 148(1) applies in favor of Florida law. (Def. Br., at 17). Defendants contend that, even if the Court were to apply § 148(2) after finding that the facts of the case involve both New Jersey and Florida, Florida law should still apply since, out of the six factors listed under that subsection, only one factor clearly favors New Jersey–the state of Plaintiff's residence–and one factor, the place where the defendant made the representations, only arguably favors New Jersey. (Def. Reply Br., at 14). The other four factors favor Florida, they assert, since Plaintiff acted in reliance by entering into the Rental Agreement in Florida, Florida is where the tangible thing which is the subject of the transaction–the rental vehicle–is situated, and the Plaintiff rendered performance in Florida. (Id.).

Plaintiff, however, asserts that, under §§ 148(1) or (2), New Jersey law should apply. First, he contests Defendants' argument that all acts relevant for his consumer protection claim–acts of reliance, receipt of the false representation, and the making of the false representation–occurred in Florida. (Pls. Opp'n Br., at 19). Rather, Plaintiff contends that he is a New Jersey resident, he made his reservation with Budget using his Visa card in New Jersey prior to traveling to Florida, that the misrepresentations and omissions emanated from Budget in New Jersey, and that Plaintiff's injury, the pecuniary loss suffered after being charged with Budget's fees, "manifested itself" in New Jersey when he received his credit card bill there. (Id., at 20). Thus, Plaintiff asserts, there is a strong presumption that New Jersey law should be applied. In the alternative, Plaintiff argues that § 148(2) favors the application of New Jersey law because the factors listed under that subsection place more weight on New Jersey contacts. (Id., at 21-23). Specifically, Plaintiff claims that case law in New Jersey as stated in In re Mercedes-

18

Benz Tele Aid Contract Litig. prioritizes the third § 148(2) contact–the place where the defendant made the representations–over other contacts since New Jersey has a paramount interest in deterring wrongful activity on the part of corporations operating in New Jersey. (Id., at 22). Finally, since Plaintiff is a New Jersey resident, and Defendants made their representations to Plaintiff in New Jersey, New Jersey law should apply. (Id.).

The Court finds that, since Defendant Avis Budget directed its services to Plaintiff in New Jersey, his state of residence, and Plaintiff reserved his rental vehicle from Defendant in New Jersey, New Jersey is the place where he received at least some of the alleged false representations. See Restatement (Second) Conflict of Laws, § 148, comment g ("The place where the plaintiff received the representations. This is the place where the representations were **first** communicated to the plaintiff. This place constitutes approximately as important a contact as does the place where the defendant made the representations.")(emphasis added). District courts have found that, when a consumer makes a purchase or performs research regarding a purchase on the internet, representations pertaining to the terms of the product or services agreement are received in the state plaintiff purchased said product or services online. See, e.g., Millett v. Truelink, Inc., 2006 U.S. Dist. LEXIS 63875, at * 9-10 (D. Del. Sept. 7, 2006); see also Black v. Toys 'R Us–Del., Inc., 2010 U.S. Dist. LEXIS 119460, *37-38 (S.D. Tex. Nov. 10, 2010). However, Plaintiff signed the Rental Agreement and rented a vehicle from Defendant for use in Florida, so the place where Plaintiff acted in reliance on Defendant's representations is at least in part in the State of Florida. Therefore, since the Plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, § 148(2) should be applied to resolve the actual conflict between the consumer fraud laws of New Jersey

19

and Florida.

The Court further finds that, under the requisite analysis set forth in § 148(2), the relevant factors weigh in favor of applying New Jersey's consumer fraud law. First, as stated _infra_, the second factor, factor (b)–the place where the Plaintiff received the representations–favors New Jersey contacts. While Defendant Avis Budge signed the Rental Agreement with Plaintiff in Florida, the Court finds that, since Avis Budget had its principal place of business in New Jersey and allowed reservation and rental of their vehicles from New Jersey, and since Plaintiff in fact reserved his rental vehicle in New Jersey, the third factor under § 148, factor (c)–the place where the defendant made the representations–is neutral as to whether New Jersey or Florida law should apply. The sixth factor, factor (f), is also neutral as to whether New Jersey or Florida law should apply since Plaintiff rendered performance under the contract in both Florida and New Jersey: his obligations under the Rental Agreement were triggered in Florida when he passed through a Florida toll, but he received his bill in New Jersey and made his payment for the services which were the subject of the bargained-for exchange with Defendant from his New Jersey billing address. Defendant concedes that factor (d) favors the application of New Jersey law as it is the domicile and residence of the Plaintiff, and the Plaintiff's residence is more important than Defendants' for the purpose of determining which state's laws apply. (Defs. Reply Br., at 14); see Restatement (Second) Conflict of Laws, § 148, comment i ("The plaintiff's domicil or residence, if he is a natural person . . . are contacts of substantial significance when the loss is pecuniary in nature, as is true of the situations covered by the rule of this Section. This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship. . . . The domicil, residence and place of business of

20

the plaintiff are more important than are similar contacts on the part of the defendant."). Further, New Jersey is the location of the principal place of business and headquarters of ABG. (Compl., ¶ 12; Defs. Reply Br., at 17).

The only factor wholly favoring the application of Florida law is factor (e), the place where the tangible thing which is the subject of the transaction between the parties, in this case, the rental vehicle, was situated at the time.   Plaintiff does not contest that the rental vehicle was situated in Florida throughout the duration of the period of the facts alleged in the Complaint. (Pls. Opp'n Br.,19-23).   However, factor (a)–the place where plaintiff acted in reliance upon the defendant's representations–was not limited to Florida.  Plaintiff first received representations regarding the rental from Defendants in New Jersey when he reserved the rental vehicle, signed the Rental Agreement in Florida at least in part based on those representations made in New Jersey, was told in Florida that no additional charges would issue by a Budget agent in Florida, but subsequently returned to New Jersey and received his credit card bill with the additional charges in New Jersey, relinquishing said assets there while assuming that no additional charges had been assessed against him by Defendants.   Therefore, Plaintiff's reliance on Defendant's representations regarding the fees occurred in both states, and thus factor (a) is neutral.  See Restatement (Second) Conflict of Laws, § 148, comment f ("The plaintiff's reliance may take a variety of forms.  He may rely by relinquishing assets, which may be tangible or intangible. . . . The assets may . . . be relinquished at one or more times in a single state or they may be relinquished in two or more states. . . . Plaintiff's action in reliance may take place entirely in one state or it may take place in two or more states, such as when he enters into a contract with the defendant in state X and then pursuant to the terms of the contract relinquishes assets in state Y.

Plaintiff's action in reliance provides a more important contact when it is confined to a single state than when it is divided among two or more.").

The relative importance of the facts in a given case should be determined in the light of the choice-of-law principles stated in § 6 of the Restatement (Second) Conflict of Laws with emphasis upon the purpose sought to be achieved by the relevant tort rules of the potentially interested states, the particular issue and the tort involved.   Restatement (Second) Conflict of Laws, § 148, comment e.  The New Jersey Supreme Court has articulated five principles underlying § 6: "(1) interstate comity; (2) the interests of the parties; (3) the interests underlying the substantive body of law; (4) the interests of judicial administration; and (5) the competing interests of the states."  Erny v. Estate of Merola, 171 N.J. 86, 101-02 (2002)(quoting Fu v. Fu, 160 N.J. 108, 122 (1999)); see also Restatement (Second) Conflict of Laws, § 6.  The interests of interstate comity favor the application of the law of the Plaintiff's state of residence.  Fink, 365 N.J. Super. at 585.  Second, while the interests of the parties "is of extreme importance in the field of contracts," it "plays little or no part in a choice-of-law question in the field of torts," and this is an action for consumer fraud.  Fu, 160 N.J. at 123 (quoting Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 199 (1998)).  Third, the interests underlying the substantive body of law–the consumer fraud protection statutes of New Jersey and Florida, respectively–are the respective states' interest in protecting consumers from injuries "caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws," so the competing interests of Florida and New Jersey may be resolved in favor of the interests underlying consumer protection law in New Jersey since there are no Florida residents seeking to enforce their own state's consumer protection laws.  In re Ford Motor Co., 174 F.R.D. at 348.  The fourth

22

factor does not alter the Court's analysis as stated _infra_ since the New Jersey Supreme Court has found that the interests of judicial administration factor "must yield to strong state interests implicated by the remaining factors." _Fu_, 160 N.J. at 124. To conclude, interpreting the contacts as weighted in § 148(2) in light of the choice-of-law principles stated in § 6 favors the application of the consumer fraud statute of Plaintiff's home state, New Jersey.

### 2. Plaintiff's NJCFA Claim

Having found that the NJCFA applies, the Court will now assess the sufficiency of Plaintiff's NJCFA claim based on the facts alleged in his putative Class Action Complaint. Defendants argue that Plaintiff's NJCFA claim must fail as he has not sufficiently alleged that he has suffered an ascertainable loss. (Defs. Br., at 18). Specifically, Defendants state that, since Plaintiff entered a toll highway and would have had significant penalties had his rental car not been e-Toll equipped, he did not experience an ascertainable loss by being charged the relevant fees. (Id., at 19). Plaintiff contends that he has sufficiently alleged ascertainable loss since pleading requirements for ascertainable loss are lenient on a motion to dismiss, and Defendants' arguments concerning what penalties could have arisen are speculative and inappropriate. (Pls. Opp'n Br., at 28). Further, Plaintiff argues that he specifically stated the calculable loss that he incurred, namely the sum of the relevant e-Toll charges and fees in his bill from Budget. (Id.).

The NJCFA imposes liability on any person "who uses: 'any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment.'" Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 389 (N.J. 2007)(quoting N.J.S.A. § 56:8-2). To establish a prima facie case under

23

the NJCFA, a plaintiff must show: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. Id. Unlawful conduct may arise from an affirmative act, a knowing omission, or a violation of an administrative regulation. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). An affirmative act includes unconscionable commercial practices, deception, fraud and misrepresentation. Miller v. Am. Family Publishers, 284 N.J. Super. 67, 74 (N.J. Super. Ct. Ch. Div. 1995). For affirmative acts, intent is not a requisite element. Id. However, to prove a knowing omission, "intent is an essential element. There must be proof that the defendant acted knowingly, with intent that another rely on such concealment . . . or omission." Id. To establish ascertainable loss, a plaintiff "must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009); see also Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)(evidence of ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment"). The ascertainable loss requirement has been interpreted by the New Jersey Supreme Court "in terms that make it equivalent to any lost benefit of the bargain." Bosland, 197 N.J. at 558 (internal quotations and citations omitted). In interpreting the NJCFA, courts have been instructed to "be faithful to the Act's broad remedial purposes . . . . [and] construe the [Act] broadly, not in a crabbed fashion." Id., at 555-56 (citations omitted).

In Plaintiff's Complaint, he argues that Defendants' conduct was unlawful since Defendants: (1) charged Plaintiff for undisclosed administrative fees, a knowing omission which would require a showing of Defendants' intent; or (2) misrepresented the applicability of those

fees, an affirmative act.  Since the Court finds that Plaintiff's Complaint sufficiently alleges the

requisite intent and knowledge to establish a knowing omission, it finds that Plaintiff's

Complaint has sufficiently alleged facts supporting either theory.  First, when Plaintiff executed

the Rental Agreement, Defendants are alleged not to have disclosed to him that his rental vehicle

was pre-enrolled and pre-activated with the e-Tolling device.  Second, Plaintiff states that

Defendants did not inform him of any administrative per diem fees associated with e-Toll or that

an administrative fee would incur on days he did not utilize e-Toll within the terms of the

"Rental Charges" portion of the Agreement.  This lack of clear and comprehensive disclosure of

a per diem administrative fee, when Defendants were aware that such a charge would occur, for

example, may demonstrate Defendants' intent or knowledge to conceal or omit a material fact by

hiding it in a separate section of the Agreement.  Plaintiff has also pled sufficient facts to show

that Defendants' misrepresentations regarding e-Toll and the per diem administrative fee were an

affirmative act since he alleges that the Rental Agreement was presented to and signed by him,

that the "Rental Charges" section of the Agreement stated that he would be charged for tolls but

did not state that a per diem fee would be triggered by a single use of the e-Tolling device, and

that a Budget agent clearly stated that he was not obligated to pay any additional charges once he

returned the rental vehicle.  These facts combined may constitute an affirmative act of

misrepresentation.

     With respect to the sufficiency of Plaintiff's factual allegations regarding ascertainable

loss, the Court disagrees with Defendants that the clearly calculated charges and fees on

Plaintiff's Budget bill is not a definite, certain and measurable loss, rather than a merely

theoretical one.  See Doherty, 2010 U.S. Dist. LEXIS 124714, at * 22 (finding that plaintiff "has

shown an ascertainable loss by explaining the exact fees and charges that were allegedly undisclosed or misrepresented, but were still charged to her account."). Rather, the Court finds Defendants' contentions that Plaintiff may have suffered more pecuniary losses had his car not been equipped with the e-Tolling device both theoretical and misguided. Even if Plaintiff were to suffer a pecuniary loss at the hands of a third party, that would not exonerate Defendants from pecuniary harms they allegedly cost Plaintiff based on the facts as alleged. Further, just as the Court has found infra that Plaintiff has sufficiently alleged facts to support his breach of the implied covenant of good faith and fair dealing claim, which also requires a plaintiff to show that he lost a benefit of his bargain with a defendant, the Court finds here that the facts alleged and the fees charged may have the effect of injuring Plaintiff's right to receive the "fruits" of the Agreement. Finally, Plaintiff has asserted facts that show a causal connection between the unlawful conduct and the ascertainable loss when he stated that he was charged for non-disclosed and misrepresented fees and charges through the pretext of his Rental Agreement with Budget. For these reasons, the Court denies Defendants' Motion to Dismiss Plaintiff's NJCFA claim.

### E.  Plaintiff's Request for Injunctive and Declaratory Relief

In Count III of his Complaint, Plaintiff asks the Court to exercise its equitable jurisdiction and order Budget to permanently enjoin Defendants from engaging in the unlawful practices alleged therein. (Compl., ¶ 83, "Prayer for Relief," ¶ D). In Count VI of his Complaint, Plaintiff requests the Court's declaration of the respective rights, duties and any other relevant legal relations of the Parties with respect to the terms of the Rental Agreement. (Id., ¶¶ 99-100). Defendants argue that Plaintiff's count for injunctive relief is more properly construed as a prayer for relief and not a separate cause of action. (Defs. Br., at 20). Further, Defendants assert that

26

Plaintiff's count for declaratory relief states no separate cause of action and should be dismissed as duplicative of the other counts in Plaintiff's Complaint. (<u>Id.</u>, at 22). Plaintiff, however, claims that his claim for injunctive relief is premised on his claims for breach of contract and violations of the NJCFA, and as such, dismissal would be inappropriate. (Pls. Opp'n Br., at 29). Plaintiff states in addition that, since he has sufficiently pled his breach of contract and NJCFA claims, Defendants have failed to carry their burden in demonstrating that no claim for declaratory relief has been stated. (<u>Id.</u>). Since the Court finds that Plaintiff has sufficiently alleged the claims upon which the requests for injunctive relief and declaratory relief are premised, the Court declines to limit Plaintiff's access to these remedies at this stage.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's putative Class Action Complaint is DENIED. An appropriate Order accompanies this Opinion.

DATED: April 10, 2012

_____
Jose L. Linares
United States District Judge