# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSE MENDEZ, Individually and On Behalf Of All Others Similarly Situated, | : : : : | |
| *Plaintiff*, | : : | |
| vs. | : : | Civil Action No. 11-6537(JLL)(JAD) |
| AVIS BUDGET GROUP, INC. d/b/a BUDGET RENT A CAR SYSTEM, INC. and AVIS RENT A CAR SYSTEM, LLC; and HIGHWAY TOLL ADMINISTRATION, LLC, | : : : : : : | |
| *Defendants*. | : : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma
Jeremy Nash
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
jnash@litedepalma.com

**ABBEY SPANIER, LLP**
Judith L. Spanier
Nancy Kaboolian
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191
jspanier@abbeyspanier.com
nkaboolian@abbeyspanier.com

*Attorneys for Plaintiff and the Proposed Classes*

October 7, 2016

# TABLE OF CONTENTS

I.   INTRODUCTION .........................................................................1

II.  THE PROPOSED CLASSES .........................................................1

III. PERTINENT PROCEDURAL HISTORY .......................................3

    A.   Discovery Followed Defendants' Failed Dismissal Motion ................3

    B.   The March 20, 2015 Spoliation Order ...................................4

IV.  THE COMMON FACTS UNDERLYING THE CLAIMS ...........................5

    A.   The Parties ...................................................5

    B.   The eToll Service ...............................................6

    C.   The eToll Fee Structure During The Class Period ...........................7

    D.   Common Proof:  The ABG Contract ..................................8

    E.   Common Proof:  Defendants' Data....................................11

    F.   Common Proof: Intent, Bad Faith, and Causation ...........................12

    G.   Common Proof: Defendants' Other Misleading Statements ..............15

V.   ARGUMENT................................................................16

    A.   Plaintiff and This Case Satisfy the Four Rule 23(a) Requirements ....16

        1.   Joinder of all class members would be impracticable ..............16

        2.   There are questions of law or fact common to all class members ...................................................17

        3.   Plaintiff's claims are typical of the Class and Subclass Claims ...................................................19

        4.     Plaintiff will adequately protect the interests of the class ........20

              a.     Plaintiff's interests do not conflict with the class's
interests ...............................................................................20

              b.     Plaintiff's counsel is qualified ........................................22

    B.   Plaintiff and This Case Satisfy the Requirements of Rule 23(b)(3) ...22

        1.     Common questions of law or fact predominate .......................23

              a.     Common issues predominate because legal and factual
questions will be resolved with common evidence ........23

              b.     Defendants' defenses do not vitiate predominance ........36

        2.     A class action is superior to adjudicating thousands of separate
individual cases .........................................................................38

        3.     The members of the proposed classes are readily
ascertainable ..............................................................................39

VI.   CONCLUSION...........................................................................................40

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allstate N.J. Ins. Co. v. Lajara,*
    222 N.J. 129 (2015) ......................................................................37

*Am. Airlines v. Wolens,*
    513 U.S. 219 (1995).............................................................. 25-26

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)...............................................................23, 38

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013)................................................................24

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ...........................................................19

*Barnes v. Burger King Corp.,*
    932 F. Supp. 1420 (S.D. Fla. 1996)..............................................30

*Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.,*
    No. 99-cv-741 (JLL), 2006 U.S. Dist. LEXIS 64264
    (D.N.J. Sep. 7, 2006) ..................................................................39

*Berry v. Fed. Kemper Life Assur. Co.,*
    99 P.3d 1166 (N.M. 2004)...........................................................26

*Bosland v. Warnock Dodge, Inc.,*
    197 N.J. 543 (2009) ....................................................................34

*Boyko v. Am. Int'l Group, Inc.,*
    No. 08-2214 (RBK/JS), 2012 U.S. Dist. LEXIS 59125
    (D.N.J. Apr. 26, 2012) ................................................................26

*Chiang v. Veneman,*
    385 F.3d 256 (3d Cir. 2004) .......................................................37

*Cipollone v. Liggett Group*,
    505 U.S. 504 (1992)........................................................................26

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (1994) ........................................................................34

*Demmick v. Cellco P'ship*,
    No. 06-2163 (JLL), 2010 U.S. Dist. LEXIS 94041
    (D.N.J. Sept. 8, 2010) ....................................................... 20, 27, 39

*Dewey v. Volkswagen Aktiengesellschaf*,
    681 F.3d 170 (3d Cir. 2012) .........................................................21

*Doherty v. Hertz Corp.*,
    No. 10-359 (NLH/KMW), 2014 U.S. Dist. LEXIS 86792
    (D.N.J. June 25, 2014) ...........................................................14, 18

*Doherty v. Hertz Corp.*,
    No.:10-cv-00359 (NLH)(KMW), 2010 U.S. Dist. LEXIS 124714
    (D.N.J. Nov. 24, 2010) .................................................................14

*Galicki v. New Jersey*,
    No. 14-169 (JLL), 2016 U.S. Dist. LEXIS 126076 (D.N.J. Sep. 15, 2016) .34

*Globe Motor Co. v. Igdalev*,
    225 N.J. 469 (2016) ................................................................27, 36

*Gray v. BMW of N. Am., LLC*,
    22 F. Supp. 3d 373 (D.N.J. 2014).................................... 29, 31, 34

*Harnish v. Widener Univ. Sch. of Law*,
    No. 15-cv-3888, 2016 U.S. App. LEXIS 15007 (3d Cir. Aug. 16, 2016).....24

*Iliadis v. Wal-Mart Stores, Inc.*,
    191 N.J. 88 (2007) .......................................................................32

*In re Checking Account Overdraft Litig.*,
    307 F.R.D. 656 (S.D. Fla. 2015)......................................30, 33, 37

*In re Checking Account Overdraft Litig.*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ........................................................30

*In re Community Bank*,
    418 F.3d 277 (3d Cir. 2005) ........................................................37

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig. ("Cmty. Bank")*,
    795 F.3d 380 (3d Cir. 2015) ...............................................17, 40

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010) ...............................................26

*In re Ford Motor Co.*,
    110 F.3d 954 (3d Cir. 1997) ........................................................25

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ........................................................23

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002) ........................................................23

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009) ........................................................33

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ...............................................16, 39

*In re Schering Plough Corp.ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ........................................................20

*In re US FoodServ. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ........................................................26

*Khandelwal v. Zurich Ins. Co.*,
    427 N.J. Super. 577 (App. Div. 2012) ........................................................36

*Klay v. Humana, Inc.*,
    382 F.3d 1241, 1262-63 (11th Cir. 2004) ........................................................26

*Kolbe v. BAC Home Loans Servicing, LP*,
    738 F.3d 432 (1st Cir. 2013)............................................................................24

*Lanner v. Wimmer*,
    662 F.2d 1349 (10th Cir. 1981) ....................................................................21

*Lebegern v. Forman*,
    471 F.3d 424 (3d Cir. 2006) ..........................................................................25

*Leszczynkski v. Allianz Ins.*,
    176 F.R.D. 659 (S.D. Fla. 1997)....................................................................26

*Maniscalco v. Brother Int'l (USA) Corp.*,
    709 F.3d 202 (3d Cir. 2013) ..........................................................................25

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ..........................................................................40

*Martinez-Santiago v. Public Storage*,
    312 F.R.D. 380 (D.N.J. 2015) .......................................................................24

*Montich v. Miele USA, Inc.*,
    849 F. Supp. 2d 439 (D.N.J. 2012)................................................................32

*Myers v. Jani-King of Phila., Inc.*,
    No. 09-1738, 2015 U.S. Dist. LEXIS 29566 (E.D. Pa. Mar. 10, 2015)........21

*Nester v. O'Donnell*,
    301 N.J. Super. 198 (App. Div. 1997)...........................................................36

*NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...................................................................*passim*

*Powers v. Hamilton County Public Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) .........................................................................24

*P.V. v. Camp Jaycee*,
    197 N.J. 132 (N.J. 2008)................................................................................25

*QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*,
    94 So. 3d 541 (Fla. 2012) ...............................................................30

*Readick v. Avis Budget Group, Inc.*,
    12-cv-3988 (S.D.N.Y.) ...................................................................38

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) .........................................................23

*Rowe v. Hoffman-La Roche, Inc.*,
    189 N.J. 615 (2007) .......................................................................25

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ....................................................24

*Schwartz v. Avis Rent a Car Sys., L.L.C.*,
    No. 12-7300 (JLL), 2016 U.S. Dist. LEXIS 80387
    (D.N.J. June 21, 2016).............................................................*passim*

*Steinberg v. Nationwide Mutual Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004)....................................................26

*Suber v. Chrysler Corp.*,
    104 F.3d 578 (3d Cir. 1997) .................................................. 34-35

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) .........................................................23

*Turf Lawnmower Repair v. Bergen Record Corp.*,
    139 N.J. 392 (1995) .......................................................................35

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016).................................................................24

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ...............................................16, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................17

*Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...........................................................................38

**Other**

Fed. R. Civ. P. 23(b)(3).....................................................................................*passim*

Fed. R. Civ. P. 23(b)(3)(A)-(D) ..........................................................................38

Fed. R. Civ. P. 23(g) ..........................................................................................22

## I.      INTRODUCTION

Defendants Avis Budget Group, Inc. ("ABG") and Highway Toll Administration, LLC ("HTA") pocketed hundreds of millions of dollars by wrongfully overcharging plaintiff Jose Mendez ("Plaintiff") and members of the proposed classes (the "Classes") for electronic toll payment services in connection with millions of rental transactions around the United States.  Defendants charged Plaintiff and the Classes a daily service fee for "eToll" use, and inflated their toll charges.  Neither the service fee nor the upcharge is permitted by the standardized form contract governing Avis and Budget rentals (the "ABG Contract"), or sufficiently disclosed in Defendants' other communications with renters.

Defendants' conduct constitutes breach of the ABG Contract, breach of its implied covenant of good faith and fair dealing, unjust enrichment, and a violation of the New Jersey Consumer Fraud Act ("NJCFA").  Plaintiff's claims are predicated on the unambiguous terms of the ABG Contract and Defendants' uniform billing practices, among other significant common facts and evidence.  For the reasons stated herein and in Plaintiff's Trial Management Plan (attached hereto as Exhibit A), this case is thus well-suited to class treatment and certification of the Classes pursuant to Federal Rule of Civil Procedure 23(b)(3) is appropriate.

## II.     THE PROPOSED CLASSES

Plaintiff seeks the certification of the following Classes for the period from

April 1, 2007 through December 31, 2015 (the "Class Period"):

> **The Nationwide Class.** All U.S. residents who (1) rented an Avis or Budget vehicle in the U.S. during the Class Period and, (2) in connection with that rental, paid Avis or Budget or their agent HTA for their use of eToll.[1]

Plaintiff and the Nationwide Class will assert a claim that ABG breached the ABG

Contract.

> **The Florida Subclass.** All U.S. residents who, (1) rented an Avis or Budget vehicle in Florida during the Class Period, and (2) in connection with that rental, paid Avis or Budget or their agent HTA for their use of eToll.

Should the fact finder determine that ABG did not breach an express term of the

ABG Contract, Plaintiff and the Florida Subclass alternatively will assert a claim

that ABG breached the implied covenant of good faith and fair dealing.

> **The New Jersey Subclass.** All New Jersey residents who, (1) rented an Avis or Budget vehicle in the U.S. during the Class Period, and (2) in connection with that rental, paid Avis or Budget or their agent HTA for their use of eToll.

Plaintiff and the New Jersey Subclass will also assert claims for unjust enrichment

against HTA, and for violation of the NJCFA against ABG and HTA.

---

[1] As used to define the Classes, "residents" includes natural persons and business entities. All classes exclude: (a) Defendants; (b) their officers, directors and employees; (c) entities in which Defendants have a controlling interest; (d) affiliates, legal representatives and assigns of Defendants; and (e) judges who have presided over this case and members of their immediate families. The Classes also exclude rental transactions for vehicles rented in Florida, Texas, and Colorado prior to March 2, 2009, which transactions were handled by an HTA competitor not named in this suit. *See* Exhibit 1 (Response to Interrogatory 3) to Declaration of Jeremy Nash dated October 7, 2016 (hereinafter "Ex. _").

## III.   PERTINENT PROCEDURAL HISTORY

### A.   Discovery Followed Defendants' Failed Dismissal Motion

Plaintiff commenced this action on November 7, 2011 asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and violation of the NJCFA.   The Complaint seeks money damages and declaratory and injunctive relief, and treble damages under the NJCFA claim.   Defendants moved to dismiss the Complaint for failure to state a claim.   Dkt. 17.   As discussed at Part V.B.1.b, *infra*, Defendants' principal contention was that the ABG Contract expressly provided for the collection of the eToll service fee and the toll upcharge.   On April 10, 2012, this Court denied Defendants' motion in its entirety.   Dkt. 31.   Defendants then answered.   Dkt. 38.

Fact and expert discovery followed.   The parties completed document productions and deposed more than a dozen fact and third-party witnesses. Plaintiff was deposed on two separate days and his wife was also deposed. Defendants produced transactional data for over 17 million rental transactions for which eToll service fees and upcharges were incurred, which production is described at Part IV.D, *infra*.   Fact discovery is thus largely complete.[2]

---

[2] For example, the parties agreed to defer some issues relating to Defendants' database and the production of information contained therein sufficient to identify members of the Classes, and the precise calculation of class damages.   *See* Ex. 1 at ¶3 (Data Proposal attached to Defendants' Interrogatory Responses as Ex. A).

Expert discovery has also concluded.  Plaintiff retained Dr. Vicki Morwitz to opine on whether and to what extent ABG's disclosures permitted consumers to make fully-informed decisions about the use of eToll and incurring its associated charges.  Ex. 2.  Dr. Morwitz concluded that ABG concealed (i) what consumers needed to do to use eToll; (ii) that, if consumers used eToll, ABG would impose upcharges on the tolls actually incurred; (iii) that, if consumers used eToll, ABG would impose a service fee and the amount of the service fee ABG assessed for using eToll; and (iv) that ABG assessed service fees for all days of the rental period, including days eToll was not used, up to a maximum value per week or month.  *Id.* at 4-6.  Dr. Morwitz also opined that there is a causal connection between Defendants' omissions and class damages.  *Id.* at 6.

## B.     The March 20, 2015 Spoliation Order

While fact discovery was ongoing, ABG spoliated highly-relevant evidence. Dkt. 138.  One person responsible for the spoliation was Lauren Radisch, ABG Manager of New Product Development and ABG's 30(b)(6) corporate designee on virtually all discovery topics.   Ex. 3.   Ms. Radisch had principal day-to-day responsibility for the eToll program starting in August or September 2008 and, from the start, she "always" kept spiral-bound notebooks, took them to every meeting, and had them out for every phone call.  Dkt. 138 at 1-2.  Although ABG had issued litigation hold notices directing preservation of documents, *id.* at 3,

ABG failed to collect all documents from Ms. Radisch. In mid-2013, while moving to a new workspace, Ms. Radisch discarded all but her then-most recent notebooks: "I just said, these are old, I don't need them anymore, and I threw them out." *Id.* at 3. Only notebooks from June and July 2012, and 2013-2014 were ultimately produced. Notebooks covering August 2008-May 2012 and August 2012-December 2012 were destroyed.

After briefing and argument, Hon. Joseph A. Dickson found spoliation, noting the "notebooks may have included relevant information concerning the e-Toll program. . . . To hold otherwise would effectively punish Plaintiff for not knowing the contents of the very documents he has been deprived of; a patently unfair and nonsensical result." *Id.* at 6. The spoliation impacts the proposed classes uniformly because each member is equally deprived of the spoliated evidence.

## IV. THE COMMON FACTS UNDERLYING THE CLAIMS

### A. The Parties

Plaintiff Mendez, a New Jersey resident, entered into the ABG Contract, a valid and enforceable rental contract with ABG. Dkt. 38 at ¶60 (Answer to Complaint). The ABG Contract between Plaintiff and ABG is exclusively governed by the terms and conditions as published by ABG in the ABG Contract. *Id.* (Fifth Affirmative Defense). In the summer of 2011, Plaintiff rented a vehicle

equipped with eToll from ABG in Florida where he signed the ABG Contract. *Id.* ¶¶11, 34. During the rental period, Plaintiff incurred a single 50 cent toll, paid electronically using eToll. *Id.* at ¶37. Weeks later, Defendants billed Plaintiff $15.75 for service fees and a toll upcharge for his use of eToll. *Id.* at ¶11.

ABG is located in this District and engaged in the business of vehicle rentals in New Jersey and elsewhere. Its subsidiaries operate and license others to operate vehicle rental businesses under Avis and Budget brands. *Id.* at ¶15. In 2006, ABG began working with HTA, a privately-owned company located in New York, to provide electronic toll collection services to renters. *Id.* at ¶15; Ex. 4. HTA provided ABG its proprietary enabling technology and communicated with ABG's renters concerning eToll. Dkt. 38 at ¶15, 23; Ex. 5 (Dailey Tr. 26:17-19). By March 2009 and for the rest of the Class Period, HTA was ABG's sole provider of eToll. Ex. 6. During the Class Period, ABG was HTA's largest customer, accounting for ▮▮ or more of HTA's revenue. Ex. 7 (Centner Tr. 57:7-58:6).

**B.    The eToll Service**

ABG has two primary sources of revenue: (i) "time and mileage fees" charged for renting vehicles, and (ii) ancillary revenues from payments by rental customers for a more than a dozen *optional* products and services (*e.g.*, insurance, GPS devices, and car seats). ABG offers eToll through its Avis and Budget brands as one such "optional" service, which allows rental car customers to pay tolls

electronically rather than with cash.  Ex. 8 at 8.

In regions with electronic toll roads, ABG's entire rental fleets are equipped with hardware for tag or transponder based tolling or are enrolled for video-based tolling tied to rental cars' license plate numbers.  Defendants enclose the transponder in a small box affixed to the inside of the windshield behind the rear view mirror.  To use it, renters must open the box prior to passing through an electronic toll payment lane.  In video-tolling regions, ABG's customers drive through electronic toll lanes where images of license plates are captured.  HTA receives data from public tolling authorities for every electronic toll incurred by an ABG rental vehicle.  Ex. 1 (Interrogatory Response 4).  When HTA bills a customer's credit card for eToll—several weeks after the vehicle's return—the notation on the renter's credit card bill says only:  "Avis [or Budget] Rent-A-Car" or "Avis [or Budget] tolls."

### C.   The eToll Fee Structure During The Class Period

Defendants' eToll fee structure remained the same over the course of the Class Period.  Defendants charged eToll users a daily service fee for every day of the rental period (not just days on which eToll was actually used to pay a toll), up to a weekly or monthly maximum.  During the Class Period, the daily fee increased from $1.50 to $4.95 per day, and the cap increased from $7.50 per week to $19.95 per month.  Renters were also charged for any tolls they incurred, but not in the

amounts *actually* incurred. Instead, Defendants tacked on a toll upcharge.

As such, eToll charges included three components: (i) the tolls actually incurred by renters, (ii) the toll upcharges (the amount over and above the actual tolls incurred), and (iii) the service fee. Plaintiff does not challenge Defendants' practices with respect to the first category. In Plaintiff's case, he used eToll once during his nine-day trip to Florida in 2011. Several weeks later, Defendants charged his credit card $15.75. Ex. 9, 10. Only $0.50 of that amount was for the toll charge Plaintiff actually incurred. Ex. 11; Ex. 7 (Centner 106:5-108:25). The remaining $15.25 consists of $15.00 in daily service fees (at $2.50 per day with a $10.00 per week cap) and a $0.25 upcharge on the toll. Plaintiff challenges Defendants' collection of the $15.00 service fee and $0.25 upcharge.

### D.    Common Proof:  The ABG Contract

By its terms, the ABG Contract consists of three standardized uniform documents: the Rental Jacket, Rental Document, and Return Receipt.[3]  *See, e.g.,* Ex. 14 (Plaintiff's Rental Jacket) at ¶1 ("These terms and conditions, the rental document, signed by you, and a return record with computed rental charges together constitute the rental agreement... between you and Budget[.]").

---

[3] Only a single sample of the Return Receipt was produced during discovery. Ex. 12. The ABG Contract identifies it as one of its component parts, but it is not provided to renters until *after* the rental is completed. It can have no bearing on whether or to what extent Defendants disclosed eToll with respect to the just-completed rental. In any event, its sole reference to eToll in no way informs renters of the service fee or upcharge. Ex. 13 (Caron Tr. 49:24-25; 50:1-23).

Throughout the Class Period, the ABG Contract failed to disclose that eToll was an *optional* product. This omission and its materiality to a renter should be viewed in the context of the ABG Contract which *appeared* to describe any and all fees ABG would or could charge.

The Rental Document, a standardized ABG form, is printed at the counter and every renter must sign and initial it before obtaining the keys to a vehicle. *See, e.g.,* Ex. 15 (Plaintiff's Rental Document). The Rental Document listed optional products and required the renter to accept (or decline) each such option, such as the loss damage waiver ("LDW") and various forms of insurance, like personal accident and effects ("PAE") coverage. *Id.* It also required renters to acknowledge certain prospective charges ("Fuel services add'l if car is returned with less fuel than when rented."), and listed other mandatory fees of as little as $0.02 per day. *Id.* While appearing to be comprehensive, the Rental Document uniformly failed to mention eToll, let alone its costs to renters and when such costs were incurred.

The Rental Jacket, a standardized ABG preprinted form, is handed to a renter with the rental vehicle's keys. Summary tables of what the Rental Jacket said about tolls and eToll and when is submitted herewith, as Exhibit B (TABLE 1: The Rental Jacket "Rental Charges" Terms, and TABLE 2: The Rental Jacket "Collections" Terms). Prior to February 2011, the Rental Jacket failed to mention eToll, its costs or when such costs were incurred, stating only:

> **Rental Charges:**   If you use a car with automatic toll payment capability you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties.

*See* Ex. 17.[4]  The Rental Jacket also omitted that eToll was optional.  *Id.*

When in February 2011 the Rental Jacket first referenced eToll, ABG put that information only in the "Collections" terms of the Rental Jacket.  ABG stated unequivocally that Defendants could collect eToll fees *only* in the event a renter did not pay all amounts due to ABG:

> **Collections.** *If you do not pay* all amounts due to us under this agreement upon demand, including all charges, fees and expenses, including without limitation, payment for loss of or damage to the car, rental charges, parking and traffic fines and penalties, toll charges, towing, storage and impoundment fees, you agree to pay a late charge of 1 ½% per month on the past due balance or the highest rate permitted by applicable law, whichever is less (collectively, "Charges"). *For toll charges you will be  charged the standard non-discounted fee for tolls roads as published by the toll authority plus the convenience fee of $2.50 per rental day regardless of whether you use e-Toll or not and up to $10 per week for the use of this service. . .*

*See* Ex. 19 (emphasis added); *see also* Ex. 14 (Plaintiff's Rental Jacket).  The Collections paragraph goes on at length about other costs associated with collections.  *Id.*  The substance and location of the eToll language remained the

---

[4] For the first six months of the Class Period, the Rental Charges paragraph omitted any reference to the "toll program administrator" and rather than referring to "all related fees, charges and penalties" referred just to "all related service charges." Ex. 16.  At no time did the Rental Jacket contain any disclosures about "related fees, charges and penalties" or "related service charges." *See* Ex. B.

same through the end of the Class Period.  *See* Ex. 12 (ABG08659-60).[5]

### E.    Common Proof:  Defendants' Data

Defendants have maintained electronic records of every rental transaction and toll event they have ever processed since eToll was introduced.  *See* Ex. 1 (the Data Proposal) at ¶1.  Their records contain, among other data:  the identity and place of residence of each renter, Ex. *id.* at ¶3; when and where each renter picked up his or her rental vehicle, Ex. *id.* at ¶4(a)-(b); when and at what toll plaza each renter incurred a toll charge, Ex. 1 (the List of Data Fields attached as Exhibit B to Defendants' interrogatory responses); the amount the toll authority charged ABG for any such toll charge, Ex. 1 (the Data Proposal) at ¶4(e); the amount ABG charged each renter for any such toll charge, *id.* at ¶4(d); and the amount ABG charged each renter in eToll service fees, *id.* at ¶4(f).

Such records were produced for Plaintiff's rental transaction.  *See* Ex. 13 (Caron Tr. 256:10-20); Ex. 11 (toll event data); Ex. 21 (rental transaction data). With the exception of personally identifying information, which Defendants have agreed to produce should Plaintiff prevail on this motion, Defendants also produced the above data for 17.9 million other rental transactions during the period

---

[5] From November 2013 through December 2015, the substance of the above-quoted eToll language appeared in the Rental Jacket section titled "Fines, Expenses, Cost and Administrative Fees, Collections" as subsection (b) following an introductory proviso stating:  "*If you do not pay* all amounts due to us under this agreement upon demand. . . we will take the following actions. . ."   Ex. 20 (emphasis added).

January 1, 2007 through December 31, 2014.  Declaration of Jeremy Nash at ¶2. The Classes likely encompass a much larger number of transactions because this figure excludes 2015, and the transaction count increased significantly over time.

### F.    Common Proof: Intent, Bad Faith, and Causation

Plaintiff would offer other common evidence to prove Defendants acted intentionally and in bad faith, omitted to disclose material facts in their communications with members of the Classes, and that retention by HTA in particular of its share of eToll revenues would be inequitable.

This additional common proof includes HTA's repeated requests that ABG revise the ABG Contract to add information on eToll.  In March 2006, ABG and HTA entered into a "Toll Tag Service Agreement" governing Defendants' respective rights and responsibilities as to eToll.  This agreement, which remained in effect throughout the Class Period, required ABG (then known as CCRG) to include certain disclosures to customers about eToll charges in the ABG Contract:





Ex. 23 (emphasis added).  Since the first tag was installed in the spring of 2006,

ABG was required to revise the ABG Contract to disclose eToll by early 2007.  Ex.

13 (Caron Tr. 81:16-83:13).  Despite this express contractual obligation, no such

disclosure was made in the ABG Contract during the Class Period.  *Id.*

In August 2007, HTA asked ABG for more complete eToll disclosure.  In an

August 23, 2007 email, Ex. 24, then ABG in-house counsel Fred Grumman

responded to HTA's request:

> When we redid the [ABG Contract] last year, to take HTA into account, at the end of the Rental Charges paragraph (#5) we added "If you use a car with automatic toll payment capability you will pay for all tolls incurred during your rental and all related service charges."
>
> I believe this provides sufficient notice of the charges. . .
>
> If recollection serves we told HTA when we started this program that we did not have room for all the verbiage they might desire and shared the above with them.
>
> Yes, there may have been some complaints (I am aware of 2) but so far I am unaware of any customer who has been able raise this to a level that represents a true legal concern. If HTA believes to the contrary I would be willing to discuss it, but absent being satisfied that there is a substantial legal or business risk, I am not going to recommend that we turn a single sentence into a whole new paragraph in an already space starved [Rental Jacket].

Additional requests were made by HTA and rejected by ABG during the Class Period.  For example, in 2010 when Hertz was sued in *Doherty v. Hertz Corp.*, No. 10-359 (NLH/KMW), 2014 U.S. Dist. LEXIS 86792 (D.N.J. June 25, 2014), HTA raised the issue again.  A rental car industry consultant to HTA forwarded an article to HTA about the Hertz lawsuit, writing "[j]ust hope that somehow you're not drawn into this.  May want to recheck all disclosures (seems to be the heart of the problem)."  Ex. 25.  HTA responded, "[m]onths ago I asked [ABG] to have ABG Legal review the disclosures, and he came back with no changes."  *Id.*

ABG did not add any eToll language until after Hertz was sued for breach of contract and a court in this District rejected Hertz's reliance on a "collections" section as a basis for charging fees.[6]  ABG then, for the first time, added eToll language to the Rental Jacket.  Remarkably, it chose to add the eToll language to the "collections" provision. Ex. 26.  ABG's subsequent revisions to the Rental Jacket did not alter the substance or location of the eToll language. *See* Ex. B

---

[6]   The rejected Hertz terms stated: "PAY YOUR TICKETS/TOLLS IMMEDIATELY: You will be responsible for and pay all parking or traffic violation fines and penalties, all towing, storage and impoundment fees and all tolls and tickets charged to the Car during the rental period. You authorize Hertz to release your rental and charge card information to its designated vendor 'American Traffic Solutions' for the exclusive purpose of processing and billing for fines, penalties and fees. You also agree to indemnify Hertz or American Traffic Solutions if they pay same. You agree to pay, upon billing, an administrative fee related to the cost of collection or cost of providing information about You to a court or governmental agency for each unpaid parking, toll or other citation incurred during the term of this rental." *Doherty v. Hertz Corp.*, No. 1:10-cv-00359, 2010 U.S. Dist. LEXIS 124714, at *9-10 (D.N.J. Nov. 24, 2010).

14

(TABLE 2: The Rental Jacket "Collections" Terms).

In June 2011, HTA again advised ABG that eToll related fees and charges "should be mentioned" in the Rental Jacket:  "If they're not, then we are relying 100% on marketing collateral to communicate fees and charges, which may not be the best situation."  Ex. 27.  A fact finder could find intent and bad faith based upon the foregoing evidence.

### G.      Common Proof: Defendants' Other Misleading Statements

ABG had standardized advertising materials that mention eToll or tolling for display at its rental locations including stickers, signs, banners, and other similar materials in use during the Class Period.   Plaintiff's expert examined these documents and opined that none of those materials clearly conveyed to consumers the full costs associated with using eToll.   Ex. 2 at 4-6.   Internal HTA emails confirm Dr. Morwitz's opinion about the deficiency of the eToll disclosures:



Ex. 28 (emphasis added).   Plaintiff's expert, Dr. Morwitz, also addressed the deficiencies in ABG's reservation process disclosures.  Ex. 2 at 19-23.  Here too ABG's admissions confirm the material omissions regarding eToll.  On November 10, 2011, after Plaintiff sued, Ms. Radicsh placed a "test" reservation to investigate

Plaintiff's claims.  Ex. 29.  She confirmed that eToll was not disclosed on Budget's reservation confirmation.  *Id.*  Her handwritten notes on the confirmation email state: "We may need to add eToll to [terms and conditions] on next [page]."  *Id.* She doubted that the "etc." - at the end of a long list of optional products *that did not include* eToll -was sufficient, writing:  "I don't know if this [etc.] could cover us."  *Id.*  Avis's reservation confirmation was similarly deficient.  Ex. 30.

## V.    ARGUMENT

Certification is particularly compelling in this case because the class claims are based on standardized terms of the ABG Contract and Defendants' uniform business practices.  *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005) (Linares, J.) ("In cases where it is alleged that the defendant made similar misrepresentations, non-disclosures, or engaged in a common course of conduct, courts have found that conduct to satisfy the commonality and predominance requirements.") (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 511 (D.N.J. 1997)).  For those reasons and the reasons stated below, certification of the proposed Classes pursuant to Rule 23(b)(3) is appropriate.

### A.    Plaintiff and This Case Satisfy the Four Rule 23(a) Requirements

#### 1.    Joinder of all class members would be impracticable.

Rule 23(a)(1) requires that the proposed classes be so numerous that joinder

of all members is impracticable.  According to Defendants' electronic records, U.S. residents contracted for 17.9 million rental transactions in the U.S. from 2007-2014 (the period for which data was produced).  Declaration of Jeremy Nash at ¶2. Plaintiff thus satisfies the numerosity requirement.  *See Schwartz v. Avis Rent a Car Sys., LLC*, No. 11-cv-4052 (JLL), 2016 U.S. Dist. LEXIS 80387, at *10 (D.N.J. June 21, 2016) (numerosity "easily satisfied" in case concerning roughly 11.9 million rental transactions involving disputed frequent-flyer surcharge).

### 2.   There are questions of law or fact common to all class members.

Rule 23(a)(2) requires that there be questions of law or fact common to each class.  Commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *NFL*, 821 F.3d at 426-27. "'Their claims must depend upon a common contention. . . capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.'"  *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "Meeting this requirement is easy enough." *Id.* (quoting *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.* ("*Cmty. Bank*"), 795 F.3d 380, 397 (3d Cir. 2015)).

Plaintiff's common proof of liability places Defendants' actions at center stage.  The ABG Contract and ABG's other statements about eToll were uniformly deficient, and, though it was aware of the deficiencies, ABG repeatedly refused to

17

change the ABG Contract.  Defendants also billed all class members eToll related

charges pursuant to uniform policies and practices.  Only one question of law or

fact is required to establish commonality, but this case presents many:

- Whether the ABG Contract permitted ABG to bill for eToll service fees and upcharges;

- Whether ABG's collection of eToll service fees and upcharges constitutes a breach of contract, or a breach of the implied covenant of good faith and fair dealing;

- Whether Defendants intentionally failed to disclose that ABG billed eToll service fees and upcharges;

- Whether Defendants breached the NJCFA by failing to disclose ABG's eToll billing policies and practices;

- Whether class members are entitled to damages, and the proper measure of such damages; and

- Whether class members are entitled to equitable relief to prohibit the recurrence of this conduct.

Courts have found that such allegations of uniform representations and wrongful

conduct are sufficient to satisfy commonality.  *See Schwartz*, 2016 U.S. Dist.

LEXIS 80387, at *11 (quoting *Varacallo*, 226 F.R.D. at 231); *see also Doherty v.*

*Hertz Corp.*, No. 10-359 (NLH/KMW), 2014 U.S. Dist. LEXIS 86792, at *11

(D.N.J. June 25, 2014) (commonality satisfied where class members paid

electronic tolling service fees and toll upcharges alleged to be insufficiently

disclosed and not permitted under Hertz's standardized rental agreement, and class

18

members' claims raised common legal issues concerning the alleged breach of contract, violation of the NJCFA, and unjust enrichment).

### 3. Plaintiff's claims are typical of the Class and Subclass Claims.

Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims of the class. "This ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals." *NFL*, 821 F.3d at 427-28 (quotation marks and citation omitted). The Third Circuit has a "low threshold" for typicality. *Id.* at 428 (citation omitted). "[C]lass members need not 'share identical claims,' and 'cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Id.* (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56, 58 (3d Cir. 1994)).

Like other class members, Plaintiff rented a vehicle in a transaction governed by the ABG Contract and was wrongfully charged eToll fees. Plaintiff and class members' claims arise out of the same conduct and are based on the same legal theories. Plaintiff's proposal to certify discrete subclasses for the good faith and fair dealing, unjust enrichment, and NJCFA claims further ensures that his interests remain aligned with the interest of those he seeks to represent. *See Schwartz*, 2016 U.S. Dist. LEXIS 80387, at *14-15 (typicality satisfied where the

19

legal and factual issues plaintiff asserted were very similar to those of the class); *Doherty*, 2014 U.S. Dist. LEXIS 86792, at *12 (typicality satisfied where plaintiff and class's claims "arose out of a common course of conduct and a core set of facts surrounding the rental of a car from Hertz, the use of a form Hertz rental contract, which resulted in charges for the payment of administrative fees and toll differentials, all allegedly in violation of the rental contract or state law.").

As discussed below at Part V.B.1.b, *infra*, Plaintiff is not "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation," which might undermine typicality. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009); *see also Demmick v. Cellco P'Ship*, No. 06-cv-2163-JLL, 2010 U.S. Dist. LEXIS 94041, at *20-25 (D.N.J. Sep. 8, 2010) (finding typicality satisfied even where plaintiff was subject to counterclaim for unpaid bills and, at deposition, testified that he understood certain aspects of defendant's at-issue billing practices).

### 4. Plaintiff will adequately protect the interests of the class.

#### a. Plaintiff's interests do not conflict with the class's interests.

"The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *Id.* (citation omitted). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative

plaintiffs and the rest of the class." *Id.* (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)). Minor or hypothetical conflicts of interest alone will not defeat a party's claim to class certification: the conflict must be apparent and fundamental so that it goes to an issue at the very heart of the suit. *Dewey*, 681 F.3d at 184. A mere difference of opinion among class members would fall below this threshold. *Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2015 U.S. Dist. LEXIS 29566, at *27 (E.D. Pa. Mar. 10, 2015) ("[C]ertification is still appropriate where some members of the class might prefer not to have violations of their rights remedied.") (quoting *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981)).

Plaintiff understands what his obligations would be as a representative of the proposed Classes and is prepared to undertake those responsibilities. Ex. 31 (Mendez Tr. 170:11-175:16). He is prepared to testify at trial and to advance the interests of other similarly-situated consumers. *Id.* He has already demonstrated a commitment to this litigation and the class claims by his vigilance and uninterrupted participation over the past five years. *Id.* He responded to Defendants' discovery demands and produced documentary evidence. Defendants deposed him over two days and also deposed his wife. Plaintiff's interests are sufficiently aligned with the interests of those he seeks to represent. *See Doherty*, 2014 U.S. Dist. LEXIS 86792, at *12-13 (adequacy satisfied where plaintiffs

represented the class appropriately through their personal involvement, enduring the burdens of litigation, retaining adequate counsel, and monitoring and assisting in the course of the litigation through discovery).

### b.   Plaintiff's counsel is qualified.

Rule 23(g) sets non-exhaustive factors for courts to consider when assessing the adequacy of class counsel.  "They include counsel's work in the pending class action, experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available for representing the class."  *NFL*, 821 F.3d at 429 (citing Fed. R. Civ. P. 23(g)).  The law firms retained by Plaintiff together seek appointment as class counsel.  Attorneys from both firms have taken active roles in all aspects of the case, which has seen Plaintiff prevail on Defendants' motion to dismiss and obtain a spoliation finding against ABG. Plaintiff's counsel's experience is set out in Ex. 32 and 33.  Plaintiff's counsel is ready, willing, and able to devote the resources necessary to litigate this case vigorously to conclusion.  *See Doherty*, 2014 U.S. Dist. LEXIS 86792, at *13.

### B.   Plaintiff and This Case Satisfy the Requirements of Rule 23(b)(3)

Certification is appropriate pursuant to Rule 23(b)(3) if common questions of law or fact predominate over questions affecting individual class members, and it would be superior to other methods available for adjudicating the controversy.

22

### 1. Common questions of law or fact predominate.

#### a. Common issues predominate because legal and factual questions will be resolved with common evidence.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). "[T]he Supreme Court has observed that predominance is a test readily met in certain cases alleging consumer . . . fraud," as Plaintiff does here. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321-22 (3d Cir. 2008) (quotation marks omitted).

One relevant "guidepost[] that direct[s] the predominance inquiry[]" is "that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). "[*Wal-Mart v.*] *Dukes* actually bolsters [this] position, making clear that the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Id.* at 299. "Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015). Rather, predominance is satisfied if common issues predominate. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002). "[T]he focus of Rule 23(b)(3) is

on the predominance of common questions[.]"  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).

As such, it is sometimes "unnecessary to analyze the class-wide evidence as to every issue in the case in order to reach a conclusion about Rule 23(b)(3)." *Harnish v. Widener Univ. Sch. of Law*, No. 15-cv-3888, 2016 U.S. App. LEXIS 15007, at *9 (3d Cir. Aug. 16, 2016).  "For example, if the court decides that the central, predominant issues in the case are common, then Rule 23(b)(3) is met despite the possibility that some subsidiary issues will require individualized evidence." *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. at 1045).  This is such a case.  Because Plaintiff's claims revolve around ABG's standardized form contract the pertinent provisions of which remained the same throughout the Class Period, and Defendants' uniform practice of billing upcharges and service fees, this case is "well-suited" to class treatment.[7]  Nevertheless, Plaintiff has

---

[7] *See Martinez-Santiago v. Public Storage*, 312 F.R.D. 380, 393 (D.N.J. 2015) ("[V]arious courts have stated that claims involving the interpretation and validity of form contracts are well-suited for class treatment."); *Kolbe v. BAC Home Loans Serv., LP*, 738 F.3d 432, 441 (1st Cir. 2013) (noting that courts have certified classes for contract disputes over form contracts "because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member."); *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

adduced common evidence sufficient to prove each element of his claims:

   ***Breach of contract.***   Plaintiff asserts the breach of contract claim on behalf of the Nationwide Class.  Events leading up to Plaintiff's rental transaction took place in more than one state, as is likely true for many class members.  As such, the Court must apply New Jersey's choice of law principles in order to determine which state's law should govern.  *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).

   New Jersey applies the two-part "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws.  *Maniscalco*, 709 F.3d at 206 (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 159 (N.J. 2008).  The first part of the inquiry is to determine whether an actual conflict exists between the laws of the potential forums.  *Id.* (citing *Lebegern v. Forman*, 471 F.3d 424, 429-30 (3d Cir. 2006)).  If there is no actual conflict, the analysis ends and the court should apply the law of the forum state.  *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007).  The laws in the U.S. are uniform with respect to Plaintiff's contract claim, which raises only basic questions concerning breach, so there is no need for the Court to apply the second part of the analysis here.

   The U.S. Supreme Court has observed that "'contract law is not at its core diverse, nonuniform, and confusing.'"  *Am. Airlines v. Wolens* 513 U.S. 219, 233

n.8 (1995) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 529 (1992)). Numerous courts have found that to be true with respect to the basic elements of the breach of contract claim:  "state contract law defines breach consistently such that the question will usually be the same in all jurisdictions."  *In re US FoodServ. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-63 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey.").[8]  Plaintiffs submit a comprehensive survey of the law consistent with these holdings attached hereto as Exhibit C.  Because the laws in the U.S. are uniform with respect to Plaintiff's contract claim, New Jersey law should govern and certification on a nationwide basis is appropriate.

---

[8] *See also Boyko v. Am. Int'l Group, Inc.*, No. 08-2214-RBK-JS, 2012 U.S. Dist. LEXIS 59125, at *30-31 (D.N.J. Apr. 26, 2012) ("[T]he legal elements of a breach of contract claim are substantially similar in all fifty states."), *vacated in part on other grounds*, 2012 U.S. Dist. LEXIS 81229 (D.N.J. June 12, 2012); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) ("[T]he law relating to the element of breach does not vary greatly from state to state); *Berry v. Fed. Kemper Life Assur. Co.*, 99 P.3d 1166, 1188-1190 (N.M. 2004) (there is no "significant variation in the cases from the standard approach to interpretation of . . . contracts: starting with plain language, and progressing through rules of grammar"). *cert. denied*, 125 S. Ct. 1640 (2005); *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (variations in state law of contracts did not preclude certification where "claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation."); *Leszczynkski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) (whether a breach occurs "appears to be a pure and simple question of contract interpretation which should not vary from state to state.").

In New Jersey, the law "imposes on a plaintiff the burden to prove four elements: (1) that the parties entered into a contract containing certain terms; (2) that plaintiffs did what the contract required them to do; (3) that defendants did not do what the contract required them to do (defined as a breach of the contract); and (4) that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482-83 (2016) (citing Model Jury Charge (Civil), § 4.10A "The Contract Claim—Generally" (May 1998)).  The only issue on the contract claim is whether Defendants breached the ABG Contract, which element is susceptible to Plaintiff's common evidence.

As discussed above, the documents that constitute the ABG Contract are uniform.  Minor changes during the Class Period in no way affect the central predominating issue that is the essence of Plaintiff's claim for breach, namely that the ABG Contract failed to disclose the optional eToll product and thus did not permit Defendants to collect eToll fees. *See Demmick*, 2010 U.S. Dist. LEXIS 94041, at *30-31 (rejecting argument that certification of multi-state contract claim was not appropriate because the minor contractual differences identified by defendant were not material).  At all times relevant, the "Rental Charges" paragraph addressed only "tolls incurred." Ex. B.  The "Collections" paragraph limited ABG's right to bill eToll fees to a failure-to-pay scenario. *Id.*  Despite those unambiguous terms, ABG's standard operating procedure was to bill class

27

members upcharge and service fees in breach of the ABG Contract.

Plaintiff's common proof in the form of Defendants' corporate documents and detailed electronic records evidences the existence of class members' contracts, *e.g.*, Ex. 14; Defendants' standard eToll billing practices, *e.g.*, Ex. 22; and performance by and improper charges to members of the Classes , *e.g.*, Ex. 11, 21. Plaintiff's allegation that the ABG Contract terms did not constitute an agreement to pay eToll charges is a common liability question at the core of every class member's contract claim. Predominance is thus satisfied with respect to the breach of contract claim. *See Schwartz*, 2016 U.S. Dist. LEXIS 80387, at *12-13 (predominance found where Avis's form contracts, and uniform conduct and transaction data could be used to prove various elements of plaintiffs' breach of contract claims); *Doherty*, 2014 U.S. Dist. LEXIS 86792, at *13 (predominance satisfied where Hertz's uniform billing practices were at the core of plaintiff's claim that the company breached its uniform rental contract).

**Breach of the implied covenant of good faith and fair dealing.** Should the fact finder determine that ABG did not breach an express term of the ABG Contract, Plaintiff alternatively seeks a Florida Subclass asserting that ABG breached the covenant of good faith and fair dealing by concealing its eToll billing practices. State laws vary with respect good faith and fair dealing claims, so the

28

Court must apply Restatement § 188 to determine which law applies.[9]  *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 381 (D.N.J. 2014).  Commentary to the Restatement explains that two Restatement factors are of particular importance. The state where both parties performed the contract "will have so close a relationship to the transaction and the parties that it will often be the state of the applicable law even with respect to issues that do not relate strictly to performance."  Cmt. e.  It also states that, "[w]hen the contract deals with a specific physical thing. . . the location of the thing. . . is significant."  *Id.*  These factors strongly favor a finding that the state in which Plaintiff and class members' rental transactions occurred has the most significant relationship to this claim.[10]

Since Plaintiff rented in Florida, Florida law governs his claim and he seeks to represent a subclass of persons who rented in Florida.  Under Florida law, every contract contains an implied covenant of good faith and fair dealing that protects "the reasonable expectations of the contracting parties in light of their express

---

[9] Restatement § 188 requires the Court to consider: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation and place of business of the parties.

[10] The remaining factors are, at worst, neutral or insignificant here.  The place of negotiation (the second factor) will be neutral for all class members since the ABG Contract is a nonnegotiable form contract.  The remaining two factors are insignificant to the extent they do not align with the other factors.  Restatement § 188, cmt. e ("Standing alone, the place of contracting is a relatively insignificant contact. . . . The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts.").

agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)).  The covenant is implied as a gap-filler where the terms of the contract vest a party with discretion, requiring that party to act in a reasonable manner and limiting its ability to contravene the reasonable expectations of their counterparty.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1315 (S.D. Fla. 2010) ("when one party is given discretion to act under a contract, said discretion must be exercised in good faith") (collecting cases).

Like the contract claim, this claim presents predominantly common issues because it turns on ABG's conduct.  Plaintiff's expert determined that Defendants concealed the material terms of the eToll program.  Ex. 2 at 4-6.  Plaintiff also adduced common corporate level evidence showing that ABG knew its disclosures were inadequate but determined not to change them.[11]  *E.g.*, Ex. 24-25, 27-29. Issues concerning Defendants' good faith are susceptible to common proof for the Florida Subclass and thus predominate any individual issues. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015) (the "reasonable expectations of a party to a form contract are judged objectively . . . Common

---

[11] At the appropriate time, Plaintiff will seek sanctions based on the spoliation finding, including an adverse inference instruction directing or permitting the jury to infer that ABG destroyed records because they would have been adverse to the defense.  The spoliation issue centers wholly on ABG's conduct and affects each class member exactly the same way.

issues [thus] clearly predominate as to whether [the defendant's] high-to-low debit reordering scheme and its allied practices, including the Bank's alleged misleading disclosures, manifest bad faith and violated customer expectations.").

*Unjust enrichment.*   Because Defendants concealed their billing practices and because HTA knew that renters were confused, Plaintiff seeks a New Jersey Subclass asserting that retention by HTA of its share of the disputed fees would be unjust.   New Jersey courts look to the Restatement § 221 to determine which law to apply to unjust enrichment claims.[12]   *Gray*, 22 F. Supp. 3d at 381.   Commentary to the Restatement states that "[t]he place where a relationship between the parties was centered, provided that this relationship was substantially related to the receipt of enrichment, is the contact that, as to most issues, is given the greatest weight in determining the state of the applicable law."   Cmt. d.   Plaintiff's relationship with HTA was centered in New Jersey, where he was billed by HTA.   Ex. 9.

While HTA is headquartered in New York and presumably receives renters' money there, its enrichment is still "substantially related" to New Jersey.   Not only are Plaintiff and ABG, which gets the balance of the money HTA collects, here in

---

[12] Section 221 directs courts to consider the following contacts: (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

New Jersey, but HTA executives repeatedly reached out to ABG in this state to complain that the ABG Contract and other eToll related language were insufficient. New Jersey is also where ABG decided to ignore HTA's demands and make other key decisions that underlie Defendants' wrongful acts.

The Restatement commentary accords this factor (where the parties' relationship was centered) "particular weight" when, as here, the place where the benefit was received (New York) bears little relation to the occurrence (Florida). Cmt. d. That Plaintiff lives in New Jersey is considered an "important factor" supporting the application of New Jersey law. *Id.* The foregoing factors strongly favor applying New Jersey law to Plaintiff's claim, and because the analysis is substantially the same for everyone who also resides in New Jersey, Plaintiff asserts his unjust enrichment claim on behalf of a New Jersey Subclass.

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 459 (D.N.J. 2012) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110 (2007)). "Further, New Jersey law requires that a plaintiff have conferred a direct benefit on the defendant." *Id.* (collecting cases). These elements are susceptible to Plaintiff's common proof. Defendants' corporate records demonstrate HTA retained a share of eToll revenues collected from the New Jersey Subclass and

directly benefited thereby.  Ex. 23 at ¶4.1.  They also demonstrate that, as early as 2007, HTA knew that Defendants' eToll language was deficient, thus evidencing the inequity of permitting HTA to retain its share of the disputed fees.  Ex. 24.  As such, this claim presents predominantly common questions.  *See In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 73 (D.N.J. 2009) (predominance found where unjust enrichment claim concerned mainly with defendant's conduct); *see also In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015) (unjust enrichment claim "well-suited" for class treatment "by virtue of its . . . focus on the defendant's ill-gotten gain").

**New Jersey Consumer Fraud Act claim.**  This Court previously found New Jersey law governs Plaintiff's consumer fraud claim. Dkt. 31.  The Court should reach the same result for all class members residing in New Jersey, because they live here, ABG is headquartered here, ABG drafted the ABG Contract here, ABG prepared its deficient advertising materials here, and class members received their eToll bills here.  These are all factors that under the Restatement § 148 weigh in favor of applying New Jersey law.[13]  Indeed, "a long line of case law on consumer

---

[13] Section 148(2) directs courts to consider the following contacts: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance

fraud statutes . . . hold the law of the consumers' home state should govern." *Gray*, 22 F. Supp. 3d at 381-82 (collecting cases).

To state a claim pursuant to the NJCFA, a plaintiff must generally allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the Defendants' unlawful conduct and the plaintiffs' ascertainable loss. *Galicki v. New Jersey*, No. 14-169 (JLL), 2016 U.S. Dist. LEXIS 126076, at *88-89 (D.N.J. Sep. 15, 2016) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). The broad definition of unlawful conduct covers affirmative acts and knowing omissions, as well as regulatory violations. *Id.* (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994)). When the alleged unlawful act consists of an affirmative act, "'intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act. However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.'" *Id.* (quoting *Cox*, 138 N.J. at 17-18).

Plaintiff alleges that Defendants engaged in a range of unlawful conduct, including breach of contract and unjust enrichment, but "[a] claim under the NJCFA requires more; it requires that a plaintiff allege 'substantial aggravating circumstances.'" *Id.* (quoting *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir.

---

under a contract which he has been induced to enter by the false representations of the defendant.

1997)).  "To meet this standard, a plaintiff must demonstrate that the business behavior in question 'stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer.'"  *Id.* (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416 (1995)).  Each of these elements is readily provable through proof common to the New Jersey Subclass.

All elements of Plaintiff's NJCFA claims may be proved through common evidence, as discussed above.  The last element, the requisite aggravating circumstances, revolves around Defendants' conduct and is common to the class:

- HTA, ABG's vendor and electronic toll system expert, specifically bargained for express contractual disclosures of eToll, which ABG contractually agreed to provide.  Ex. 23. ABG thereafter declined to provide such disclosure because its lawyers were unaware of "any customer who has been able to raise this to a level that represents a true legal concern."  Ex. 24.

- HTA repeatedly asked that ABG improve its disclosures, which ABG declined to do.  Ex. 24-25, 27-29.

- More than four years after the implementation of eToll, and after a Court in this District rejected Hertz's reliance on electronic tolling disclosures in "collections" language of its rental contract, ABG added the first express references to eToll in the "Collections" section of the Rental Jacket.  Ex. B.

- Despite contracting for full disclosure and acknowledging the insufficiency of ABG's communications, HTA nevertheless went along in this wrongful enterprise and continued to send its own deficient communications to class members.  Ex. 9.

The common evidence also establishes Defendants' intent.  As to ascertaining losses and establishing causation, Plaintiff intends to rely on Defendants'

electronic records, and his expert's opinion testimony, which is that Defendants' deficient disclosures caused the losses suffered by Plaintiff and the rest of the New Jersey Subclass.  Common issues thus predominate for the NJCFA claim.

### b.    Defendants' defenses do not vitiate predominance.

Defendants' main defense—and itself raising common questions—is that they did nothing wrong, because the ABG Contract expressly allowed them to collect eToll fees in the ordinary course.  *See* Dkt. 17 (Defendants' Brief in Support of Motion to Dismiss) at 10-11 (defense to breach of contract claim), 5 (defense to NJCFA claim), 20 (defense to claims for equitable relief), and 21 (defense to good faith and fair dealing and unjust enrichment claims).  As to why eToll fees appeared in the "Collections" paragraph, they argued "they [were] only incurred if [ABG] receive[d] toll charges that it must then collect from the consumer."  *Id.* at 12.  While this Court found this defense unpersuasive on a motion to dismiss, at summary judgment[14] or trial, this defense would apply equally to all class members and thus lends further support to certification.

---

[14]  Neither party views the ABG Contract terms as ambiguous.  *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997) ("A contract is only ambiguous if its terms are objectively 'susceptible to at least two reasonable alternative interpretations.'").  As such, the contract claims present "'a purely legal question that is particularly suitable for decision on a motion for summary judgment.'"  *Globe Motor*, 225 N.J. at 482 (citation omitted); *see also Khandelwal v. Zurich Ins. Co.*, 427 N.J. Super. 577, 585 (App. Div.) (noting interpretation of contract "is generally appropriate to resolve . . . on summary judgment").

A number of Defendants' remaining affirmative defenses have now fallen away.[15]  Those that are left either raise issues predominantly common to the class or are meritless.  The affirmative defenses concerning the ABG Contract (fifth), the sufficiency of Defendants' other eToll disclosures (thirteenth), and Defendants' good faith and absence of unlawful conduct (ninth and tenth) each raise issues inherently common to the Class. Defendants' other defenses, like waiver (third) and laches (eighth), have no credible bases.

Defendants assert several defenses that pertain to damages, such as Defendants' assertions that Plaintiff suffered no damages (sixth) or ascertainable loss (fifteenth).  These defenses too are common to all class members.  In any event, the Third Circuit has made clear that individual issues relating to damages do not defeat class certification.  *See In re Community Bank*, 418 F.3d 277, 305-06 (3d Cir. 2005); *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004).  Nor is any alleged failure to mitigate damages a barrier to class certification.  *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015).

---

[15] This Court rejected Defendants' first affirmative defense, which is that Plaintiff failed to state a claim.  Dkt. 31.  Plaintiff has not named HTA in his contract claim, obviating part of the eleventh affirmative defense.  Defendants' twelfth defense is that Plaintiff did not reasonable rely on Defendants' misrepresentations and omissions in support of the consumer fraud act claim, which mistakenly assumes that reliance is an element of that claim.  *See Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 148 (2015).  Defendants could not substantiate their sixteenth and seventeenth defenses, which relate to arbitration and class action waivers, and withdrew them on March 31, 2014 by letter.

### 2.    A class action is superior to adjudicating thousands of separate individual cases.

"Rule 23(b)(3)'s superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'"   *NFL*, 821 F.3d at 434 (quoting *Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34).   It requires consideration of "class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *Id.* at 434-35 (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).   As a practical matter, the choice here is between certification of these claims or just giving Defendants a free pass on the challenged conduct.

Class members' claims are small relative to the cost of litigation, so they would likely find it uneconomical to litigate individually. *Amchem*, 521 U.S. at 616 (noting that any interests of individuals in conducting separate lawsuits "may be theoretic rather than practical" where "the amounts at stake for individuals may be so small that separate suits would be impracticable."). Indeed, Plaintiff is aware of only one related case. *See Readick v. Avis Budget Group, Inc.*, 12-cv-3988 (S.D.N.Y.).[16] Proceeding on a class basis is therefore superior since "maintaining

---

[16] On April 28, 2014, *Readick* was stayed on ABG's motion, which argued that *Mendez* subsumed plaintiff Readick's claims.

individual actions in this case would be prohibitively expensive," *Schwartz*, 2016 U.S. Dist. LEXIS 80387, at *15, and "a class action will likely provide the only efficient and realistic opportunity for the proposed class members to seek redress for their alleged injuries," *Demmick*, 2010 U.S. Dist. LEXIS 94041, at *28.

New Jersey is the appropriate forum for such proceedings because ABG is headquartered here, the wrongful conduct emanated from here, and the key witnesses are located here. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 524 (D.N.J. 1997) (finding concentration of litigation in New Jersey to be desirable where defendant's "principal place of business [was] in New Jersey and most potential upper echelon managerial witnesses [were] located in New Jersey."). Moreover, discovery has already been completed here and this Court is familiar with the case. *See Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, No. 99-cv-741 (JLL), 2006 U.S. Dist. LEXIS 64264, at *33-34 (D.N.J. Sep. 7, 2006). Proceeding to trial on a class basis would also be manageable as illustrated by Plaintiff's Trial Management Plan. Ex. A. The elements of each of his claims are susceptible to common evidence and the proposed class definitions are such that a trial would implicate only New Jersey and Florida law.

### 3. The members of the proposed classes are readily ascertainable.

"'[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable

based on objective criteria.'"  *Cmty. Bank*, 795 F.3d at 396 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d at 592-93).  "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate, because, if a class cannot be ascertained in an economical and administratively feasible manner, significant benefits of a class action are lost."  *Id.* (citations, quotation marks, and alterations omitted).

Plaintiff's proposed class definitions are based on exclusively objective criteria, such as where class members resided at the time of their rental and when such rental occurred.  Identifying such persons poses no administrative challenges, because Defendants possess comprehensive electronic records for every rental and toll event.  Ex. 1 (the Data Proposal and HTA's List of Data Fields); Ex. 11; Ex. 21.  Damages may be calculated using the same records used to identify class members.  *See* Ex. 1 (the Data Proposal) at ¶3.

## VI.   CONCLUSION

Plaintiff has demonstrated that he satisfies the elements of Rule 23(a) and (b)(3).  The class action device is the best and most efficient way to adjudicate the class members' claims in this case, and also the only viable method of doing so.  For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to certify the Class and Subclasses pursuant to Fed. R. Civ. P. 23(b)(3).

Dated:  October 7, 2016

**LITE DEPALMA GREENBERG, LLC**

  _/s/ Joseph J. DePalma_
Joseph J. DePalma
Jeremy Nash
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
jdepalma@litedepalma.com
jnash@litedepalma.com

**ABBEY SPANIER, LLP**
Judith L. Spanier
Nancy Kaboolian
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191
jspanier@abbeyspanier.com
nkaboolian@abbeyspanier.com

***Attorneys for Plaintiff and the Proposed
Classes***