NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE MENDEZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>AVIS BUDGET GROUP, INC., *et al.*,<br><br>Defendants. | Civil Action No.: 11-6537 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Plaintiff Jose Mendez's Renewed Motion for Class Certification. (ECF No. 226). Defendants Avis Budget Group, Inc., Avis Rent A Car System, LLC, and Highway Toll Administration, LLC have submitted Opposition (ECF No. 230), to which Plaintiff has replied. (ECF No. 237). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Plaintiff's Motion for Class Certification.

## I. BACKGROUND[1]

The Court presumes the parties are familiar with the factual background and the allegations asserted in Plaintiff's Complaint (ECF No. 1) based on the parties' own involvement in this case as well as this Court's Opinions dated April 10, 2012, May 31, 2012, and June 21, 2017. (ECF Nos. 30, 43, 222). Accordingly, the Court will set forth the relevant factual and procedural

---

[1] This background is derived from Plaintiff's Complaint (ECF No. 1 ("Compl.")) as well as the record submitted by all parties in support of their respective position with regards to class certification. (ECF Nos. 226-227, 232-233).

background.

On November 7, 2011, Plaintiff brought this putative class action on behalf of himself as well as others who are similarly situated. (ECF No. 1). The action seeks to recover damages for all people who rented vehicles from Defendants that were equipped with, and charged for use of, an electronic system to pay tolls known as "e-Toll" from locations and websites that were owned by, operated by, or connected to Defendants Avis Budget Group, Inc., and Avis Rent A Car System, LLC ("Avis Entities"). (Id.). Defendant Highway Toll Administration, LLC ("HTA") was the vendor for the Avis Entities that supplied and administered the e-Toll toll collection service. (Id.).

Plaintiff alleges that before, during, and after his rental of a vehicle from the Avis Entities, he was not advised that the vehicle: 1) could be equipped with an e-Toll device; and 2) was indeed pre-enrolled and activated for e-Toll. (Id.). Plaintiff further alleges that he was not informed that when he rented a vehicle from the Avis Entities that was equipped with an e-Toll device, that he would be obligated to pay more than the actual toll charge incurred and be charged at a non-discounted rate. (Id.). Specifically, Plaintiff, who is a New Jersey citizen, asserts that when he drove a vehicle that he rented from the Avis Entities through a toll lane in Florida around August 2011: 1) the e-Toll system in the vehicle was triggered; and 2) his credit card was charged soon thereafter for $15.75, representing a $0.75 toll charge and a $15.00 e-Toll convenience fee, even though he was told by an Avis Entities agent when he returned the vehicle that he had incurred no additional charges. (Id.).

After the Court denied Defendants' Motion to Dismiss, the parties engaged in a lengthy period of discovery. While some discovery remains incomplete, the parties agree that the record

has been sufficiently developed as to allow this Court to determine whether the class should be certified. (ECF No. 228 ("Pl. Mov. Br.") at 3-4). There is no dispute that the relationship between the parties is governed by the Avis Entities rental contract. (ECF No. 38 ¶ 60). Said contract consists of three standardized forms: 1) the "Rental Jacket;" 2) the "Rental Document;" and 3) the "Return Receipt." (*See* ECF No. 226-5, Ex. 14). One term of the contract required renters to pay for their own tolls. (Id.). The reference to the e-Toll service fee and toll upcharges were restricted to collections situations. (Id.). The contract did not explain that e-Toll was an optional product and Defendants did not associate this service with their other optional services. (Id.).

The Rental Jacket discussed automatic toll payment, but did not reference e-Toll. (Id.). This discussion of automatic tolls was the only place throughout the contract that automatic toll payments were mentioned. (*See* ECF No. 226-9, Ex. 34). Additionally, the contract failed to explain, in any clear terms, that e-Toll was an optional service, nor did it explain that renters would incur e-Toll charges in excess of the actual toll charges. (*See* ECF No. 226-5, Ex. 14).

e-Toll was first referenced by Defendants in February 2011. (*See* ECF No. 226-6, Ex. 19). Therein, however, the e-Toll language was located in the "Collections" portion of the contract. (Id.). Rather than explain the e-Toll system, the language focused on what would happen if the renter failed to pay "all amounts due to" the Avis Entities, including, but not limited to e-Toll charges and related fees. (Id.). This language was the same throughout the proposed class period. This language was also contained in the Avis Entities' "Preferred" or "Fastbreak" programs, which allow a renter to bypass the rental counter. (ECF No. 226-9, Ex. 35).

The Rental Document was also devoid of any reference to e-Toll, while the Return Receipt merely advised renters, only after they had returned the vehicles, that the Avis Entities had a

contractual right to collect e-Toll-related charges. (*See* ECF Nos. 226-4, 5, Exs. 12, 15). The Rental Document was also a standardized document that explained various optional products that the renter could have added on or declined. (ECF No. 226-5, Ex. 15). However, e-Toll was not listed among said optional products. The Return Receipt was a document that the Avis Entities provided to the renter when the rented vehicle was returned, and therefore, did not apprise the renter of any information contained therein when the renter decided to rent a vehicle from the Avis Entities. (ECF No. 226-4, Ex. 12).

Hence, Plaintiff brought this suit on behalf of himself, and others similarly situated asserting the following causes of action: Count I – Breach of Contract; Count II – Violation of New Jersey's Consumer Fraud Act ("NJCFA"); Count III – Injunctive Relief Against Defendant Avis Entities; Count IV – Unjust Enrichment; Count V – Breach of the Implied Covenant of Good Faith and Fair Dealing; and Count VI – Request for Declaratory Relief Pursuant to the Declaratory Judgment Act. (*See* ECF No. 1). The allegations supporting these causes of action are all the same. (Id.). That is, Plaintiff asserts that he, and those who are similarly situated, were charged fees that they were never told they were subject to, without notice, and unfairly. (Id.).

Discovery has since shown that Defendants maintained electronic records of each and every rental transaction and toll they have processed since e-Toll became effective. (*See* ECF No. 226-2, Ex. 1). Those records have been produced, in part, to Plaintiff and show that Defendants engaged in approximately 17.9 million rental transactions from January 1, 2007 through December 31, 2014, with more transactions likely to be included because the data does not account for the year of 2015.

Additionally, discovery showed that the relationship between Defendants HTA and the Avis Entities was governed by a separate agreement that fully detailed the fees renters would be subject to should they use the e-Toll. (ECF No. 227-3, Ex. 13). Moreover, since the first e-Toll device was placed in the Avis Entities' vehicles, the Avis Entities were required to place e-Toll fee disclosures in the Avis Entities' standard contracts. (Id.). Discovery also revealed that Defendant HTA made repeated requests of the Avis Entities to include e-Toll information in their standard contracts, but that said requests were ignored. (Id.). Specifically, in August 2007, Defendant HTA requested that the Avis Entities make a more detailed e-Toll disclosure. (ECF No. 226-7, Ex. 24). The Avis Entities responded by noting that their standard contract included the following statement in the "Rental Charges" paragraph: "If you use a car with automatic toll payment capability you will pay for all tolls incurred during your rental and all related service charges." (Id.). The Avis Entities explained that the reason for the short disclosure was that the standard contract did not have room for additional verbiage. (Id.). Additionally, the Avis Entities advised Defendant HTA that they were aware of only two complaints relating to the lack of disclosure, but did not believe this would be an ongoing problem. (Id.). e-Toll was initially never referenced by name in the standard contract, and only referred to later in the "Collections" section of the contract. (ECF No. 226-7, Ex. 26). The initial omission of, and the later vague reference to, e-Toll and the associated fees was a matter of concern for Defendant HTA. (ECF No. 226-7, Ex. 27).

Hence, Plaintiff, based on these omissions, as well as the late vague disclosure, seeks to certify the following nationwide class ("Nationwide Class"): "All [United States] residents who (1) rented an Avis or Budget vehicle in the [United States] during the Class Period[, which runs

from April 1, 2007 through December 31, 2015,]² and, (2) in connection with that rental, paid Avis or Budget or their agent [Defendant] HTA for their use of e-Toll." (Pl. Mov. Br. at 2). "Plaintiff and the Nationwide Class will assert that [the Avis Entities] breached" the rental contract with the Class Members. (Id.). Plaintiff also proposes two subclasses: one on behalf of Florida residents ("Florida Subclass") and one on behalf of New Jersey residents ("New Jersey Subclass"). (Id.). Plaintiff proposes that the Florida Subclass be defined as: "All [United States] residents, who (1) rented an Avis or Budget vehicle [in the State of] Florida during the Class Period, and (2) in connection with that rental, paid Avis or Budget or their agent [Defendant] HTA for their use of e-Toll." (Id). "Should the fact finder determine that [the Avis Entities] did not breach an express term of the [rental contract], Plaintiff and the Florida Subclass alternatively will assert a claim that [the Avis Entities] breach the implied covenant of good faith and fair dealing." (Id). Finally, Plaintiff proposes that the New Jersey Subclass be defined as: "All New Jersey residents who, (1) rented an Avis or Budget vehicle in the [United States] during the Class Period, and (2) in connection with that rental, paid Avis or Budget or their agent [Defendant] HTA for their use of e-Toll." (Id.). "Plaintiff and the New Jersey Subclass will also assert claims for unjust enrichment against [Defendant] HTA, and for violations of the NJCFA against [the Avis Entities] and [Defendant] HTA." (Id.).

## II.   LEGAL STANDARD

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d

---

² The defined class period contained herein is the same suggested class period for the two proposed subclasses discussed *infra*. Accordingly, for purposes of brevity the Court shall refer to this period as the "Class Period" from hereon forward.

6

305, 309 (3d Cir. 2008) (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met – those being numerosity, commonality, typicality, and adequacy – as well as that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. Fed. R. Civ. P. 23; *see also Hydrogen Peroxide*, 552 F.3d at 309 n.6.

In analyzing whether Rule 23's requirements have been met, "the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Hydrogen Peroxide*, 552 F.3d at 307. This is true even if the class certification inquiry overlaps with the merits of the causes of action. *Id.* Additionally, if there is any doubt as to whether the Rule 23 requirements have been met, certification should be denied, regardless of the area of substantive law. *Id.* at 321 (discussing the Rule 23 2003 Amendments).

Rule 23(b)(3) requires a finding "that the questions of law or fact common to the class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)]." Fed. R. Civ. P. 23(b)(3); *see also Hydrogen Peroxide*, 552 F.3d at 310. "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out [at trial] in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at 311 (citations and quotations omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner &*

7

*Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)). Therefore, in addition to the four requirements of Rule 23(a), Plaintiffs in this case bear the burden of establishing that common issues of fact and law predominate and that a class action is superior.

### III.   ANALYSIS

The Court finds that class certification is appropriate in this case, as the record shows that all the requisite elements for class certification have been met here.

#### A. Numerosity

Rule 23(a)(1) provides that the proposed class must consist of members that are so "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Notwithstanding, "'impracticability' does not mean 'impossibility.'" *In re Lucent Techs., Inc. Sec. Litig.* ("*Lucent I*"), 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "To meet the numerosity requirement, class representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, ("*Prudential I*"), 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("*Prudential II*"), *cert. denied*, 525 U.S. 1114 (1999) (citing *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 250 (D.N.J. 1992)).

When dealing with a large class, that numbers in the hundreds, joinder will be impracticable. *Id.* (quoting 1 Herbert Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 3.05, at 3-25) (stating that even a number less than one hundred will usually satisfy the numerosity requirement of Rule 23(a)(1)). Additionally, the Third Circuit that "generally if the named plaintiff demonstrates that the potential number of plaintiff exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here,

joinder of all Class Members is impracticable because there are nearly 18,000,000 Class Members. Accordingly, Rule 23(a)(1) is satisfied.

### B. Commonality and Predominance

It is customary in Rule 23(b)(3) class actions for courts to jointly apply the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance tests. *Prudential I*, 962 F. Supp. at 510 (citing 1 Newberg § 3.13, at 3-71). This approach has been approved by the Third Circuit. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("the Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement. . . . Accordingly, we analyze the two factors together." (citations omitted)); *Georgine v. Amchem Prods.*, 83 F.3d 610, 626 (3d Cir. 1996).

Another prerequisite to a class action is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This requirement is satisfied 'if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Prudential I*, 962 F. Supp. at 510 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted)). Here, the commonality requirement is met because there are many common questions, including the following that are listed in the Complaint:

> a. Whether Defendants failed to disclose to Plaintiff and Class Members in Avis Budget's Rental Agreement that renting an Avis Budget rental vehicle enabled with the automated toll-payment service would trigger fees of $2.50 per rental day and up to $10 per week;
> b. Whether Defendants omitted and/or concealed material facts from Plaintiff and the Class regarding whether the vehicle they rented was pre-enrolled and activated for e-Toll;
> c. Whether Defendants failed to disclose to Plaintiff and Class Members in the uniform Rental Agreement that they would be obligated to pay e-Toll fees regardless of whether they used e-Toll;

9

    d. Whether Defendants failed to disclose to Plaintiff and Class Members in Rental Agreements that they would be obligated to pay more than the actual toll charge incurred and would instead pay the non-discounted rate;
    e. Whether Defendants have a contractual right to impose and collect e-Toll fees;
    f. Whether Defendants' acts and practices constitute a breach of contract;
    g. Whether Defendants' nondisclosure of e-Toll fees violated the NJCFA;
    h. Whether the facts that Defendants fail to disclose about their e-Toll fees are material;
    i. Whether Plaintiff and the Class members are entitled to damages, and if so, what is the proper measure of damages;
    j. Whether Plaintiff and the Class are entitled to equitable relief, including injunctive relief, to prohibit the reoccurrence of this conduct; and
    k. Whether, by the misconduct set forth in [the] Complaint, Defendants have engaged in unfair or unlawful business practices with respect to the [*sic*] e-Toll fees imposed.

(Compl. ¶¶ 49(a)-(k)).

For a class that is certified under Rule 23(b)(3), which is what Plaintiff is seeking here, the Court must find that these common questions predominate over individual issues. *Prudential I*, 962 F. Supp. at 510-11. "To evaluate predominance, the Court must determine whether the efficiencies gained by class resolution of the common issues are outweighed by individual issues presented for adjudication." *Id*. at 511 (citing 1 *Newberg* § 4.25, at 4-81 to 4-86). Courts have readily held that even a few common issues can satisfy this requirement where their resolution will significantly advance the litigation. *Id*. (gathering authority). For example, in cases where it is alleged that the defendant made similar misrepresentations, non-disclosures, or engaged in a common course of conduct, courts have found that said conduct satisfies the commonality and predominance requirements. *Id*. (gathering authority). Predominance has been found to not be met in cases that "required individualized proof of 'highly case-specific factual issues.'" *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557, at *49 (M.D. Fla. Jan. 27,

10

1998) (quoting *Jackson v. Motel 6 Multipurpose*, 130 F.3d 999, 1004-05 (11th Cir. 1997) (involving whether Motel 6 had a practice or policy of racial discrimination)).

Many Courts, including this Court, have found predominance in cases that are factually similar to this matter. *See, e.g., Doherty v. Hertz Corp.*, 2014 U.S. Dist. LEXIS 86792 (D.N.J. June 25, 2014). In *Doherty*, the Court held that the commonality and predominance requirements of Rule 23 were met when the class members paid an electronic tolling fee and toll upcharges which were alleged to be insufficiently disclosed in the rental agreement. *See Doherty*, 2014 U.S. Dist. LEXIS 86792 at *11. Here, the Court comes to the same conclusion as the common factual and legal thread is the alleged omission and/or non-disclosure regarding the e-Toll fees and up-charging. Moreover, the Court finds that no "individualized proof of 'highly case-specific factual issues'" will be required. The Court reaches this conclusion after review of the allegations in the Complaint, the claims asserted therein, and the record before this Court, all of which indicate that the disposition of this case for each Class Member will hinge on whether sufficient disclosures regarding e-Toll were made.

Furthermore, the Court finds that the commonality and predominance requirements are met with regards to Plaintiff and the New Jersey Subclass' claims under the NJCFA. "[T]o state a[n NJ]CFA claim, a plaintiff must allege three elements: (1) unlawful conduct…; (2) an ascertainable loss…; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (N.J. Sup. Ct. 2007) (internal quotations omitted, alteration in original); *see also Scwartz v. Avis Rent a Car Sys., LLC*, 2016 U.S. Dist. LEXIS 80387, *12 (D.N.J. June 21, 2016 (quoting *Merck, supra*). The Court finds that the aforementioned elements are satisfied

here insomuch that Plaintiff, as well as the Class Members, allege that Defendants engaged in unlawful conduct by failing to provide the necessary e-Toll disclosures such that each person was apprised of the costs relating to same, that the non-disclosure or inadequate disclosure by Defendants resulted in a, albeit *de minimis*, concrete and ascertainable loss. Thus, considering the allegations in the Complaint, as well as the entire record currently before this Court, the Court finds that the common questions of fact and law predominate over any questions of law or fact affecting only individual members of the Class.

### C.  Typicality

Rule 23 requires also that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In essence, "the typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). "Typicality lies where there is a strong similarity of legal theories or where the claims of the class representatives and the class members arise from the same alleged course of conduct by the defendant." *Prudential I*, 962 F. Supp. at 518 (citations omitted). Hence, even where there may be factual differences between the claims of the class representatives and other class members, it does not rule out a finding of typicality. *Lucent I*, 307 F. Supp. 2d at 640 (citing *Prudential II*, 148 F.3d at 310).

The Court concludes that the typicality requirement of Rule 23 is also met in this case. This is because the legal theory that underlies Plaintiff's claims is typical of the claims asserted by the Class Members. Specifically, Plaintiff avers that Defendants breached the rental contract when they failed to make various e-Toll disclosures, and caused Plaintiff to be subject to the fees and upcharges he was unaware he would incur. This claim is nearly identical to all the Class Members'

12

claims. Defendants argument that the typicality requirement is not met "because, unlike the rest of the Class Members who allegedly received *inadequate* disclosures, [Plaintiff] claims to have received *no* disclosures at all" is unpersuasive. (ECF No. 234 ("Def. Opp Br.") at 8-9) (emphasis in original).[3] This is because the common question, as well as the common claim stemming from said question, which is typical to Plaintiff as well as the Class Members, is whether or not Defendants properly explained the e-Toll program and the charges associated with it. Indeed, just as with *Doherty*, *supra*, the claims of Plaintiff and the Class Members here arise "out of a common conduct and a core set of facts surrounding the rental" each person made from the Avis Entities, the use of the standardized contract, and the resultant payment of e-Toll fees and upcharges. *Doherty*, 2014 U.S. Dist. LEXIS 86792 at *12. Additionally, as discussed above, factual differences between Plaintiff and the Class Members does not prohibit this Court from finding typicality. Thus, the Court finds the typicality requirement of Rule 23 satisfied in this case.

### D. Adequacy of Representation

As for the adequacy of representation factor, Rule 23(a)(4) requires that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts look at two factors: "(1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class." *Prudential I*, 962 F. Supp. at 519. A party challenging the Class' representation has the burden to prove that the representation is not adequate. *Id.*

---

[3] Defendants also assert that Plaintiff is atypical because he made his reservation through a third-party. (Def. Opp. Br. at 9-10) The Court rejects this argument as well for the reasons set forth *infra*.

The aforementioned requirements have been met in this case. First, the Court notes that Class Counsel are more than adequate representatives of this Class. This is clear based on the personal and law firm resumes submitted in support of this Motion. (*See* ECF No. 226-8 and 9, Exs. 32-33). Class Counsel has also demonstrated their diligent and competent representation throughout this case as it proceeded through discovery. Additionally, the named Plaintiff is an appropriate Class Representative, as he has no interest which is *antagonistic* to the rest of the Class Members and has expressed his willingness to represent them.

The Court rejects Defendants' argument that Plaintiff is an inadequate Class Representative simply because he is employed by Class Counsel. (Def. Opp. Br. at 18). According to Defendants, Plaintiff is inadequate because he "would allow settlement on terms less favorable to the interests of the absent class members" so that he can be in the "good graces" of Class Counsel. (Id. at 20). However, as Plaintiff correctly notes, there is no settlement before the Court and therefore the purported conflict is indeed speculative. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). Moreover, an existing relationship between a named plaintiff and class counsel, "in absence of proof that the named plaintiff[] would receive a benefit not available to other class members, is not a basis to find" inadequacy. *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 245 (D.N.J. 2007); *see also Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 276, 286 (D.N.J. 1997). Here, Defendants make a bare assertion that Plaintiff is an inadequate representative merely because he is employed by Class Counsel. However, Defendants do not point to a single piece of evidence whatsoever that would lead this Court to the same conclusion. Therefore, based on the foregoing, the Court finds that the adequacy requirement of Rule 23 is satisfied.

**E. Superiority**

Having found all four requirements of Rule 23(a) satisfied, the Court turns its attention to Rule 23(b)(3), which requires "that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides the Court with four non-exclusive factors to aid in its superiority determination:

> (1) the interest of individual members of the class in individually controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action.

*Prudential I*, 962 F. Supp. at 522.

Here, since the financial loss to most of the Class Members is relatively small, very few individuals, if any, would have an interest or ability to pursue their own individual case. Along the same thought process, it is unlikely that the individual Class Members would have the resources to pursue successful litigation on their own, partly because the cost of litigating separate actions would be far more than the amount each individual Class Member would recover. Thus, the Court finds that a class action is a superior method of adjudicating the controversy.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Class Certification is hereby granted. An appropriate Order, which includes the above espoused Class definitions, accompanies this Opinion.

DATED: November 16th, 2017

JOSE L. LINARES
Chief Judge, United States District Court